## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 )<br>) )<br>COOPER-STANDARD HOLDINGS INC., *et al.*,[1]  ) Case No. 09-12743 (PJW)<br>) (Jointly Administered)<br>Debtors.  ) )<br>) **Hearing Date**: September 1, 2009<br>) at 1:30 p.m. (EDT)<br>) **Objection Deadline**: August 25, 2009<br>) at 4:00 p.m. (EDT) |

**APPLICATION PURSUANT TO SECTIONS 327(a), 328 AND 1107 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016 AND LOCAL RULES 2014-1 AND 2016-2 FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR NUNC PRO TUNC TO THE FILING DATE AND WAIVING CERTAIN LOCAL RULE 2016-2 INFORMATION REQUIREMENTS**

Cooper-Standard Holdings Inc. ("Holdings") and the other above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submit this application (the "Application") for an order pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), substantially in the form attached hereto as

---

[1]     The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Cooper-Standard Holdings Inc. (5088); Cooper-Standard Automotive Inc. (9970); Cooper-Standard Automotive FHS Inc. (2953); Cooper-Standard Automotive Fluid Systems Mexico Holding LLC (0442); Cooper-Standard Automotive OH, LLC (2845); StanTech, Inc. (4014); Westborn Service Center, Inc. (7448); North American Rubber, Incorporated (9926); Sterling Investments Company (1393); Cooper-Standard Automotive NC L.L.C. (2839); CS Automotive LLC (4267); CSA Services, Inc. (9510); NISCO Holding Company (1697). The corporate address of the Debtors is 39550 Orchard Hill Place Drive, Novi, Michigan 48375.

Exhibit A, authorizing the Debtors to retain and employ the firm of Lazard Frères & Co. LLC ("Lazard") as their investment banker and financial advisor *nunc pro tunc* to August 3, 2009 (the "Filing Date") and waiving certain information requirements set forth in Local Rule 2016-2. In support of this Application, the Debtors rely on the Declaration of Eric Mendelsohn on behalf of Lazard Frères & Co. LLC, dated August 12, 2009 (the "Mendelsohn Declaration"), attached hereto as Exhibit B.[2]  In further support of this Application, the Debtors respectfully state as follows:

## BACKGROUND

1.      On August 3, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By order dated August 4, 2009, the Debtors' chapter 11 cases (the "Cases") were consolidated for procedural purposes only. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession. No trustee or examiner has been appointed in the Cases. No official committees have been assigned or designated.

2.      The Debtors and their foreign non-debtor affiliates and subsidiaries (collectively, the "Company") are a leading global manufacturer of fluid handling, body sealing, noise vibration, and harshness control ("NVH") components, systems, subsystems, and modules, which are designed primarily for use in passenger vehicles and light trucks for global original equipment manufacturers ("OEMs") and replacement markets. The Company designs and manufactures products in each major region of the world. The Company operates in sixty-eight manufacturing locations and ten design, engineering, and administrative locations in eighteen countries around the world.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Mendelsohn Declaration.

2

3.       The Company operates in two divisions, North America and International
(covering Europe, South America and Asia). The Company's customers are OEMs,
including Ford Motor Company, General Motors Company, Chrysler Group LLC, Audi,
BMW, Fiat, Honda, Mercedes Benz, Porsche, PSA Peugeot Citroën, Renault/Nissan, Toyota,
Volkswagen and other Tier I and Tier II automotive suppliers. In 2008, the Company's
products were found in twenty-two of the twenty-five top-selling models in North America
and in twenty-four of the twenty-five top-selling models in Europe.

4.       Cooper-Standard Automotive Canada Limited ("CSA Canada") is currently
subject to a proceeding under the Companies' Creditors Arrangement Act in the Ontario
Superior Court of Justice in Toronto, Ontario, Canada. None of the Company's other foreign
subsidiaries are debtors in these Cases and none have commenced insolvency proceedings in
other jurisdictions.

## JURISDICTION

5.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.
This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), in that this is a matter
concerning the administration of the Debtors' estates. Venue is proper in this district
pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein
are sections 327(a) and 328 of the Bankruptcy Code.

## RELIEF REQUESTED

6.       By this Application, the Debtors seek entry of an order authorizing the
employment and retention of Lazard as the Debtors' investment banker and financial adviser,
*nunc pro tunc* to the Filing Date, and waiver of the informational requirements pursuant to
Local Rule 2016-2(g), in accordance with the provisions of this Application, the Engagement

3

Letter (as defined herein), the Indemnification Letter (as defined herein), and the Order submitted herewith.

## APPLICABLE AUTHORITY

7.    Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more financial advisors, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

8.    Section 328(a) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

9.    Section 1107 of the Bankruptcy Code provides:

> (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.
>
> (b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

11 U.S.C. § 1107.

RLF1-3424226-2

10.     Bankruptcy Rule 2014(a) provides, in relevant part, as follows:

An order approving the employment of financial advisors . . . or
other professionals pursuant to § 327 . . . of the Code shall be
made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014(a).

11.     Bankruptcy Rule 2016(a) provides, in relevant part, as follows:

An entity seeking interim or final compensation for services, or
reimbursement of necessary expenses, from the estate shall file an
application setting forth a detailed statement of (1) the services
rendered, time expended and expenses incurred, and (2) the
amounts requested.

Fed. R. Bankr. P. 2016(a).

12.     Local Rule 2014-1 provides in relevant part, as follows:

Any entity seeking approval of employment of a professional
person pursuant to 11 U.S.C. § 327, 1103(a) or 1114 or Fed. R.
Bankr. P. 2014 . . . shall file with the Court a motion, a
supporting affidavit or verified statement of the professional
person, and a proposed order for approval.

Del. Bankr. LR 2014-1(a).

13.     Local Rule 2016-2 provides in relevant part, as follows:

(d) Such motion [requesting approval for compensation and/or
reimbursement of expenses] shall include activity descriptions
which shall be sufficiently detailed to allow the Court to
determine whether all the time, or any portion thereof, is actual,
reasonable and necessary and shall include the following:

(i)     All activity descriptions shall be divided into general project
categories of time;

(ii)    All motions shall include complete and detailed activity
descriptions;

(iii)   Each activity description shall include a time allotment;

(iv)    Activities shall be billed in tenths of an hour (six (6) minutes);

RLF1-3424226-2

(v)    Each activity description shall include the type of activity (e.g., phone call, research);

(vi)    Each activity description shall include the subject matter (e.g., exclusivity motion, section 341 meeting);

(vii)    Activity descriptions shall not be lumped – each activity shall have a separate description and a time allotment;

(viii)    Travel time during which no work is performed shall be separately described and may be billed at no more than 50% of regularly hourly rates;

(ix)    The activity descriptions shall individually indentify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role; and

(x)    Activity descriptions shall be presented chronologically or chronologically within each project category.

***

(g)  Any employed professional person or entity within the scope of this Local Rule may request that the Court waive, for cause, one or more of the information requirements of this Local Rule.

Del. Bankr. LR 2016-2.

14.    Accordingly, this Court is authorized to grant the relief requested in this Application.

## RETENTION OF LAZARD

15.    Lazard's services will be rendered upon the terms and conditions of an engagement letter dated as of June 1, 2009, by and between Lazard and the Debtors (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C, and that certain letter regarding indemnification and related matters, dated as of April 1, 2009, by and between Lazard and the Debtors (the "Indemnification Letter" and together with the Engagement Letter, the "Lazard Agreement"), a copy of which is attached to the Engagement Letter in Exhibit C.

6

16.    Lazard is an investment banking and financial advisory firm focused on providing investment banking, financial advice, and transaction execution on behalf of its clients. Lazard's broad range of corporate advisory services includes general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatizations, special committee assignments, takeover defenses, and strategic partnerships/joint ventures. In addition, Lazard has a significant asset management subsidiary. Lazard is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority, as well as in all 50 states, the District of Columbia, and Puerto Rico.

17.    The Debtors have selected Lazard as their investment banker and financial advisor based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the Debtors' restructuring activities and (b) Lazard's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

18.    Prior to the Filing Date, the Debtors engaged Lazard under an earlier engagement letter and, subsequently, under the Lazard Agreement to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization, and/or recapitalization and, if necessary, to prepare for the Debtors' commencement of chapter 11 cases.

19.    In providing prepetition services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' financial history, debt structure, creditors, business and operations, and related matters. Accordingly, Lazard

7

has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

20.     In addition to Lazard's understanding of the Debtors' financial history, business operations, and the industry in which the Debtors operate, Lazard has extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 cases. Lazard's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations. Indeed, since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtors' assets.

21.     Notably, Lazard has been retained as a financial advisor and investment banker in numerous large and complex chapter 11 cases, including, among others, In re Lehman Brothers Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Dec. 17, 2008); In re Tropicana Entm't, LLC, Case No. 08-10856 (Bankr. D. Del. May 30, 2008); In re Wellman, Inc., Case No. 08-10595 (Bankr. S.D.N.Y. Mar. 19, 2008); In re Movie Gallery, Inc., Case No. 07- 33849 (Bankr. E.D. Va. Oct. 18, 2007); In re New Century TRS Holdings, Inc., Case No. 07-10416 (Bankr. D. Del. Apr. 5, 2007); In re Northwest Airlines, Inc., Case No. 05-17930 (Bankr. S.D.N.Y. July 20, 2006); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. May 2, 2006); In re Collins & Aikman Corp., Case No. 05-55927 (Bankr. E.D. Mich. July 18, 2005); In re Tower Automotive, Inc., Case No. 05-10578 (Bankr. S.D.N.Y. June 15, 2005); In re Parmalat U.S.A Corp., Case No. 04-11139 (Bankr. S.D.N.Y. Apr. 22, 2004); In re Adelphia Comm. Corp., Case No. 02-41729 (Bankr. S.D.N.Y. Dec. 12, 2003); In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. Jan. 14, 2003); In re Metrocall, Inc., Case No. 02-11579 (Bankr. D. Del. July 8, 2002); In re Formica Corp., Case No. 02-

8

10969 (Bankr. S.D.N.Y. June 13, 2002); In re 360networks (USA), Inc., Case No. 01-13721

(Bankr. S.D.N.Y. May 2, 2002); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr.

D. Del. March 19, 2002); In re Hayes Lemmerz Int'l, Inc., Case No. 01-11490 (Bankr. D.

Del. Feb. 14, 2002); In re Exodus Comm'ns, Inc., Case No. 01-10539 (Bankr. D. Del. Dec. 6,

2001); In re Vlasic Foods Int'l, Inc., Case No. 01-00285 (Bankr. D. Del. Mar. 14, 2001); In

re Loews Cineplex Entm't Corp., Case No. 01-40346 (Bankr. S.D.N.Y. Feb. 16, 2001); In re

Owens Corning Corp., Case No. 00-03837 (Bankr. D. Del. Nov. 30, 2000).

22.    The resources, capabilities, and experience of Lazard in advising the Debtors

are crucial to the Debtors' during these Cases.  An experienced financial advisor and

investment banker such as Lazard fulfills a critical need that complements the services

offered by the Debtors' other restructuring professionals.  Lazard will continue to concentrate

its efforts on formulating strategic alternatives, negotiating with the Debtors' creditor

constituencies, and assisting the Debtors to develop and implement a viable chapter 11 plan,

which may include an asset or other sale strategy.  For these reasons, the Debtors require the

services of a capable and experienced financial advisory and investment banking firm such as

Lazard.

23.    Accordingly, Lazard has developed significant relevant experience and

expertise regarding the Debtors and troubled company situations that will assist it in

providing effective and efficient services in these Cases. Should the Court approve the

Debtors' retention of Lazard as their financial advisor and investment banker, Lazard will

continue, without interruption, to perform the services for the Debtors as described herein.

## SERVICES TO BE PROVIDED

24.    The terms and conditions of Lazard's engagement are governed by the Lazard

Agreement, which reflects the substantial efforts that will be required of Lazard in this

9

engagement.  Pursuant to the terms of the Engagement Letter, Lazard will advise the Debtors in a variety of matters, including, as reasonably requested:[3]

    (a)    Reviewing and analyzing the Debtors' business, operations, and financial projections;

    (b)    Evaluating the Debtors' potential debt capacity in light of its projected cash flows;

    (c)    Assisting in the determination of a capital structure for the Debtors;

    (d)    Assisting in the determination of a range of values for the Debtors on a going concern basis;

    (e)    Advising the Debtors on tactics and strategies for negotiating with the Stakeholders (as defined in the Engagement Letter);

    (f)    Rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring (as defined in the Engagement Letter);

    (g)    Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to a Restructuring;

    (h)    Advising and assisting the Debtors in evaluating potential Financing (as defined in the Engagement Letter) transactions by the Debtors, and, subject to Lazard's agreement so to act, and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

    (i)    Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with the Restructuring;

    (j)    Assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction (as defined in the Engagement Letter), advising the Debtors in connection with negotiations and aiding in the consummation of one or more Sale Transactions;

---

[3]    The summaries of the Lazard Agreement contained herein are solely for the convenience of the Court and parties in interest.  To the extent that such summaries and the terms of the Lazard Agreement are inconsistent, the terms of the Lazard Agreement shall control.  Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Lazard Agreement.

(k)    Attending meetings of the Debtors' board of directors and its committees with respect to matters on which Lazard has been engaged to advise the Debtors;

(l)    Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise the Debtors in any proceeding before any Bankruptcy Court; and

(m)    Providing the Debtors with other financial restructuring advice.

### PROFESSIONAL COMPENSATION

25.    Lazard's decision to continue with its engagement to advise and assist the Debtors is conditioned upon its ability to be retained, and to be compensated for its services and reimbursed for the expenses it incurs, in accordance with the terms and conditions of the Lazard Agreement.

26.    Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Engagement Letter (the "Compensation Structure"). Further, because the Debtors are seeking to retain Lazard under Bankruptcy Code section 328(a), the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" or fee enhancement under applicable law.

27.    In summary, the Compensation Structure provides for the following compensation to Lazard:

(a)    A monthly fee of $200,000 (the "Monthly Fee"), payable on the first day of each month until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10 of the Engagement Letter. One half of all Monthly Fees paid after $800,000 in Monthly Fees have been paid under the Engagement Letter shall be

11

credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, or Financing Fee subsequently payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable. If payment of the first Monthly Fee is made for a partial month based upon the date on which the Engagement Letter is executed, then such Monthly Fee shall be prorated from the date on which the Engagement Letter is executed to the end of the month.

(b)   A fee equal to $7,500,000 (the "Restructuring Fee") payable upon the consummation of a Restructuring.

(c)   (i) If, in connection with the consummation of a Restructuring, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I to the Engagement Letter or (B) the Restructuring Fee.

(ii) If, in connection with the consummation of a Restructuring, the Debtors consummate any significant Sale Transaction not covered by clause (i) above, the Debtors shall pay Lazard a fee (the "Minority Sale Transaction Fee") to be mutually agreed in good faith that will appropriately compensate Lazard in light of the magnitude and complexity of such transaction and the fees customarily paid to investment bankers of similar standing for similar situations. For the avoidance of any doubt, such fee will not be subject to the provisions of clause 2(f) of the Engagement Letter.

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(d)    A fee payable upon consummation of a Financing, equal to the amount set forth in Schedule II of the Engagement Letter (the "Financing Fee").  One half of any Financing Fee(s) paid shall be credited against any Restructuring Fee or Sale Transaction Fee subsequently payable; provided, however, that 75% of any Financing Fees paid for a Financing primarily involving debtor-in-possession financing provided by certain lenders of the the Debtors shall be credited against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(e)   For the avoidance of any doubt, one or more of the fees described in clauses 2(b), (c), (d) and (e) of the Engagement Letter may be payable; provided, however, that only one fee (which shall be the highest applicable fee) shall be payable under clauses 2(b) and (c) of the Engagement Letter in respect of any series of transactions, arrangements, or agreements that are

primarily related and comprise part of a single strategy. Under no circumstance will the aggregate of all fees paid to Lazard pursuant to clauses 2(b), 2(c), 2(d)(i), and 2(e) of the Engagement Letter exceed $8,500,000.

(f)     Notwithstanding any other provision of the Lazard Agreement to the contrary, unless Lazard provides material advice and assistance in connection with the following transactions pursuant to the written request of the Debtors or pursuant to the written advance notification by Lazard to the Debtors specifying this clause which the Debtors do not promptly countermand in writing, no fee shall be payable under Section 2 of the Engagement Letter with respect to a transaction solely involving (i) one or more open market purchases of the Debtors' notes to the extent currently permitted under the Debtors' Senior Credit Facility and/or (ii) one or more prepayments of term loan debt through dutch auction or similar transactions to the extent currently permitted under the Debtors' Senior Credit Facility.

(g)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all: (A) reasonable document production and reasonable documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable documented out-of-pocket fees and expenses, including expenses of counsel, if any, in each case of (A) and (B), payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses, (collectively, the "Expenses").

(h)     As part of the compensation payable to Lazard under the Engagement Letter, the Debtors have agreed that the indemnification letter dated as of April 1, 2009 (the "Indemnification Letter") between the Company and Lazard, which remains in full force and effect, shall continue to apply to Lazard's engagement under the Engagement Letter. The Indemnification Letter is incorporated into the Engagement Letter in its entirety.

(i)     All amounts referenced under the Engagement Letter reflect United States currency and shall be paid promptly in cash after such amounts become due and payable under the Engagement Letter.

28.     The Compensation Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances. Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities,

13

and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Compensation Structure. The Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Indeed, the Debtors and Lazard have agreed upon the Compensation Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these cases and in light of the fact that (a) such commitment may foreclose other opportunities for Lazard and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

29.     Lazard will maintain reasonably detailed records in support of any expenses incurred in connection with the rendering of its services in these cases. As Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the United States Trustee Fee Guidelines. Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court.

## TERMINATION OF ENGAGEMENT

30.     Lazard's engagement may be terminated by the Debtors or Lazard upon five (5) days written notice without liability or continuing obligation to the Debtors or Lazard

14

except that following such termination and any expiration of the Engagement Letter (a) Lazard will remain entitled to any fees accrued pursuant to the Engagement Letter but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Debtors and any expiration of the Engagement Letter, Lazard will remain entitled to full payment of all fees contemplated by the Engagement Letter in respect of any Restructuring, any Sale Transaction and any Financing announced or for which an agreement in principle is entered into during the period from the effective date of the Engagement Letter until eighteen (18) months following such termination or expiration.

## INDEMNIFICATION AND CONTRIBUTION PROVISIONS

31.    The Debtors have agreed, among other things, to indemnify, to make certain contributions to, and to reimburse Lazard and the other Indemnified Persons (as defined in the Indemnification Letter) in accordance with the provisions set forth in the Indemnification Letter. The Indemnification Letter provides, among other things, that the Debtors will indemnify and hold harmless Lazard and other Indemnified Persons with respect to any loss, claim, damage, liability or expense except to the extent that such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that is it no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence.

32.    The indemnification, contribution, and reimbursement provisions reflected in the Indemnification Letter are customary and reasonable terms of consideration for investment bankers such as Lazard for proceedings both out of court and in chapter 11. The terms of the Indemnification Letter were fully negotiated between the Debtors and Lazard at

15

arm's-length and the Debtors respectfully submit that the Indemnification Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

## NO DUPLICATION OF SERVICES

33.    The Debtors intend for Lazard's services to complement, and not duplicate, the services to be rendered by any other professional retained in these cases.  Lazard understands that the Debtors have retained Alvarez & Marsal North America, LLC, and will retain additional professionals during the term of the engagement and will work cooperatively, as requested by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## LAZARD' S DISINTERESTEDNESS

34.    To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Mendelsohn Declaration, Lazard (a) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14); as modified by Bankruptcy Code section 1107(b), and (b) does not hold or represent an interest adverse to the Debtors' estates.

35.    During the 90-day period preceding the Filing Date, the Debtors made aggregate fee payments to Lazard of $800,000 and aggregate expense reimbursements to Lazard of $38,673.97.

36.    The Debtors seek approval of the Lazard Agreement, including the Compensation Structure contained therein pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 328 (a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

16

11 U.S.C. § 328(a). Accordingly, section 328(a) permits the compensation of professionals,
including investment bankers and financial advisers, on flexible terms that reflect the nature
of their services and prevailing market conditions for those services.

37.     As set forth above, notwithstanding approval of the Lazard Agreement under
Bankruptcy Code section 328(a), Lazard intends to apply for compensation for professional
services rendered and reimbursement of expenses incurred in connection with these Cases,
subject to the Court's approval and in compliance with applicable provisions of the
Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable
procedures and orders of the Court and consistent with the Compensation Structure set forth
in the Engagement Letter.

38.     The Debtors believe that the Compensation Structure appropriately reflects the
nature and scope of services to be provided by Lazard in these complex chapter 11 cases,
Lazard's substantial experience with respect to investment banking services and the fee
structures typically utilized by Lazard and other leading investment banks that do not bill
their clients on an hourly basis.

39.     Indeed, similar fixed and contingency fee arrangements in other large chapter
11 cases have been routinely approved and implemented by courts in this circuit and
elsewhere. See e.g., In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17,
2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same
terms); In re Foamex Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005)
(order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms);
In re Meridian Auto. Sys. Composites Operations, Inc., Case No. 05-11168 (MFW) (Bankr.
D. Del. July 19, 2005) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and

17

328(a)); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard and subjecting compensation to same standard of review).

     40.    Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district and elsewhere. See e.g., In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); In re Foamex Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); In re United Artists Theatre Co., Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000).

     41.    In light of the foregoing, and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Lazard's services for engagements of this nature, the Debtors believe that the terms and conditions of the Lazard Agreement are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

     42.    To deny the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking and financial advisors and would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these cases.

It would require the commitment of significant resources for a newly retained investment banker and financial advisor to get up to speed given the steep learning curve involved. Moreover, comparable investment bankers would charge an equivalent level of fees.

## NOTICE

43.     Notice of this Application will be provided to: (a) the Office of the United States Trustee; (b) counsel to the agent under the Debtors' postpetition credit facility; (c) counsel to the Administrative Agent under the Debtors' prepetition Credit Agreement; (d) counsel to the ad hoc group of holders of the Debtors' senior notes; (e) counsel to the ad hoc group of holders of the Debtors' senior subordinated notes, and (f) the 30 largest unsecured creditors and the statutory committee of unsecured creditors (or, if retained, its counsel) when one is appointed. Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

## NO PRIOR REQUEST

44.     No prior request for the relief sought in this Application has been made to this or any other court.


*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

RLF1-3424226-2

WHEREFORE, for the reasons set forth herein and in the Mendelsohn Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to employ and retain Lazard as their investment banker and financial advisor and (b) granting such other and further relief as is appropriate.

Dated:    August 12, 2009

COOPER-STANDARD HOLDINGS INC.
(for itself and on behalf of its affiliated Debtors and Debtors-in-Possession)

By: _____
Allen J. Campbell
Vice President and Chief Financial Officer