# EXHIBIT C

# LAZARD

LAZARD FRÈRES & CO. LLC
190 S. LASALLE
31ST FLOOR
CHICAGO, IL 60603
PHONE 312-407-6600
FAX 312-407-6620
www.lazard.com

As of June 1, 2009

RECEIVED
JUL 1 7 2009
LEGAL DEPT.

Cooper-Standard Holdings, Inc.
39550 Orchard Hill Place
Novi, MI  48375

Attention:    James S. McElya
              Executive Chairman

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Cooper-Standard Holdings Inc. and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein. As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Proceeding")) and/or recapitalization of all or a significant amount of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities (other than a transaction solely involving an issuance of securities to the existing equityholders of the Company or an initial public offering of the Company's equity), sale or disposition of assets in connection with or in furtherance of any other form of Restructuring, sale of debt or equity securities or other interests or other similar transaction or series of transactions that is undertaken by the Company or on its behalf by any third party.

By signing this Agreement, we hereby accept our appointment as your investment banker under

PARIS    LONDON    NEW YORK    AMSTERDAM    ATLANTA    BAHRAIN    BEIJING    BORDEAUX    BOSTON    BRISBANE    BUENOS AIRES
CHARLOTTE    CHICAGO    DUBAI    FRANKFURT    HAMBURG    HONG KONG    HOUSTON    LOS ANGELES    LYON    MADRID    MELBOURNE
MILAN    MINNEAPOLIS    MONTEVIDEO    MONTREAL    MUMBAI    PANAMA CITY    SAN DIEGO    SAN FRANCISCO    SANTIAGO    SÃO PAULO

LAZARD

the terms hereof.

*Description of Services:*

    1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services ((a) through (n) below collectively referred to herein as the "Services") as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations and financial projections;

    (b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

    (c)    Assisting in the determination of a capital structure for the Company;

    (d)    Assisting in the determination of a range of values for the Company on a going concern basis;

    (e)    Advising the Company on tactics and strategies for negotiating with the Stakeholders;

    (f)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

    (g)    Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

    (h)    Advising and assisting the Company in evaluating a potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

    (i)    Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

    (j)    Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[2];

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger,

LAZARD

(k)   Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

(l)   Attending meetings with the Company's Stakeholders in connection with a Restructuring;

(m)   Providing the Company with other financial restructuring advice and services; and

(n)   Providing testimony, as necessary, with respect to matter on which Lazard has been engaged to advise the Company in any proceeding before the bankruptcy court.

*Fees:*

2.   As consideration for the Services to be provided, the Company shall pay Lazard the following compensation ((a) through (e) below collectively referred to herein as the "Fees"):

(a)   A monthly fee of $200,000 (the "Monthly Fee"), payable on the first day of each month until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. One half of all Monthly Fees paid after $800,000 in Monthly Fees have been paid hereunder shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, or Financing Fee subsequently payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable. If payment of the first Monthly Fee is made for a partial month based upon the date on which this Agreement is executed, then such Monthly Fee shall be pro rated from the date on which this Agreement is executed to the end of the month.

(b)   Subject to clauses 2(f) and 2(g) below, a fee equal to $1,000,000 (a "Secured Debt Modification Fee"), payable upon receipt or completion of any material renegotiation, modification, amendment, waiver, consent, forbearance and/or similar transaction, arrangement or agreement with respect to covenants included in the Company's secured debt facility (the "Senior Credit Facility") other than a transaction solely involving a short-term waiver or forbearance (the "Secured Debt Modification"); provided, that it is understood and agreed that any such transaction, arrangement or agreement that (i) has more than a short-term effect or (ii) results in a

---

consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

LAZARD

significant modification of any material or economic terms of such secured debt shall be deemed a Restructuring, and not a Secured Debt Modification, for purposes hereof. Any Secured Debt Modification Fee paid shall be credited against any Restructuring Fee subsequently payable.

(c) Subject to clauses 2(f) and 2(g) below, a fee equal to $7,500,000 (the "Restructuring Fee") payable upon the consummation of a Restructuring; provided, however, that in the case of a Restructuring solely of indebtedness under the Company's 7% senior unsecured notes and/or 8 3/8% senior subordinated notes that is consummated prior to the commencement of Chapter 11 proceedings (whether or not any consent, agreement or other involvement of any third party may be required under the Company's Senior Credit Facility or otherwise), the Restructuring Fee shall be $4,500,000; provided, further, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; provided, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and such plan is not consummated, Lazard shall return such fee to the Company.

(d) (i) If, in connection with the consummation of a Restructuring, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the greater of (A) the fee calculated based on the Aggregate Consideration as set forth in Schedule I hereto or (B) the Restructuring Fee.

(ii) If, in connection with the consummation of a Restructuring, the Company consummates any significant Sale Transaction not covered by clause (i) above, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") to be mutually agreed in good faith that will appropriately compensate Lazard in light of the magnitude and complexity of such transaction and the fees customarily paid to investment bankers of similar standing for similar situations. For the avoidance of any doubt, such fee will not be subject to the provisions of clause 2(f) below.

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e) A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). One-half of any Financing

LAZARD

Fee(s) paid shall be credited against any Restructuring Fee or Sale Transaction Fee subsequently payable; provided, however, that 75% of any Financing Fees paid for a Financing primarily involving debtor-in-possession financing provided by current lenders of the Company shall be credited against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(f)     For the avoidance of any doubt, one or more of the fees described in clauses 2(b), (c), (d) and (e) above may be payable; provided, however, that only one fee (which shall be the highest applicable fee) shall be payable under clauses 2(b) and (c) in respect of any series of transactions, arrangements, or agreements that are primarily related and comprise part of a single strategy. Under no circumstance will the aggregate of all fees paid to Lazard pursuant to clauses 2(b), 2(c), 2(d)(i), and 2(e) above exceed $8,500,000.

(g)     Notwithstanding any other provision of this Agreement to the contrary, unless Lazard provides material advice and assistance in connection with the following transactions pursuant to the written request of the Company or pursuant to the written advance notification by Lazard to the Company specifying this clause which the Company does not promptly countermand in writing, no fee shall be payable under this Section 2 with respect to a transaction solely involving (i) one or more open market purchases of the Company's notes to the extent currently permitted under the Company's Senior Credit Facility and/or (ii) one or more prepayments of term loan debt through dutch auction or similar transactions to the extent currently permitted under the Company's Senior Credit Facility.

(h)     In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable document production and reasonable documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable documented out-of-pocket fees and expenses, including expenses of counsel, if any, in each case of (A) and (B), payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses, (collectively, the "Expenses").

(i)     As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification letter dated as of April 1, 2009 (the "Indemnification Letter") between the Company and Lazard, which remains in full force and effect, shall continue to apply to our engagement hereunder. The Indemnification Letter is incorporated herein in its entirety.

LAZARD

(j)    All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts become due and payable hereunder.

*Retention in Chapter 11 Proceedings:*

3.  In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code.  Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court.  The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon.  Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard.  The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee, and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee, and Financing Fee shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4.  No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement.  The Company represents and warrants to Lazard that, to the best of its knowledge, all of the foregoing information will be accurate and complete in all material aspects at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position.  In performing the Services pursuant to this Agreement, including in connection with any valuation of the Company, Lazard shall be entitled to rely upon information furnished to it by the Company or

LAZARD

that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto or with respect to any issues of solvency.

6. In performing the Services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise.

8. The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder shall automatically expire upon consummation of a Restructuring (other than a Restructuring that is one of a series of related actions comprising a single strategy, the last of which has not been completed), and may be earlier terminated by you or us at any time without liability or continuing obligation to you or us upon 5 days written notice to the other party, except that following such termination and any expiration of this Agreement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of the Expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company (other than due to Lazard's bad faith, willful misconduct, or gross negligence) and any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof that would be payable had no such termination or expiration occurred in respect of any Restructuring, Secured Debt Modification, Sale Transaction and/or Financing announced or for which an agreement in principal is entered into from the date hereof until 18 months following such termination or expiration, as the case may be.

11. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to

LAZARD

confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating any Restructuring or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring or other transaction.

12.  Neither this Agreement nor the Indemnification Letter nor any of their terms or substance, or any non-public information regarding the company delivered to Lazard pursuant to the terms of this Agreement, may be disclosed or made available, in either case, directly or indirectly, by Lazard to any other person or third parties without the prior consent of the Company, except (a) to Lazard and Lazard's affiliates' officers, directors, employees, attorneys, agents and advisors who need to know such information in connection with the matters described in this Agreement or (b) as required by applicable law or compulsory legal process or in connection with any pending legal proceeding or regulatory review (in which case Lazard agrees, to the extent reasonably practicable, to inform the Company promptly thereof). Neither this Agreement nor the Indemnification Letter nor any of their terms or substance, nor any advice, written or oral, rendered by Lazard, may be disclosed publicly or made available, directly or indirectly, by the Company to third parties (other than on a confidential basis and in an accurate manner to professional advisors of the Company who need to know such information in connection with the transactions contemplated hereby) without the prior written consent of Lazard, except as may be required by applicable law or compulsory legal process or in connection with any pending legal proceeding or regulatory review (in which case the Company agrees, to the extent reasonably practicable, to inform Lazard promptly thereof). Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Board of Directors or any other person or entity.

13.  In connection with the Services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

14.  The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the

LAZARD

Indemnification Letter. You agree that the Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.

15. This Agreement amends and restates in its entirety the engagement letter between Lazard and the Company dated as of April 1, 2009 (the "Prior Agreement"). For the avoidance of any doubt, we shall remain entitled to any fees accrued, and to reimbursement of any expenses incurred, under the Prior Agreement as in effect prior to the date hereof.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principle of conflicts of law). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. To the extent permitted by applicable law, the Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the Services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____
        John C. Adams
        Managing Director

Accepted and Agreed to as of the date first written above.

COOPER-STANDARD HOLDINGS, INC., on behalf of itself and its controlled subsidiaries

By: _____
        James S. McElya
        Executive Chairman

LAZARD

Cooper-Standard Holdings, Inc.<br>As of June 1, 2009<br>Page 10

SCHEDULE I

Fees for Sale Transactions

The following table outlines the Sale Transaction fee schedule. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding incremental fee. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration ($ in millions) | Incremental Fee % |
|---|---|
| $0  - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable,  as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed by the third party.  Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable.  For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing  price in such market for the 10 trading days prior to the closing of the

LAZARD

Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed directly or indirectly by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE II

Fees for Financings

The following table outlines the Financing Fees. The total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt/DIP Financing | 1.50% |
| Senior Debt | 3.00% |
| Subordinated Debt | 3.50% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |

# LAZARD

LAZARD FRÈRES & CO. LLC
190 S. LASALLE
31ST FLOOR
CHICAGO, IL 60603
PHONE 312-407-6600
FAX 312-407-6620
www.lazard.com

As of April 1, 2009

Cooper-Standard Holdings, Inc.
39550 Orchard Hill Place
Novi, MI  48375

Attention:      James S. McElya
                Executive Chairman

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Cooper-Standard Holdings, Inc. and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

## Assignment Scope:

The Company hereby retains Lazard as its investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring (as defined below) on the terms and conditions set forth herein.  As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Proceeding")) and/or recapitalization of all or a significant amount of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities (other than a transaction solely involving an issuance of securities to the existing equityholders of the Company or an initial public offering of the Company's equity), sale or disposition of assets in connection with or in furtherance of any other form of Restructuring, sale of debt or equity securities or other interests or other similar transaction or series of transactions that is undertaken by the Company or on its behalf by any third party.

By signing this Agreement, we hereby accept our appointment as your investment banker under the terms hereof.

LAZARD

*Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services ((a) through (k) below collectively referred to herein as the "Services") as the Company may reasonably request, including:

> (a)  Reviewing and analyzing the Company's business, operations and financial projections;
>
> (b)  Evaluating the Company's potential debt capacity in light of its projected cash flows;
>
> (c)  Assisting in the determination of a capital structure for the Company;
>
> (d)  Assisting in the determination of a range of values for the Company on a going concern basis;
>
> (e)  Advising the Company on tactics and strategies for negotiating with the Stakeholders;
>
> (f)  Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;
>
> (g)  Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;
>
> (h)  Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;
>
> (i)  Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;
>
> (j)  Attending meetings with the Company's Stakeholders in connection with a Restructuring; and
>
> (k)  Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for the Services to be provided, the Company shall pay Lazard the following compensation ((a) through (c) below collectively referred to herein as the "Fees"):

> (a)  A monthly fee of $200,000 (the "Monthly Fee"), payable on execution of this Agreement and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 9. One half of all Monthly Fees

paid after $800,000 in Monthly Fees have been paid hereunder shall be credited (without duplication) against any Restructuring Fee subsequently payable. If payment of the first Monthly Fee is made for a partial month based upon the date on which this Agreement is executed, then such Monthly Fee shall be pro rated from the date on which this Agreement is executed to the end of the month.

(b)    Subject to clauses 2(d) and 2(e) below, a fee equal to $1,000,000 (a "Secured Debt Modification Fee"), payable upon receipt or completion of any material renegotiation, modification, amendment, waiver, consent, forbearance and/or similar transaction, arrangement or agreement with respect to covenants included in the Company's secured debt facility (the "Senior Credit Facility") other than a transaction solely involving a short-term waiver or forbearance (the "Secured Debt Modification"); provided, that it is understood and agreed that any such transaction, arrangement or agreement that (i) has more than a short-term effect or (ii) results in a significant modification of any material or economic terms of such secured debt shall be deemed a Restructuring, and not a Secured Debt Modification, for purposes hereof. Any Secured Debt Modification Fee paid shall be credited against any Restructuring Fee subsequently payable.

(c)    Subject to clauses 2(d) and 2(e) below, a fee equal to $7,500,000 (the "Restructuring Fee") payable upon the consummation of a Restructuring; provided, however, that in the case of a Restructuring solely of indebtedness under the Company's 7% senior unsecured notes and/or 8 3/8% senior subordinated notes that is consummated prior to the commencement of Chapter 11 proceedings (whether or not any consent, agreement or other involvement of any third party may be required under the Company's Senior Credit Facility or otherwise), the Restructuring Fee shall be $4,500,000; provided, further, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; provided, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and such plan is not consummated, Lazard shall return such fee to the Company.

(d)    For the avoidance of any doubt, one or more of the fees described in clauses 2(b) and (c) above may be payable; provided, however, that only one fee (which shall be the highest applicable fee) shall be payable in respect of any series of transactions, arrangements, or agreements that are primarily related and comprise part of a single strategy. Under no circumstance will the aggregate of all fees paid to Lazard pursuant to clauses 2(b) and (c) above exceed $8,500,000.

LAZARD

(e)    Notwithstanding any other provision of this Agreement to the contrary, unless Lazard provides material advice and assistance in connection with the following transactions pursuant to the written request of the Company or pursuant to the written advance notification by Lazard to the Company specifying this clause which the Company does not promptly countermand in writing, no fee shall be payable under this Section 2 with respect to a transaction solely involving (i) one or more open market purchases of the Company's notes to the extent currently permitted under the Company's Senior Credit Facility and/or (ii) one or more prepayments of term loan debt through dutch auction or similar transactions to the extent currently permitted under the Company's Senior Credit Facility.

(f)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable document production and reasonable documented out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable documented out-of-pocket fees and expenses, including expenses of counsel, if any, in each case of (A) and (B), payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses, (collectively, the "Expenses").

(g)    As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety.

(h)    All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts become due and payable hereunder.

*Other:*

3.  No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

4.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement. The Company represents and warrants to Lazard that, to the best of its knowledge, all of the foregoing information will be accurate and complete in all material aspects at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position. In performing the Services pursuant to this Agreement, including in connection with any valuation of the Company, Lazard shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board

LAZARD

of Directors, the Company or management or shareholders with respect thereto or with respect to any issues of solvency.

5.   In performing the Services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring or other transaction.  Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

6.   It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise.

7.   Simultaneously herewith, the parties hereto are entering into the Indemnification Letter.  The Indemnification Letter shall survive any termination or expiration of this Agreement.

8.   In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement.  In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

9.   Our engagement hereunder shall automatically expire upon consummation of a Restructuring (other than a Restructuring that is one of a series of related actions comprising a single strategy, the last of which has not been completed), and may be earlier terminated by you or us at any time without liability or continuing obligation to you or us upon 5 days written notice to the other party, except that following such termination and any expiration of this Agreement (a) we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of the Expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company (other than due to Lazard's bad faith, willful misconduct, or gross negligence) and any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof that would be payable had no such termination or expiration occurred in respect of any Restructuring and/or Secured Debt Modification announced or for which an agreement in principal is entered into from the date hereof until 18 months following such termination or expiration, as the case may be.

10. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard.  Without limiting the foregoing, any advice, written or

**LAZARD**

oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating any Restructuring or other transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring or other transaction.

Neither this Agreement nor the Indemnification Letter nor any of their terms or substance, or any non-public information regarding the company delivered to Lazard pursuant to the terms of this Agreement, may be disclosed or made available, in either case, directly or indirectly, by Lazard to any other person or third parties without the prior consent of the Company, except (a) to Lazard and Lazard's affiliates' officers, directors, employees, attorneys, agents and advisors who need to know such information in connection with the matters described in this Agreement or (b) as required by applicable law or compulsory legal process or in connection with any pending legal proceeding or regulatory review (in which case Lazard agrees, to the extent reasonably practicable, to inform the Company promptly thereof). Neither this Agreement nor the Indemnification Letter nor any of their terms or substance, nor any advice, written or oral, rendered by Lazard, may be disclosed publicly or made available, directly or indirectly, by the Company to third parties (other than on a confidential basis and in an accurate manner to professional advisors of the Company who need to know such information in connection with the transactions contemplated hereby) without the prior written consent of Lazard, except as may be required by applicable law or compulsory legal process or in connection with any pending legal proceeding or regulatory review (in which case the Company agrees, to the extent reasonably practicable, to inform Lazard promptly thereof). Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Board of Directors or any other person or entity.

11. In connection with the Services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

12. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. You agree that the Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.

13. In the event that the Company proposes to commence any Chapter 11 proceedings, the Company shall use its best efforts to retain Lazard, subject to Lazard's agreement to so act, to provide an expanded scope of investment banking services in connection with transactions relating thereto on terms and conditions customary for investment bankers of similar standing

LAZARD

Cooper-Standard Holdings, Inc.
As of April 1, 2009
Page 7

acting in similar situations, and the Company shall pay Lazard additional fees to be mutually agreed in good faith and determined with reference to the compensation provided herein that will appropriately compensate Lazard in light of the magnitude and complexity of such transactions and the fees customarily paid to investment bankers of similar standing for similar transactions.

14. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York (without regard to the principle of conflicts of law). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. To the extent permitted by applicable law, the Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the Services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO, LLC

By: _____
    John C. Adams
    Managing Director

Accepted and Agreed to as of the date first written above.

COOPER-STANDARD HOLDINGS, INC., on behalf of itself
and its controlled subsidiaries

By._____
    James S. McElya
    Executive Chairman

LAZARD

As of April 1, 2009

Cooper-Standard Holdings, Inc.
39550 Orchard Hill Place
Novi, MI 48375

Attention:   James S. McElya
             Executive Chairman

Gentlemen:

In connection with our engagement to advise and assist Cooper-Standard Holdings, Inc. and its controlled subsidiaries (collectively, the "Company" or "you") with the matters set forth in the engagement letter of even date herewith (the "Engagement Letter"), you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim or proceeding or investigation (each, on "Action") brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its legal and other reasonable documented out-of-pocket expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith (except the allocated costs of in-house counsel) upon presentation of a reasonably detailed summary statement. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses (collectively, "Losses") to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened Action giving rise to such Losses is initiated or brought by you or on your behalf and whether or not in connection with any Action in which you or any such Indemnified Person are a party, except to the extent that any such Loss is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's willful misconduct, bad faith or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any Loss is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's willful misconduct, bad faith or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and

indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the Loss for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors, on the one hand, and the Indemnified Person entitled to contribution, on the other hand, in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such Loss and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Person shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened Action in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such Action), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such Action.

In addition, no Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (which consent shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in any pending or threatened Action in respect of which indemnification, reimbursement or contribution is being sought.

Promptly after receipt by an Indemnified Person of actual notice of any complaint or the commencement of any Action by any third party with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such Action, but failure to so notify the Company will not relieve it from any

LAZARD

liability which it may have hereunder or otherwise, except to the extent that such failure materially prejudices the Company's rights.

No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. To the extent permitted by applicable law, you hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf) and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
John C. Adams
Managing Director

AGREED TO AND ACCEPTED
as of the date first
above written:

COOPER-STANDARD HOLDINGS, INC., on behalf of itself
and its controlled subsidiaries

By _____