## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>COOPER-STANDARD HOLDINGS INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12743 (PJW)<br>(Jointly Administered)<br><br>**Hearing Date**: September 1, 2009<br>at 1:30 p.m. (EDT)<br>**Objection Deadline**: August 25, 2009<br>at 4:00 p.m. (EDT) |

### APPLICATION PURSUANT TO SECTIONS 327(a) AND 330 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014 AND LOCAL RULE 2014-1 FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY ERNST & YOUNG LLP AS AUDITORS AND TAX ADVISORS NUNC PRO TUNC TO THE FILING DATE

Cooper-Standard Holdings Inc. ("Holdings") and the other above-captioned debtors

and debtors in possession (collectively, the "Debtors"), hereby submit this application (the

"Application") for an order pursuant to sections 327(a) and 330 of title 11 of the United

States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Local Rule 2014-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), substantially in the form attached hereto as Exhibit A,

authorizing the Debtors to retain and employ the Ernst & Young LLP ("E&Y LLP") as

auditors and tax advisors to the Debtors *nunc pro tunc* to August 3, 2009 (the "Filing Date").

---

[1]     The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Cooper-Standard Holdings Inc. (5088); Cooper-Standard Automotive Inc. (9970); Cooper-Standard Automotive FHS Inc. (2953); Cooper-Standard Automotive Fluid Systems Mexico Holding LLC (0442); Cooper-Standard Automotive OH, LLC (2845); StanTech, Inc. (4014); Westborn Service Center, Inc. (7448); North American Rubber, Incorporated (9926); Sterling Investments Company (1393); Cooper-Standard Automotive NC L.L.C. (2839); CS Automotive LLC (4267); CSA Services, Inc. (9510); NISCO Holding Company (1697). The corporate address of the Debtors is 39550 Orchard Hill Place Drive, Novi, Michigan 48375.

In support of this Application, the Debtors submit the Affidavit of Paul D. Chevalier in Support of the Debtors' Application (the "Chevalier Affidavit"), attached hereto as <u>Exhibit B</u>.[2] In further support of this Application, the Debtors respectfully state as follows:

## BACKGROUND

1.     On August 3, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By order dated August 4, 2009, the Debtors' chapter 11 cases ("Cases") were consolidated for procedural purposes only. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession. No trustee or examiner has been appointed in the Cases. No official committees have been assigned or designated.

2.     The Debtors and their foreign non-debtor affiliates and subsidiaries (collectively, the "Company") are a leading global manufacturer of fluid handling, body sealing, noise vibration, and harshness control ("NVH") components, systems, subsystems, and modules, which are designed primarily for use in passenger vehicles and light trucks for global original equipment manufacturers ("OEMs") and replacement markets. The Company designs and manufactures products in each major region of the world. The Company operates in sixty-eight manufacturing locations and ten design, engineering, and administrative locations in eighteen countries around the world.

3.     The Company operates in two divisions, North America and International (covering Europe, South America and Asia). The Company's customers are OEMs, including Ford Motor Company, General Motors Company, Chrysler Group LLC, Audi, BMW, Fiat, Honda, Mercedes Benz, Porsche, PSA Peugeot Citroën, Renault/Nissan, Toyota,

---

2     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Chevalier Affidavit.

2

Volkswagen and other Tier I and Tier II automotive suppliers. In 2008, the Company's products were found in twenty-two of the twenty-five top-selling models in North America and in twenty-four of the twenty-five top-selling models in Europe.

4.     Cooper-Standard Automotive Canada Limited ("CSA Canada") is currently subject to a proceeding under the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice in Toronto, Ontario, Canada.  None of the Company's other foreign subsidiaries are debtors in these Cases and none have commenced insolvency proceedings in other jurisdictions.

## JURISDICTION

5.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), in that this is a matter concerning the administration of the Debtors' estates.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 327(a) and 330 of the Bankruptcy Code.

## RELIEF REQUESTED

6.     By this Application, the Debtors seek entry of an order authorizing the employment and retention of E&Y LLP as their auditors and tax advisors, *nunc pro tunc* to the Filing Date. E&Y LLP and the Debtors have entered into four engagement letters, copies of which are attached to the Chevalier Affidavit as Exhibits A-1 through A-4 (and each incorporated herein by reference) (the "Engagement Letters"), which describe the scope of the Debtors' proposed employment of E&Y LLP.

7.     The Engagement Letters describe the services that E&Y LLP anticipates performing for the Debtors in these Cases and the terms and conditions of E&Y LLP's

3

proposed engagement by the Debtors. The Debtors now seek authority to employ E&Y LLP in these Cases on the terms of the Engagement Letters and subject to the conditions described below.

8.     The Debtors require the services of seasoned and experienced auditors and tax advisors that are familiar with (i) the Debtors' businesses and operations and (ii) the chapter 11 process. In the course of performing services for the Debtors, E&Y LLP has developed a reserve of institutional knowledge related to, and an intimate understanding of, the Debtors' businesses, finances, operations, systems and capital structure. Moreover, E&Y LLP has served, and is currently serving, as auditors and tax advisors to numerous debtors in possession in various chapter 11 proceedings. Thus, the Debtors believe that E&Y LLP is well suited and uniquely qualified to serve as the Debtors' auditors and tax advisors in these Cases.

9.     The Debtors respectfully submit that the services of E&Y LLP are necessary to maximize the value of the Debtors' estates and to reorganize successfully. E&Y LLP has indicated a willingness to act on behalf of the Debtors. Additionally, the Debtors have been advised by E&Y LLP that E&Y LLP will coordinate with the other retained professionals in these Cases to eliminate unnecessary duplication or overlap of work. The Debtors submit that the employment and retention of E&Y LLP would be in the best interest of the Debtors, their estates and creditors.

### APPLICABLE AUTHORITY

10.     Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more financial advisors, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest

4

> adverse to the estate, and that are disinterested persons, to
> represent or assist the trustee in carrying out the trustee's duties
> under this title.

11 U.S.C. § 327(a).

11. Bankruptcy Rule 2014(a) provides, in relevant part, as follows:

> An order approving the employment of financial advisors . . . or
> other professionals pursuant to § 327 . . . of the Code shall be
> made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014(a).

12. Local Rule 2014-1 provides in relevant part, as follows:

> Any entity seeking approval of employment of a professional
> person pursuant to 11 U.S.C. § 327, 1103(a) or 1114 or Fed. R.
> Bankr. P. 2014 . . . shall file with the Court a motion, a
> supporting affidavit or verified statement of the professional
> person, and a proposed order for approval.

Del. Bankr. LR 2014-1(a).

13. Accordingly, this Court is authorized to grant the relief requested in this

Application.

## SERVICES TO BE PROVIDED

14. As set forth in further detail in the Engagement Letters, E&Y LLP has agreed

to provide certain audit services ("Audit Services") and tax services ("Tax Services" and,

together with Audit Services, the "Services") to the Debtors in connection with these chapter

11 cases upon approval of this Court. A summary description of the Services is set forth

below and fully described in the Engagement Letters:[3]

---

[3] This summary is qualified in its entirety by reference to the provisions of the Engagement Letters. To the extent
there is any discrepancy between the terms contained in this Application and those set forth in the Engagement
Letters, the terms of the Engagement Letters shall control. Unless otherwise defined, capitalized terms used in
this summary shall have the meanings ascribed to them in the Engagement Letters.

RLF1-3424230-2

A. **Audit**

    (i)    Audit and report on the consolidated financial statements of the Company for the year ended December 31, 2009;

    (ii)    Audit and report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2009;

    (iii)    Review the Company's unaudited interim financial information before the Company files its Form 10-Q;

    (iv)    As and when requested by the Company, provide accounting-related advisory and research services relating to various accounting matters, including, without limitation: consultations required for significant proposed or executed transactions; implementation of new accounting standards; continuing education support; assistance with and review of registration statements, comfort letters and consents; information technology internal controls' services related to mergers, acquisitions and divestitures; and fresh start accounting, including related audit procedures; and

    (v)    As and when requested by the Company, perform additional audit procedures with respect to any financial statements of a consolidated or non-consolidated affiliate of Cooper-Standard.

B. **Bankruptcy Tax Services**

    (i)    Advise and assist in developing an understanding of the tax issues and options related to the Debtors' bankruptcy filing;

    (ii)    Advise and assist on the federal, international, state and local income tax consequences of proposed plans of reorganization, including, if necessary, assisting in the preparation of IRS ruling requests regarding the tax consequences of alternative reorganization structures;

    (iii)    Understanding the reorganization and/or restructuring alternatives that are being evaluated with the Debtors' existing bondholders and other creditors that may result in a change in the equity, capitalization, and/or ownership of the shares of the Debtors or their assets;

    (iv)    Prepare calculations and apply the appropriate federal, international, state and local tax law to historic information regarding changes in ownership of the Company's stock to calculate whether any of the shifts in stock ownership may have caused an ownership change that will restrict the use of tax attributes and the amount of any such limitation;

(v)    Determine the tax asset and stock basis and deferred inter-company transactions and other consolidated return issues for each legal entity in the Debtors' U.S. tax group;

(vi)    Determine the amount of tax attribute reduction related to debt cancellation income and modeling the tax consequences of such reduction;

(vii)    Advise on the income tax accounting implications of the Debtors' emergence from bankruptcy pursuant to FAS 109 and fresh start accounting principles;

(viii)    Analyze the federal, international, state and local tax treatment governing the timing of deductions of any costs incurred as the Debtors rationalize their operations;

(ix)    Analyze the federal, state and local tax treatment of the costs and fees incurred by the client in connection with the bankruptcy proceedings;

(x)    Analyze the federal, state and local tax treatment of interest and financing costs related to debt subject to the automatic stay, and new debt incurred as the Company emerges from bankruptcy;

(xi)    Analyze the federal, international, state and local tax consequences of restructuring of inter-company accounts'

(xii)    Analyze the federal, international, state and local tax consequences of proposed dispositions of assets during these Cases;

(xiii)    Analyze the federal, international, state and local tax consequences of restructuring in the U.S. or internationally during these Cases;

(xiv)    Analyze the federal, international, state and local tax consequences of potential bad debt and worthless stock deductions;

(xv)    Analyze the federal, state and local tax consequences of employee benefit plans;

(xvi)    Assist with various tax issues arising in the ordinary course of the Debtors' businesses, including but not limited to assistance with IRS and state and local tax examinations, sales and use tax issues, property tax issues, state and local income/franchise tax issues, and employment tax issues;

(xvii)    Provide tax advisory services and support regarding the tax aspects of the bankruptcy process, the validity of bankruptcy tax claims, and tax advisory support in securing tax refunds, including, but not limited to the following types of taxes: income taxes, franchise taxes, sales taxes, use taxes, employment taxes, and property taxes.

7

(xviii) Document, as appropriate or necessary, the tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, or other tax matter described above; and

(xix) Provide testimony as fact witness, if necessary, regarding E&Y LLP work done on Company's tax attributes and overall tax posture and the impact of bankruptcy on such attributes and the Debtors' overall tax position.

C.   **Routine On-Call Advice**

(i) Respond to basic tax questions and assignments. Specific tasks that may be involved include participation in meetings and telephone calls with Company personnel, participating in meetings and telephone calls with taxing authorities and other third parties, review of transactional documentation, research of technical issues, and the preparation of technical memoranda, letters, emails, and other written documentation.

15.   Copies of the Engagement Letters attached to the Chevalier Affidavit (and incorporated herein by reference) are submitted to this Court for approval and E&Y LLP's provision of the Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters.

## PROFESSIONAL COMPENSATION

16.   During the ninety (90) days immediately preceding the Filing Date, the Debtors paid E&Y LLP fees totaling $709,420 ($300,000 of which constituted advance payments and $175,000 of which constituted a retainer to E&Y LLP). E&Y LLP's proposed fee structure for the Services is set forth as follows:

A.   **Tax Services**

17.   Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letters, E&Y LLP intends to charge the Debtors for Tax Services rendered in these Cases based on its hourly rates for such Services. These rates are currently as follows:

8

| | |
|---|---|
| National Executive Directors / Principals / Partners | $600 - $800 |
| Local Executive Directors / Principals / Partners | $550 - $725 |
| Senior Managers | $470 - $625 |
| Managers | $385 - $500 |
| Seniors | $325 - $425 |
| Staff | $185 - $250 |

18.     E&Y LLP's hourly rates are revised periodically in the ordinary course of E&Y LLP's business.  E&Y LLP shall advise the Debtors of its new rates once they are established if a rate change is effective during the course of this engagement.

B.    **Audit Services**

19.     E&Y LLP's aggregate professional fees for Audit Services performed in the United States under the audit Engagement Letter will be $1,381,000 plus expenses.  A portion of this fee was paid prior to the Filing Date, as described in the schedule below. Subject to the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders of this Court, E&Y LLP intends to submit post-petition invoices to the Debtors for Services performed in the United States under the audit Engagement Letter in accordance with the schedule below:

| | Audit of | | | |
|---|---|---|---|---|
| | **Financial Statements** | **Internal Control** | **Interim Reviews** | **Total** |
| May 2009 | $ 200,000 | $ 100,000 | $ 50,000 | $ 350,000 |
| July 2009 | | | 50,000[4] | 50,000 |
| August 2009 | 250,000 | | | 250,000 |
| September 2009 | 120,000 | 50,000 | | 170,000 |
| October 2009 | 120,000 | 50,000 | 50,000 | 220,000 |
| November 2009 | 100,000 | 100,000 | | 200,000 |
| January 2010 | 116,000 | 25,000 | | 141,000 |
| **Total** | $ 906,000 | $ 325,000 | $ 150,000 | $ 1,381,000 |

20.     The audit Engagement Letter also provides in regard to the Audit Services that E&Y LLP may perform additional accounting related advisory and research services at the request of the Debtors. Fees relating to these additional services will be subject to the Bankruptcy Court's approval and billed at hourly rates as scheduled in the attachment to the audit Engagement Letter. The audit Engagement Letter further provides that E&Y LLP will submit monthly invoices and detailed billing schedules by individual and topic at hourly rates as so scheduled.

21.     In addition to the hourly rates and schedule set forth above, the Debtors shall reimburse E&Y LLP for any direct expenses incurred in connection with E&Y LLP's retention in these Cases and the performance of the Services set forth in the Engagement Letter. E&Y LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses (including any fees or reasonable expenses of E&Y LLP's legal counsel relating to

---

[4]  To be applied to the previously executed retainer.

RLF1-3424230-2

considering or responding to discovery requests or participating as a witness) specifically related to this engagement.

22. E&Y LLP has informed the Debtors that it has not shared or agreed to share any of its compensation in connection with this matter with any other person.

23. Notwithstanding approval of the Engagement Letters under Bankruptcy Code section 327(a), E&Y LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the compensation structure set forth in the Engagement Letters.

24. The Debtors believe that the compensation structure appropriately reflects the nature and scope of services to be provided by E&Y LLP in these complex chapter 11 cases and are consistent with and typical of arrangements entered into by E&Y LLP and other accounting firms with respect to rendering similar services for clients such as the Debtors.

## TERMINATION OF ENGAGEMENT

25. The Debtors and E&Y LLP may terminate the Engagement Letters at any time, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or liquidation of the Debtors' assets under chapter 7 or 11 of the Bankruptcy Code or otherwise. Upon any such termination of the Engagement Letters, the Debtors will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.

RLF1-3424230-2

# CERTAIN PROVISIONS OF THE ENGAGEMENT LETTERS

26.     E&Y LLP's provision of Services to the Debtors is contingent upon this Court's approval of each term and condition set forth in the Engagement Letters. Included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following (the "Sole Responsibility Provision"):

> E&Y LLP shall be solely responsible for the performance of the Services and all of the other liabilities and obligations of E&Y LLP under this Agreement, including any Statement of Work. Client and its affiliates or other persons or entities for or in respect of which any of the Services are provided shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y LLP, or against any subcontractors, members, shareholders, directors, officers, managers, partners or employees of E&Y LLP or any other E&Y Entity, or any of the assets of any thereof, in connection with the performance of the Services or otherwise under the Agreement or any Statement Of Work.

27.     In addition, included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following (the "Jurisdiction Provision"):

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of E&Y LLP) shall be brought in the Bankruptcy Court or the applicable district court if such district court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the district court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The

foregoing is binding upon the Company, E&Y LLP and any and all successors and assigns thereof.

28. The Debtors believe that these provisions are reasonable terms and conditions of the E&Y LLP engagement. E&Y LLP and the Debtors believe that these provisions are comparable to those generally obtained by professional firms of similar stature to E&Y LLP and for comparable engagements, both in and out of court.

## NO DUPLICATION OF SERVICES

29. The Debtors intend for E&Y LLP's services to complement, and not duplicate, the services to be rendered by any other professional retained in these cases. E&Y LLP understands that the Debtors will retain additional professionals during the term of the engagement and will work cooperatively, as requested by the Debtors, with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## E&Y LLP'S DISINTERESTEDNESS

30. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Chevalier Affidavit, E&Y LLP (a) is a "disinterested person" within the meaning of Bankruptcy Code section 101(14); as modified by Bankruptcy Code section 1107(b), and (b) does not hold or represent an interest adverse to the Debtors' estates.

31. E&Y LLP has informed the Debtors that, except as disclosed or described in the Chevalier Affidavit, neither E&Y LLP, nor any partner or professional thereof, has any connection with the Debtors, its creditors, equity holders or any other parties-in-interest (as known to E&Y LLP), or the United States Trustee, or Assistant United States Trustee assigned to these Cases.

RLF1-3424230-2

32. E&Y LLP has informed the Debtors that should any additional significant relationships with parties-in-interest in these Cases become known to E&Y LLP or if E&Y LLP discovers additional information that requires disclosure, E&Y LLP will file supplemental disclosures with this Court.

## NOTICE

33. Notice of this Application will be provided to: (a) the Office of the United States Trustee; (b) counsel to the agent under the Debtors' postpetition credit facility; (c) counsel to the Administrative Agent under the Debtors' prepetition Credit Agreement; (d) counsel to the ad hoc group of holders of the Debtors' senior notes; (e) counsel to the ad hoc group of holders of the Debtors' senior subordinated notes, and (f) the 30 largest unsecured creditors and the statutory committee of unsecured creditors (or, if retained, its counsel) when one is appointed. Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

## NO PRIOR REQUEST

34. No prior request for the relief sought in this Application has been made to this or any other court.

RLF1-3424230-2

WHEREFORE, for the reasons set forth herein and in the Chevalier Affidavit, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to employ and retain E&Y LLP as their auditors and tax advisors, *nunc pro tunc* to the Filing Date and (b) granting such other and further relief as is appropriate.

Dated:    August 12, 2009

COOPER-STANDARD HOLDINGS INC.
(for itself and on behalf of its affiliated Debtors and Debtors-in-Possession)

By: _____
Allen J. Campbell
Vice President and Chief Financial Officer