# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COOPER-STANDARD HOLDINGS INC., *et al.*,[1] | ) Case No. 09-12743 (PJW) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Related Doc. No. (11), (172) |

## CORRECTED FINAL ORDER (I) AUTHORIZING U.S. DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (B) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364

Upon consideration of the motion (the "Motion")[2], dated August 3, 2009, of Cooper-Standard Holdings Inc. ("Holdings"), and the other above-captioned debtors and debtors-in-possession (collectively, the "U.S. Debtors") in the above-captioned cases (the "Chapter 11 Cases") pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the Bankruptcy Court for the District of Delaware, seeking, among other things:

(i)      The Court's authorization for the U.S. Borrower (as defined below) to obtain postpetition financing (the "Financing"), and the U.S. Borrower and U.S. Guarantors (as defined below) to guaranty the obligations of all Obligors (as defined below) in connection with the Financing, consisting of a superpriority priming delayed draw term loan facility (the "DIP

---

[1]      The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Cooper-Standard Holdings Inc. (5088); Cooper-Standard Automotive Inc. (9970); Cooper-Standard Automotive FHS Inc. (2953); Cooper-Standard Automotive Fluid Systems Mexico Holding LLC (0442); Cooper-Standard Automotive, OH LLC (2845); StanTech, Inc. (4014); Westborn Service Center, Inc. (7448); North American Rubber, Incorporated (9926); Sterling Investments Company (1393); Cooper-Standard Automotive NC LLC (2839); CS Automotive LLC (4267) ("U.S. Finco"); CSA Services Inc. (9510); NISCO Holding Company (1697).

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Loan Agreement as applicable.

<u>Facility</u>") in an aggregate principal amount of up to $200,000,000 and other financial accommodations, allocated as follows:

(a) <u>**DIP Term Loans**</u>. A superpriority priming delayed draw term loan facility in the principal amount of $175,000,000 (the "<u>DIP Term Loan Commitments</u>" and the term loans made thereunder, the "<u>DIP Term Loans</u>") to be secured by liens on all of the property, assets or interests in property or assets of each U.S. Debtor, each U.S. Debtor's "estate" (as defined in the Bankruptcy Code), and the Canadian Borrower[3] and on certain of the property and assets of each other Obligor (as defined below), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each subsidiary of such U.S. Debtor or other Obligor[4] (excluding the capital stock, if any, of any Permitted Joint Ventures), all of the capital stock of all other entities that are not subsidiaries directly owned by such U.S. Debtor or other Obligor

---

[3] Neither the Canadian Borrower nor U.S. Finco will guaranty, and the liens on their respective property will not secure, the obligations of the U.S. Borrower, however the Canadian Borrower (subject to the approval of the Canadian Court) and U.S. Finco will guaranty, and the liens on their respective property will secure, the obligations of the Canadian Borrower and any Additional Foreign Borrower.

[4] With respect to liens on the voting capital stock of foreign subsidiaries of the U.S. Debtor or other Obligor (other than subsidiaries organized in Mexico, Brazil, or the Netherlands), such liens securing the obligations of the U.S. Borrower shall be limited to pledges that would not result in deemed dividends to the U.S. Debtor or such other Debtors pursuant to section 956 of the Internal Revenue Code, except as otherwise agreed pursuant to the DIP Documents, as that term is defined herein. For the avoidance of doubt, 100% of the voting capital stock of the wholly-owned direct or indirect subsidiaries of Holdings organized in Mexico, Brazil, and the Netherlands shall secure the obligations of the U.S. Borrower.

(other than capital stock of Permitted Joint Ventures), money, investment property, deposit accounts, all commercial tort claims and other causes of action (including any and all actions arising under the Bankruptcy Code), Cash Collateral (as that term is defined below), and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above (collectively, with respect to all such entities, the "Collateral")[5] and entered into between, on the one hand, Holdings, Cooper-Standard Automotive Inc., an Ohio corporation (the "U.S. Borrower"), as debtor and debtor-in-possession under the Bankruptcy Code, and Cooper-Standard Automotive Canada Limited, a corporation organized under the laws of Ontario ("Cooper Canada" or "Canadian Borrower"), as a petitioner under a proceeding (the "Canadian Case") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"), and any Additional Foreign Borrower (as defined in the DIP Loan Agreement) and, on the other hand, Deutsche Bank Trust Company Americas ("DB"), as administrative agent (the "DIP Administrative Agent"), collateral agent (the "Collateral Agent"), and documentation agent (the "Documentation Agent"), Banc of America Securities LLC, General Electric Capital Corporation, and UBS Securities LLC, as joint syndication agents (collectively the "Syndication Agent"), and Deutsche Bank Securities Inc. and General Electric Capital Corporation, as joint lead arrangers and joint book-running lead managers and Banc of America Securities LLC and UBS Securities LLC as co-arrangers (collectively, the "Arrangers," and together with the DIP Administrative Agent, the Collateral Agent, the Documentation Agent, the

---

[5] For the avoidance of doubt, the term Collateral shall not include any Avoidance Actions (as defined below).

Syndication Agent and any successors in such capacities, the "DIP Agents") and certain financial institutions that are party to the DIP Loan Agreement (as defined below) from time to time with respect to the DIP Facility (each a "DIP Lender," and collectively, the "DIP Lenders") with all obligations under the DIP Documents (as defined below) to be guaranteed (the "Guarantee") (i) with respect to obligations of the U.S. Borrower, the Canadian Borrower, and any Additional Foreign Borrower (collectively the "Borrowers"), unconditionally and jointly and severally by Holdings and each U.S. direct or indirect subsidiary of Holdings (other than U.S. Finco) as debtor and debtor-in-possession under the Bankruptcy Code (together with Holdings, the "U.S. Guarantors")[6] as well as all direct or indirect wholly-owned subsidiaries of Holdings organized under the laws of Mexico, Brazil, and the Netherlands (the "Global Guarantors"), (ii) with respect to all obligations of the Canadian Borrower under the DIP Facility, unconditionally and jointly and severally (to the extent provided in the DIP Obligations), by U.S. Finco and certain non-U.S. direct or indirect subsidiaries of Holdings as specified in the DIP Documents (the "Canadian Guarantors"), and (iii) with respect to all obligations of the Additional Foreign Borrower, unconditionally and jointly and severally (to the extent provided in the DIP Obligations), by U.S. Finco and certain non-U.S. direct or indirect subsidiaries of Holdings as specified in the DIP Documents (the "AFB Guarantors," and together with the Global Guarantors and the Canadian Guarantors, the "Non-U.S. Guarantors," and the Non-U.S. Guarantors together with the U.S. Guarantors, the "Guarantors," and the Guarantors together with the Borrowers, the "Obligors").

(b) **Incremental New Money Loans**. Subject to entry of a further order of the Court

---

[6] Each U.S. Guarantors and U.S. Finco are U.S. Debtors in the Chapter 11 Cases.

approving such Incremental DIP Facility, a standby uncommitted single draw term loan facility (the "Incremental DIP Facility," which shall be considered part of the DIP Facility for all purposes hereof), in one or more series, in an aggregate amount not exceeding $25,000,000 (the incremental term loans thereunder, the "Incremental DIP Loans" which shall be considered DIP Loans for all purposes hereof; and the lenders from time to time thereunder, "Incremental DIP Lenders," who shall be considered DIP Lenders for all purposes hereof). Following a request by the Borrowers, the Incremental DIP Facility may be made available by any of the DIP Lenders, in their sole discretion, with the consent of the Requisite DIP Lenders in accordance with section 2.01(d) of the DIP Loan Agreement (as defined below);

(ii)     The Court's authorization for the U.S. Debtors to execute and deliver (and cause their non-U.S. Debtor subsidiaries to execute and deliver to the extent necessary) additional final documentation consistent with the terms of (or as may be required by) the Debtor-In-Possession Financing Agreement (as the same may be amended or modified, the "DIP Loan Agreement"[7]) in the form attached to this Final Order as Exhibit A, the Guaranties (the "Guaranties") attached as Exhibit B to this corrected final order (the "Final Order") and all additional documentation (the "DIP Loan Documents" and together with the DIP Loan Agreement and the Guaranties, the "DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(iii)     The Court's authorization for the use of proceeds of the Financing extended to the U.S. Borrower as expressly provided in the DIP Documents (A) to pay costs, fees and expenses of the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders as provided for in the Interim Order and the DIP Documents, as well as all scheduled payments of

---

[7]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement.

interest and principal thereunder, (B) to provide working capital and for other general corporate purposes of the U.S. Debtors and, by way of the Intercompany Notes of the Non-U.S. Guarantors and of the other subsidiaries of Holdings, and (C) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by the Bankruptcy Court provided that payments under clause (A) above shall be made from the proceeds of the DIP Facility irrespective of the then-applicable 13-Week Budget;

(iv)     The Court granting to the DIP Lenders and the DIP Administrative Agent in respect of the DIP Loans, for the benefit of the DIP Agents, the DIP Lenders and any other parties referred to in the collateral documents (collectively, the "DIP Secured Parties") with respect to the respective DIP Obligations (as defined below), in accordance with the relative priorities as set forth more fully below, and subject to, after the Carve-Out Effective Date (as defined below), the Carve-Out (as defined below)[8]:

> (a)  pursuant to Bankruptcy Code section 364(c)(1), joint and several superpriority administrative expense claim status in the Chapter 11 Cases, which claims in respect of the DIP Facility shall be superior to any and all other claims;

> (b)  pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on all unencumbered assets of the U.S. Debtors and their estates (now or hereafter acquired and all proceeds thereof);

---

[8]     With respect to liens on the voting capital stock of foreign subsidiaries of the U.S. Debtors (other than those subsidiaries organized in Mexico, Brazil, or the Netherlands), such liens securing the obligations of the U.S. Borrower shall be limited to pledges that would not result in deemed dividends to the U.S. Debtor or such other Debtors pursuant to section 956 of the Internal Revenue Code, except as otherwise agreed pursuant to the DIP Documents, as defined herein. For the avoidance of doubt, 100% of the voting capital stock of the wholly-owned direct or indirect subsidiaries of Holdings organized in Mexico, Brazil, and the Netherlands shall secure the obligations of the U.S. Borrower.

(c) pursuant to Bankruptcy Code section 364(c)(3), a junior lien on all encumbered assets (except as set forth in Subparagraph (d) below) of the U.S. Debtors and their estates (now or hereafter acquired and all proceeds thereof); and

(d) pursuant to Bankruptcy Code section 364(d), a first priority priming lien on all assets of the U.S. Debtors and their estates (now or hereafter acquired and all proceeds thereof) that were subject to the liens of the Prepetition Primed Obligations (as defined below) as of the Filing Date (as defined below);

(v)     The Court granting protection to the secured parties whose liens and security interests are being primed by the Financing as set forth below (such parties, the "Lender Protection Parties");

(vi)     The Court's authorization for the U.S. Debtors to use any Cash Collateral in which Lender Protection Parties may have an interest and the granting of certain protections to the Lender Protection Parties with respect to, inter alia, use of their Cash Collateral in accordance with the 13-Week Budget and the use (and any Diminution in Value (as defined below)) of their collateral;

(vii)     The Court vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order;

(viii)     The Court waive any applicable stay (including under Bankruptcy Rule 6004) and provide for immediate effectiveness of the Interim Order;

(ix)     Pursuant to Bankruptcy Rule 4001, the Court order that an interim hearing on the

Motion be held before this Court to consider entry of the Interim Order, authorizing that during the period commencing on the date (the "Interim Order Entry Date") of this Court's entry of the Interim Order and ending on the earlier of (a) the date this Court enters the Final Order and (b) the occurrence of the DIP Loan Maturity Date (as defined in the DIP Loan Agreement) (such period, the "Interim Period"), a portion of the DIP Commitments shall be borrowed by the U.S. Borrower (the "Initial Availability"), subject to (i) delivery by the U.S. Debtors of the 13-Week Budget, (ii) entry by the Canadian Court of an initial order approving the Canadian Borrower's entry into the DIP Loan Agreement (the "Initial Canadian Order"), and (iii) compliance with the terms, conditions and covenants contained in the definitive documents relating to the DIP Facility, including, without limitation, the credit agreements, guarantees, security agreements, pledge agreements, and all other DIP Documents, in an amount equal to the lesser of $35,000,000[9] or such other amount as may be approved by order of this Court, to be made available during the Interim Period in accordance with the 13-Week Budget; and

(x)      The Court schedule a final hearing to consider entry of the Final Order granting the relief requested in the Motion on a final basis and authorizing the balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion and DIP Documents filed with this Court.

The interim hearing on the Motion having been held on August 4 and 5, 2009 (the "Interim Hearing") and the court having entered the Interim Order (I) Authorizing U.S. Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364, (B) To Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Certain Protections To Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III)

---

[9]      An additional amount not to exceed $15,000,000 will be made available to the Canadian Borrower during the Interim Period, subject to approval by the Canadian Court.

Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) on August 5, 2009 [D.I. 59] (the "Interim Order"); and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and at the hearing held on September 1, 2009 (the "Final Hearing"); and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the U.S. Debtors, their estates, and creditors; and the U.S. Debtors having provided notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:** [10]

      A.    Filing Date. On August 3, 2009 (the "Filing Date"), the U.S. Debtors commenced their Chapter 11 Cases by filing voluntary petitions for relief under the Bankruptcy Code. The U.S. Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of these Chapter 11 Cases.

      B.    Jurisdiction; Venue. The Court has jurisdiction over these cases, the parties, and the U.S. Debtors' property pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Bankruptcy Rules.

---

[10]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

C.  Committee Formation.  An official committee of unsecured creditors (the "Creditors' Committee") was appointed on August 14, 2009.

D.  Prepetition Loan Documents.  The U.S. Debtors and the Canadian Borrower are Borrowers or Guarantors under that certain Credit Agreement, dated as of December 23, 2004 (as amended, restated, supplemented or otherwise modified from time to time, including by that certain First Amendment and Consent to Credit Agreement, dated February 1, 2006, that certain Second Amendment to Credit Agreement, dated July 26, 2007, that certain Third Amendment and Waiver to Credit Agreement, dated December 18, 2008, that certain Fourth Amendment to Credit Agreement, dated May 15, 2009, and the Fifth Amendment and Consent to Credit Agreement (the "Fifth Amendment") dated as of July 14, 2009, the "Prepetition Facility" and, together with the Credit  Documents (as defined therein), the "Prepetition Loan Documents"), the lenders from time-to-time party thereto (the "Prepetition Lenders") and DB as administrative agent  (the "Prepetition Agent") for the Prepetition Lenders, and the other agents party thereto.  Pursuant to the Prepetition Loan Documents, the Prepetition Lenders provided the U.S. Debtors and other Obligors with loans and letters of credit in the aggregate principal amount of approximately $503,400,000, CND$50,000,000 and €63,100,000 million.  For purposes of this Final Order, the term "Prepetition Indebtedness" shall mean all amounts owed, as of the Filing Date, to the Prepetition Agent and the Prepetition Lenders under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined in the Prepetition Facility) of any Credit Party (as defined in the Prepetition Facility) thereunder.

E.  Stipulations.  In requesting the Financing under the DIP Documents, the Obligors permanently, immediately, and irrevocably acknowledge, represent, stipulate, and agree that, in each case subject to paragraph 19 of this Final Order:

(i)  in entering into the DIP Documents, and as consideration therefor, the Obligors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in

cash and completely satisfied, and the commitments are terminated in accordance with the terms of the DIP Documents, the Obligors will not (except as expressly permitted by this Final Order, the DIP Documents, or the Prepetition Loan Documents) in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens, security interests, or claims provided under this Final Order or Prepetition Facility to the DIP Administrative Agent or the Prepetition Agent by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364 of the Bankruptcy Code, or otherwise;

(ii)     as of the Filing Date, (A) the aggregate principal amount of the Prepetition Indebtedness is not less than $503,400,000, CND$50,000,000 and €63,100,000 plus all accrued and unpaid interest, plus all fees, costs, and expenses incurred in connection therewith, and all other Obligations under the Prepetition Facility, (B) all of the Prepetition Indebtedness is unconditionally owing by the Obligors to the Prepetition Agent and the Prepetition Lenders, and (C) all claims in respect of the Prepetition Indebtedness are not and shall not be subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, recoupment, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity and the Prepetition Loan Documents constitute the legal, valid, and binding obligations of the U.S. Debtors, their respective estates, and the other Obligors and are enforceable against each such U.S. Debtor, estate, and Obligor in accordance with the terms of the Prepetition Loan Documents;

(iii)     the liens securing the Prepetition Facility (the "Existing Liens") (A) constitute valid, binding, enforceable, and perfected first priority liens on the collateral as described in the Prepetition Loan Documents (the "Prepetition Collateral") that, prior to the entry of the Interim Order, were subject only to the Permitted Liens (as defined in the Prepetition Loan Documents) and (B) are not, and shall not be, subject to avoidance, reduction, setoff,

recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity;

(iv)     the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders are not control persons or insiders of the Obligors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Documents and/or the Prepetition Loan Documents;

(v)     as of the date hereof, there exist no claims or causes of action against any of the Prepetition Agent, the Prepetition Lenders, the DIP Agents, or the DIP Lenders with respect to, in connection with, related to, or arising from the Prepetition Facility or the Financing that may be asserted by the Obligors or any other person or entity;

(vi)     as of the date hereof, there were no other liens on or security interests in the Collateral except for the Existing Liens and, to the extent such liens are determined to be valid, perfected, binding, and enforceable, the Permitted Liens; and

(vii)     the Obligors forever and irrevocably release, discharge, and acquit the former, current, or future DIP Agents, DIP Lenders, Prepetition Agents, and Prepetition Lenders, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened

including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Financing, the DIP Documents, the Prepetition Loan Documents, the Prepetition Primed Obligations, or the transactions contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11 of the United States Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agents, the Prepetition Lenders, the DIP Agents, and/or the DIP Lenders.

F.  Cash Collateral.  For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in which the Prepetition Agent under the Prepetition Facility has, for the benefit of itself and its lenders, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Filing Date, arising pursuant to this Final Order, or otherwise.  The U.S. Debtors require the use of Cash Collateral to operate their businesses.  Without the use of Cash Collateral, the U.S. Debtors will not be able to meet their cash requirements for working capital needs and fund the working capital needs of the other Obligors and result in an immediate shutdown of the U.S. Debtors' and other Obligors' businesses.  The DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders do not consent to the use of Cash Collateral except on the terms and for the purposes specified herein.

G.  Lender Protection.  The Lender Protection Obligations (as defined below) are sufficient to protect the interests of the Lender Protection Parties in the collateral securing the Prepetition Primed Obligations (as defined below) and no further adequate protection is presently required under sections 363, 364, or any other provision of the Bankruptcy Code.

H.    <u>Purpose and Necessity of Financing</u>. The Obligors require the financing described in the Motion and as expressly provided in the DIP Documents (i) to pay costs, fees and expenses of the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders as provided for in the Interim Order and the DIP Documents, as well as all scheduled payments of interest and principal thereunder, (ii) to provide working capital and for other general corporate purposes of the U.S. Debtors, the Canadian Borrower, and the Non-U.S. Guarantors and other subsidiaries of Holdings, (iii) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by the Bankruptcy Court, and (iv) to pay administration costs of the Canadian Case and claims or amounts approved by the Canadian Court, <u>provided that</u> payments of (i) above shall be made from the proceeds of the DIP Facility irrespective of the then-applicable 13-Week Budget. Amounts advanced by a Borrower for general corporate purposes of any subsidiary of Holdings shall be advanced by way of the Intercompany Notes (as defined in the DIP Documents), which shall be pledged as collateral security on a first priority basis to secure the DIP Facility. If the U.S. Debtors do not obtain authorization to borrow under the DIP Loan Agreement and the DIP Loans are not approved, the Obligors will suffer immediate and irreparable harm. The U.S. Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Documents. A loan facility in the amount provided by the DIP Documents is not available to the U.S. Debtors without granting the DIP Administrative Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Final Order and the DIP Documents. After considering all alternatives, the Obligors have concluded, in the exercise of their prudent business judgment, that the loan facility provided under the DIP Documents represents the best and only working capital financing

available to them at this time. The DIP Facility is the only loan available to the Obligors and the U.S. Debtors have been unsuccessful in their attempts to find any alternative financing. Additionally, the terms of the Financing and the use of Cash Collateral are fair and reasonable and reflect the U.S. Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

I.    Good Cause. Based upon the record presented to the court by the U.S. Debtors, it appears that the ability of the U.S. Debtors to obtain sufficient working capital and liquidity under the DIP Documents, and use of Cash Collateral, is vital to the U.S. Debtors, their estates and creditors and the other Obligors. The liquidity to be provided under the DIP Documents and through the use of the Cash Collateral will enable the Obligors to continue to operate their businesses in the ordinary course and preserve the value of their businesses. The U.S. Debtors' estates will be immediately and irreparably harmed if this Final Order is not entered. Good cause has, therefore, been shown for the relief sought in the Motion.

J.    Good Faith. The Financing and the DIP Documents have been negotiated in good faith and at arm's length among the Obligors, the DIP Agents and the DIP Lenders, and all of the obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, all loans made to and guarantees issued by the U.S. Debtors and the other Obligors pursuant to the DIP Documents, and any other obligations under the DIP Documents, including, without limitation, credit extended in respect of overdrafts and related liabilities and other depositary, treasury, hedging, swap , and cash management services and other clearing services provided by any Lender, Agent or their respective affiliates (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the

DIP Obligations, the Postpetition Liens (as defined below), the Superpriority Claims (as defined below), and the Lender Protection Obligations shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this Final Order regardless of whether this Final Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

        K.     <u>Consideration</u>. All of the Obligors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Loans, the use of Cash Collateral, and all other financial accommodations provided under the DIP Documents and this Final Order.

        L.     <u>Consent</u>. Prior to the Filing Date, on July 13, 2009, the U.S. Borrower requested that the Prepetition Agent solicit those Prepetition Lenders who had agreed to receive non-public information to approve the Fifth Amendment. Subsequently, also on July 13, 2009, the U.S. Borrower posted a notice on the Prepetition Agent's "public side" intralinks website to all Prepetition Lenders strongly encouraging them to agree to receive non-public information to be able to review the Fifth Amendment. The Fifth Amendment, among other things, provided a consent to the priming of the Prepetition Loans by the DIP Obligations in exchange for a consent fee paid to such Prepetition Lenders. Under the Prepetition Loan Documents, holders of more than 50% of the outstanding amount of Prepetition Loans may consent on behalf of all Prepetition Lenders to the priming of the Prepetition Facility. Each Prepetition Lender has been provided the opportunity to review the DIP Loan Agreement, a detailed term sheet with respect to the Financing (which term sheet, among other things, specified the form and substance of the Lender Protections (as defined below) to be provided by the Interim Order and this Final Order), and, through the procedures detailed above, each Prepetition Lender was solicited and given the opportunity to consent thereto by executing the Fifth Amendment. After due deliberation and

consideration, Prepetition Lenders holding in the aggregate more than 84% of the Prepetition

Indebtedness, and constituting 150 of the 182 Prepetition Lenders executed the Fifth Amendment

and therefore have explicitly consented to the entry of the Interim Order and this Final Order, the

execution and consummation of the DIP Loan Agreement, and all of the transactions

contemplated herein and therein (including without limitation the priming effected by this Final

Order and the DIP Documents) and on that basis, among others, this Court has requisite authority

to enter this Final Order under applicable law, and such consent is sufficient under applicable

law. Additionally, as no Prepetition Lender has objected to the DIP Financing or entry of this

Final Order, all Prepetition Lenders are hereby deemed to have consented to the entry of this

Final Order, the execution and consummation of the DIP Loan Agreement, and all of the

transactions contemplated herein and therein (including without limitation the priming effected

by this Final Order and the DIP Documents).

    M. <u>Entry of Final Order</u>. The permission granted herein to enter into the DIP

Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm

to the Obligors. This Court concludes that entry of this Final Order is in the best interests of the

U.S. Debtors' respective estates and creditors as its implementation will, among other things,

allow for the continued flow of supplies and services to the Obligors necessary to sustain the

operation of the Obligors' existing businesses and further enhance the Obligors' prospects for a

successful restructuring. Based upon the foregoing findings, acknowledgements, and

conclusions, and upon the record made before this Court at the Interim Hearing and the Final

Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

    1. <u>Disposition</u>. The Motion is granted on a final basis and on the terms set forth

herein. Any objections to the Motion that have not previously been withdrawn, waived, settled,

or resolved and all reservations of rights included therein are hereby denied and overruled on their merits with prejudice.

2.      Effectiveness. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Filing Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

3.      Authorization of the Financing and DIP Loan Agreement.

(a)      The U.S. Debtors are hereby authorized to execute and enter into the DIP Documents, and the DIP Documents are hereby approved and incorporated herein by reference in their entirety. The DIP Documents, and this Final Order shall govern the financial and credit accommodations to be provided to the U.S. Debtors by the DIP Lenders.

(b)      The U.S. Borrower is hereby authorized to borrow money pursuant to the DIP Documents up to an aggregate amount of $125,000,000,[11] which shall be used solely as expressly provided in the DIP Documents and the 13-Week Budget (i) to pay costs, fees and expenses of the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders as provided for in the Final Order and the DIP Documents, as well as the scheduled payments of principal and interest thereunder, (ii) to provide working capital and for other general corporate purposes of the U.S. Debtors, the Canadian Borrower, and, subject to the terms of this Final Order and the DIP Documents, the other

---

[11] The U.S. Borrower and the U.S. Guarantors will shall also guaranty all obligations of the Canadian Borrower and the Additional Foreign Borrower.

subsidiaries of Holdings, (iii) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by the Bankruptcy Court, and (iv) to pay administration costs of the Canadian Case and claims or amounts approved by the Canadian Court, provided that payments under clause (i) shall be made from the proceeds of the DIP Facility irrespective of the then-applicable 13-Week Budget. The U.S. Borrower and the U.S. Guarantors are hereby authorized to unconditionally guaranty (on a joint and several basis) such borrowings and the Borrowers' other obligations under the DIP Documents, including costs, fees and other expenses and amounts provided for in the DIP Loan Agreement, in accordance with the terms of this Final Order and the DIP Loan Agreement, U.S. Finco is hereby authorized to unconditionally guaranty all obligations under the DIP Documents of the Canadian Borrower and any Additional Foreign Borrower.

(c)     In furtherance of the foregoing and without further approval of this Court, each U.S. Debtor, other Obligor (other than the Canadian Borrower), and the Prepetition Agent was by the Interim Order and is hereby authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be required or necessary for the U.S. Debtors' performance of their obligations under the Financing, including, without limitation:

(i) the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Loan Agreement, any guarantees, any security and pledge agreements, and any mortgages contemplated thereby,

(ii) the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the U.S. Debtors, the DIP Administrative Agent and the Requisite DIP Lenders may agree;

(iii) the non-refundable payment of the fees referred to in the DIP Documents and the Fifth Amendment (and in the separate letter agreements executed in connection with the Financing) and costs and expenses as may be due in accordance with the DIP Documents, provided, however, that the fees and expenses of professionals employed pursuant to the DIP Documents are subject to the conditions contained in paragraph 7(a) of this Final Order, and

(iv) the performance of all other acts required under or in connection with the DIP Documents, including, without limitation, all acts required to designate an Additional Foreign Borrower under the DIP Documents and bind such Additional Foreign Borrower to such DIP Documents and entry into an escrow agreement (the "Escrow Agreement") with the DIP Administrative Agent and Deutsche Bank Trust Company Americas.

(d)    The DIP Documents constitute valid, binding and non-avoidable obligations of the Obligors enforceable against each person or entity party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted case of any U.S. Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any case. No obligation,

payment, transfer, or grant of security under the DIP Documents or this Final Order shall

be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or

under any applicable law (including without limitation, under sections 502(d), 548 or 549

of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act,

Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any

avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination

(whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses,

disallowance, impairment, or any other challenges under the Bankruptcy Code or any

other applicable foreign or domestic law or regulation by any person or entity.

4.     Carve-Out.

(a)     The U.S. Debtors' obligations to the DIP Lenders and the liens and

superpriority claims granted herein shall be subject and subordinate only to, after a Carve-Out

Effective Date, payment of the Carve-Out. For the purposes of this Order "Carve-Out" shall

mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the

United States trustee pursuant to 28 U.S.C. § 1930(a); (ii) subject to the terms of this Final

Order and the 13-Week Budget, all allowed fees and expenses of the professionals retained under

sections 327, 328, 363, and/or 1102 of the Bankruptcy Code or otherwise by the U.S. Debtors

and any statutory committees appointed in the Chapter 11 Cases (each, a "Committee") accrued

or incurred on or before the first business day (the "Carve-Out Effective Date") following the

delivery by the DIP Administrative Agent of a Carve-Out Trigger Notice (as defined below),

whether approved by the Bankruptcy Court before or after the Carve-Out Effective Date; and

(iii) on and after the Carve-Out Effective Date an amount not exceeding $4,000,000 in the

aggregate, which amount may be used (subject to the terms of this Final Order and the 13-Week

Budget) to pay any allowed fees or expenses incurred by the professionals retained under sections 327, 328, 363, and/or 1102 of the Bankruptcy Code (or otherwise) by the U.S. Debtors and Committee, on or after the Carve-Out Effective Date, *provided* that (x) the dollar limitation in this clause (iii) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid on or prior to the Carve-Out Effective Date in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to any agent or lender (or any of their respective attorneys or agents under the Prepetition Facility, the DIP Facility or otherwise), and (y) nothing herein shall be construed to impair the ability of any entity to object to the fees, expenses, reimbursement or compensation described above. "Carve-Out Trigger Notice" means a written notice delivered by the DIP Administrative Agent to the U.S. Borrower and its counsel, the U.S. Trustee, and lead counsel to any Committees, which notice may be delivered following the occurrence and during the occurrence of an Event of Default, expressly stating that it is a Carve-Out Trigger Notice hereunder.

5.    Superpriority Claims.  The DIP Administrative Agent, for the benefit of the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code for all DIP Obligations, having priority over any and all other claims against the U.S. Debtors and their estates, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claim shall be payable from and have

recourse to all prepetition and postpetition property of the U.S. Debtors and their estates and all proceeds thereof. The Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to, after the Carve-Out Effective Date, the Carve-Out. Except as expressly set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases. For the avoidance of doubt, the Superpriority Claim may be satisfied from the proceeds of the Avoidance Actions (other than Avoidance Actions or the proceeds of Avoidance Actions against a person or entity that is a Prepetition Lender or DIP Lender), provided however, that the Superpriority Claim shall first be satisfied from all other assets (and/or proceeds thereof) of the U.S. Debtors and their estates; and provided further however, that no person or entity (other than the DIP Lenders in accordance with this paragraph) shall receive the proceeds of Avoidance Actions (other than Avoidance Actions or the proceeds of Avoidance Actions against a person or entity that is a Prepetition Lender or DIP Lender) until such time as all DIP Obligations have been satisfied in full. For the avoidance of doubt, nothing in this paragraph shall abrogate, limit, or otherwise diminish, alter, modify or otherwise impact or affect any other term or condition of this Final DIP Order or any right of the DIP Agents or the DIP Lenders (or any finding with respect thereto) pursuant to this Final Order (including, without limitation, paragraphs F, G, H, I, J, K, L, M, 2, 3, 5, 6, 8, 11,16 or 32 hereof), the Bankruptcy Code (including, without limitation section 364(e) of the Bankruptcy Code) or applicable law.

6. <u>Postpetition Liens.</u>

(a)    To secure the DIP Obligations, the DIP Administrative Agent is hereby granted (subject to the terms of paragraph 6(b) of this Final Order), for the benefit of the DIP Lenders:

i.      a first priority, perfected security interest in, and lien, under section 364(c)(2) of the Bankruptcy Code upon all of the Collateral of each U.S. Debtor and of each U.S. Debtor's estate that, on or as of the Filing Date is not subject to valid, perfected, and non-avoidable liens; provided however, that any such lien shall not extend to any leasehold where the terms of the lease would prohibit the imposition of such lien, but provided further that such lien shall extend to the proceeds of any such leasehold;

ii.      a junior lien, under section 364(c)(3) of the Bankruptcy Code upon all of the Collateral of each U.S. Debtor and of each U.S. Debtor's estate that is, as of the Filing Date, subject to valid, perfected, and non-avoidable liens in favor of third parties except as set forth in Subparagraph (iii) below;

iii.      a first priority, perfected priming security interest in and lien under section 364(d)(1) of the Bankruptcy Code upon all Collateral that also constitutes Prepetition Collateral, in all cases senior to the (A) Existing Liens and (B) all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Existing Liens (collectively the "Prepetition Primed Obligations").

(b)      The liens created as described in clauses (i), (ii), and (iii) above (the "Postpetition Liens") shall cover all property and assets of the U.S. Debtors and their estates (now or hereafter acquired and all proceeds thereof), including property or assets that do not secure the Prepetition Primed Obligations,[12] except (i) the capital stock of any Permitted Joint Ventures; (ii) claims and causes of action under Sections 502(d), 544, 545, 547, 548, 549, 550

---

[12] With respect to liens on the voting capital stock of foreign subsidiaries of the U.S. Debtors (other than those subsidiaries organized in Mexico, Brazil, or the Netherlands), such liens securing the obligations of the U.S. Borrower shall be limited to pledges that would not result in deemed dividends to the U.S. Debtor or such other Debtors pursuant to section 956 of the Internal Revenue Code, except as otherwise agreed pursuant to the DIP Documents, as defined herein. For the avoidance of doubt, 100% of the voting capital stock of the subsidiaries organized in Mexico, Brazil, and the Netherlands shall secure the obligations of the U.S. Borrower.

and 553 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds thereof; and (iii) as otherwise agreed to by the Requisite DIP Lenders.

(c)     The Postpetition Liens shall be effective immediately upon the entry of this Final Order and subject only to, after the Carve-Out Effective Date, payment of the Carve-Out.

(d)     Except as provided in this Final Order, the Postpetition Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Filing Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the U.S. Debtors' estates under section 551 of the Bankruptcy Code.

(e)     The Postpetition Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Final Order without the necessity of execution by the U.S. Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements, such that no additional steps need be taken by the DIP Agents or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the U.S. Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the DIP Administrative Agent, for the benefit of the DIP Lenders, a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the U.S. Debtors in favor

of the DIP Administrative Agent, for the benefit of the DIP Lenders, in accordance with the terms of the DIP Loan Agreement and the other DIP Documents.

(f)     The Postpetition Liens, Superpriority Claim, and other rights, benefits, and remedies granted under this Final Order to the DIP Administrative Agent, for the benefit of the DIP Lenders, shall continue in these Chapter 11 Cases, in any superseding case or cases under the Bankruptcy Code resulting from conversion of one or more of these Chapter 11 Cases (a "Superseding Case") to the extent permitted by applicable law, and, to the extent permitted by applicable law, following any dismissal of the Chapter 11 Cases, and such liens and claims shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP Lenders' commitments have been terminated in accordance with the DIP Documents.

7.     Authorization to Use Cash Collateral.   Subject to the terms of this Final Order and the 13-Week Budget, the U.S. Debtors are authorized to use Cash Collateral in which the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, respectively, may have an interest, in accordance with the terms, conditions, and limitations set forth in this Final Order and/or the DIP Documents.   Any dispute in connection with the use of Cash Collateral shall be heard by the Court.   Notwithstanding anything in this Final Order to the contrary, the U.S. Debtors' authority to use Cash Collateral shall not begin until such time as all conditions precedent to initial borrowing under the DIP Facility have been satisfied and shall automatically terminate without any further action by this Court or the DIP Administrative Agent, and the Obligors shall be immediately prohibited from using such Cash Collateral upon the earliest to occur of (the "Cash Collateral Termination Date"): (a) such date on which the DIP Loans shall become due and payable in accordance with the terms of this Final Order and/or the DIP

Documents, and (b) the date on which all commitments have been terminated under this Final Order and/or the DIP Documents as a result of the occurrence of an Event of Default.

(a)     Fees.  All fees paid and payable, and costs and/or expenses reimbursed or reimbursable by the U.S. Debtors to the DIP Agents and the DIP Lenders are hereby approved. The U.S. Debtors shall promptly pay all such fees, costs, and expenses on demand, without the necessity of any further application with the Court for approval or payment of such fees, costs or expenses.  Notwithstanding anything to the contrary herein, the fees, costs and expenses (other than those of professionals retained by the DIP Agents and DIP Lenders) of the DIP Agents and the DIP Lenders, whether incurred prior to or after the Filing Date were deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the date of the Interim Order; provided that with respect to fees and expenses of professionals of the DIP Agents and the DIP Lenders, such professionals shall submit copies of their invoices to the Debtors, Creditors' Committee, and the United States Trustee and, provided that no objection is raised to such fees or expenses within ten (10) days of the provision of such invoice, the U.S. Debtors shall promptly pay such fees and expenses which shall, upon payment be deemed fully earned, non-refundable, irrevocable, and non-avoidable.  All unpaid fees, costs, and expenses shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the Postpetition Liens.  For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Final Order, the agency fee referenced in section 4.01(a) of the DIP Loan Agreement, the upfront fee referenced in section 4.01(b) of the DIP Loan Agreement, the Exit Fee (as defined in, and upon the terms and conditions of, the DIP Loan Agreement), the Arranger Fee (as defined in the letter between Deutsche Bank Securities Inc., Holdings, and the U.S. Borrower dated as of July 13, 2009), and the fees referenced in the Fifth Amendment were upon entry of the Interim Order, and

irrespective of any subsequent order approving or denying the Financing or any other financing pursuant to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the Bankruptcy Code deemed fully earned, indefeasibly paid, non-refundable, irrevocable, and non-avoidable as of the date of the Interim Order.

8.     Authority to Execute and Deliver Necessary Documents.

(a)     All of the Postpetition Liens and Lender Protection Liens described herein were effective and perfected as of the Interim Order Entry Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements.

(b)     Each of the U.S. Debtors is hereby further authorized to (i) perform all of its obligations under the DIP Documents, and such other agreements as may be required by the DIP Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Documents and this Final Order.

(c)     The U.S. Debtors shall cause the Obligors (other than the Canadian Borrower) to execute all documents and take all actions required to effectuate DIP Documents, including, without limitation, executing all instruments which may be requested by any of the DIP Agents and all documents required to designate an Additional Foreign Borrower under the DIP Documents and bind such Additional Foreign Borrower to such DIP Documents

(d)     All obligations under the DIP Documents shall constitute valid and binding obligations of each of the Obligors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Final

Order. No obligation, payment, transfer, or grant of a security under the DIP Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

9.    Amendments, Consents, Waivers, and Modifications.

      (a)    The U.S. Debtors, with the express written consent of the DIP Administrative Agent (at the direction of the Requisite DIP Lenders) may enter into any amendments, consents, waivers, or modifications to the DIP Documents that are not materially adverse to the Debtors without the need for further notice and hearing or any order of this Court, provided that such amendments, consents, waivers, or modifications do not (i) shorten maturity, (ii) increase commitments or the rate of interest payable under the DIP Documents, (iii) require the payment of any new or additional fee, or (iv) change any Event of Default, add any covenants or amend the covenants in the DIP Documents, in each case as applicable to the Obligors, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, consent, waiver or other modification shall be (i) provided by the U.S. Debtors to the U.S. Trustee and the Creditors' Committee as soon as reasonably practicable before such amendment, consent, waiver, or other modification shall be

effective and (ii) filed by the U.S. Debtors with the Court. No consent shall be implied by any other action, inaction, or acquiescence of the DIP Agents or any DIP Lender.

(b)     The U.S. Debtors, with the express written consent of the Prepetition Agent (at the direction of the Requisite Prepetition Lenders) may enter into any amendments or modifications to the Prepetition Loan Documents without the need for further notice and hearing or any order of this Court, provided that such amendments or modifications are limited to (i) amendments or modifications affecting the sharing of economic risk as among the Prepetition Lenders and (ii) amendments that suspend the obligations of Holdings and its subsidiaries under subordination agreements related to intercompany obligations; provided, however, that a copy of any such amendment, consent, waiver or other modification shall be (i) provided by the U.S. Debtors to the U.S. Trustee and the Creditors' Committee as soon as reasonably practicable before such amendment, consent, waiver, or other modification shall be effective and (ii) filed by the U.S. Debtors with the Court.

10.     Protections for Prepetition Lenders.  Subject to subsequent Court order on entitlement to adequate protection and the application of the components of adequate protection that has been provided, the Prepetition Agent, the Prepetition Lenders and each other Secured Creditor (as defined in the Prepetition Loan Documents) (collectively with the Prepetition Agent and the Prepetition Lenders, the "Prepetition Secured Parties") are hereby granted the following protections (collectively, the "Prepetition Lender Protection"), pursuant to sections 361, 507,

30

363(e), and 364(d)(1) of the Bankruptcy Code or otherwise, with respect to their pre-petition security interests in the Prepetition Collateral for the consent of such Prepetition Secured Parties to the priming effectuated by the DIP Facility, consent to the use of their Prepetition Collateral (including Cash Collateral), consent to the transactions contemplated by the DIP Facility, and as adequate protection for the diminution in the value (each such diminution, a "Diminution in Value") of the Existing Liens, whether or not such Diminution in Value results from the sale, lease or use by the U.S. Debtors of the Prepetition Collateral (including, without limitation, Cash Collateral), the priming of the Existing Liens or the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise ((a) through (c) below shall be referred to collectively as the "Lender Protection Obligations"):

(a)     Lender Protection Liens.  The Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, shall be granted, for the reasons set forth above in this Paragraph 10, solely to the extent of any Diminution in Value, for the benefit of the Prepetition Secured Parties, effective and perfected as of the date of this Final Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, valid, perfected, postpetition security interests in and liens on all of the Collateral of the U.S. Debtors and their estates (together, the "Lender Protection Liens"), subject and subordinate only to (x) after the Carve-Out Effective Date, the Carve-Out; (y) the Permitted Liens; and (z) the Postpetition Liens securing the DIP Facilities, provided that the Lender Protection Liens shall not encumber the Avoidance Actions or the proceeds thereof.  The Lender Protection Liens shall not at any time be (i) made subject or subordinated to, or made pari passu with any other lien, security interest or claim existing as of the Filing Date, or

created under sections 363 or 364(d) of the Bankruptcy Code, or, with respect to liens and security interests only, section 552(b) of the Bankruptcy Code or otherwise or (ii) subject to paragraph 21 hereof, subject to any lien or security interest that is avoided and preserved for the benefit of the U.S. Debtors' estates under section 551 of the Bankruptcy Code.

(b)     Administrative Expense Claim. The Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, shall be granted, for the reasons set forth above in this Paragraph 10, solely to the extent of any Diminution in Value that is not satisfied by the Lender Protection Liens, subject, after the Carve-Out Effective Date, to the payment of the Carve-Out, a superpriority administrative expense claim immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Administrative Agent on account of the DIP Obligations, provided that no entity shall receive or retain any payments, property, or other amounts in respect of superpriority claims relating to such Prepetition Primed Obligations unless and until the obligations under the DIP Facility have indefeasibly been paid in cash in full. For the avoidance of doubt, the superpriority claim set forth in this paragraph 10(b) may be satisfied from the proceeds of the Avoidance Actions (other than Avoidance Actions or the proceeds of Avoidance Actions against a person or entity that is a Prepetition Lender or DIP Lender) if the DIP Obligations have been satisfied in full, provided however, that the Superpriority Claim shall first be satisfied from all other assets (and/or proceeds thereof) of the U.S. Debtors and their estates; and provided further however, that no person or entity (other than the DIP Lenders) shall receive the proceeds of Avoidance Actions (other than Avoidance Actions or the proceeds of Avoidance Actions against a person or entity that is a

Prepetition Lender or DIP Lender) until such time as all Lender Protection Obligations have been satisfied in full. For the avoidance of doubt, nothing in this subparagraph shall abrogate, limit, or otherwise diminish, alter, modify or otherwise impact or affect any other term or condition of this Final DIP Order or any right of the DIP Agents or the DIP Lenders (or any finding with respect thereto) pursuant to this Final Order (including, without limitation, paragraphs F, G, H, I, J, K, L, M, 2, 3, 5, 6, 8, 11,16 or 32 hereof), the Bankruptcy Code (including, without limitation section 364(e) of the Bankruptcy Code) or applicable law.

(c)     As further compensation for the consensual use of the Prepetition Collateral (including Cash Collateral) by the U.S. Debtors for the reasons set forth above in this Paragraph 10, and in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Prepetition Agent or the respective professional identified below shall receive from the U.S. Debtors:

      i.    <u>Fees and Expenses</u>. Current cash payments payable under the Prepetition Facility shall be made to the Prepetition Agent under the Prepetition Facility (for the benefit of the Prepetition Lenders thereunder) for of all reasonable fees and expenses payable to any agent under the Prepetition Facility, including, but not limited to, the fees and disbursements of professionals, including, without limitation (i) Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, in connection with the Prepetition Agent in its role as Administrative Agent and its administration of the Prepetition Loan Documents, (ii) each local counsel of the Prepetition Agent in connection with the Prepetition Agent in its role as Administrative Agent and its administration of the Prepetition Loan Documents, (iii) Capstone Advisory Group LLC ("<u>Capstone</u>"), in connection with the Prepetition Agent in its role as Administrative Agent and its administration of the Prepetition Loan Documents and (iv) Houlihan Lokey Howard & Zukin Capital, Inc. ("<u>Houlihan</u>"), in connection with the Prepetition Agent in its role as Administrative Agent and its administration of the Prepetition Loan Documents, in each case promptly upon receipt of invoices <u>provided that</u> with respect to fees and expenses of professionals, such professionals

shall submit copies of their invoices to the Debtors, Creditors' Committee and the United States Trustee and, provided that no objection is raised to such fees or expenses within ten (10) days of the provision of such invoice, the U.S. Debtors shall promptly pay such fees and expenses which shall, upon payment be deemed fully earned, non-refundable, irrevocable, and non-avoidable; provided that the listing of certain professionals in this subparagraph shall not constitute a finding that the employment of such professionals is reasonable;

ii.    Monitoring of Pre-Petition Collateral.   Capstone shall be given reasonable access for purposes of monitoring the business of the Obligors and the value of the collateral under the Prepetition Facility; and

iii.   Financial Reporting.  The U.S. Debtors shall continue to provide the Prepetition Agent, Capstone, and Houlihan with financial and other reporting substantially in compliance with the Prepetition Facility and any reporting described herein or in the DIP Documents.

(d)     Reservation of Rights.  Notwithstanding any other provision hereof to the contrary, the grant of Lender Protection Obligations to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek different or additional adequate protection, including without limitation the current payment of post-petition interest (at the applicable default rate) and to seek payments under section 506(b) of the Bankruptcy Code.  Except as expressly provided herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Secured Parties.  The consent of the Prepetition Secured Parties to the priming of the Existing Liens by the DIP Liens (a) is limited solely to the DIP Financing and does not extend to any other post-petition financing the Obligors may subsequently propose to enter into and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent

or the Prepetition Secured Parties that, absent such consent, their respective interests in the Prepetition Collateral would be adequately protected pursuant to this Final Order. Nothing in this Final Order shall constitute an admission that the Prepetition Secured Parties are not entitled to payment under section 506(b) of the Bankruptcy Code.

11.     Perfection of Postpetition Liens and Lender Protection Liens.

(a)     The DIP Administrative Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the DIP Administrative Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination, at the time and on the date of entry of this Final Order.  The U.S. Debtors shall, if requested, execute and deliver to the DIP Administrative Agent and the Prepetition Agent all such agreements, financing statements, instruments and other documents as the DIP Administrative Agent and the Prepetition Agent may reasonably request to more fully evidence, confirm, validate,

perfect, preserve, and enforce the Postpetition Liens and the Lender Protection Liens. All such documents will be deemed to have been recorded and filed as of the Filing Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Final Order for filing and recording.

12.     Application of Proceeds.  The U.S. Debtors are hereby directed to remit (as and when required by the DIP Documents and this Final Order) to the DIP Administrative Agent one-hundred percent (100%) of all collections on, and proceeds of, the Collateral (including without limitation the Prepetition Collateral), including, but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Filing Date come into the possession or control of the U.S. Debtors, or to which the U.S. Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agents or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the Collateral in accordance with the DIP Documents, without further order of this Court.

13.     Access to Collateral.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agents or the DIP Lenders contained in this Final Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon five (5) business days' written notice to the

landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Documents or a default by any of the U.S. Debtors of any of their obligations under this Final Order has occurred and is continuing, the DIP Agents or the DIP Lenders (i) may, only subject to any separate agreement by and between the applicable landlord or licensor, and the DIP Administrative Agent or the DIP Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the U.S. Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) subject to applicable law, shall be entitled to all of the U.S. Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the U.S. Debtors, which are owned by or subject to a lien of any third party and which are used by the U.S. Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, provided, however, that the DIP Administrative Agent or the DIP Lenders shall pay only rent and additional rent, fees, royalties or other obligations of the U.S. Debtors that first arise after the DIP Administrative Agent's or the DIP Lenders' written notice referenced above and that are payable during the period of such occupancy or use by the DIP Administrative Agent or the DIP Lenders, as the case may be, calculated on a *per diem* basis. To the extent applicable law prohibits the forgoing access or use of rights, the DIP Administrative Agent or the DIP Lenders shall have the right to an expedited hearing on five (5) business days notice to obtain Court authorization to obtain such access and/or use such rights. Nothing herein shall require the U.S. Debtors, the DIP Administrative Agent or the DIP Lenders to assume any lease or license under section 365(a) of

the Bankruptcy Code as a precondition to the rights afforded to the DIP Administrative Agent and the DIP Lenders in this paragraph.

14. <u>Cash Management Systems</u>. The U.S. Debtors are authorized to maintain their cash management system in a manner consistent with the DIP Documents, and the order of this Court approving the maintenance of the U.S. Debtors' cash management system, <u>provided, however</u>, that such order is on terms and conditions (i) acceptable to the DIP Administrative Agent, and (ii) to the extent that it is not inconsistent with the terms specified herein, consistent with the DIP Documents. The U.S. Debtors may not pay or declare dividends without further order of this Court. Notwithstanding any provision of section 345(b) of the Bankruptcy Code to the contrary, any funds escrowed pursuant to the Escrow Agreement may be held and invested as set forth therein.

15. <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated, and modified to the extent necessary without the need for any further order of this Court:

(a) whether or not a default, Default, an Event of Default under the DIP Documents, or a default by any of the U.S. Debtors of any of their obligations under this Final Order has occurred, to require all cash, checks, or other collections or proceeds from Collateral received by any of the U.S. Debtors to be deposited in accordance with the requirements of the DIP Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agents and the DIP Lenders, under the DIP Documents in accordance with any requirements of the DIP Documents without further order of this Court; and

(b)     following a default, Default or an Event of Default under the DIP
Documents, or a default by any of the U.S. Debtors of any of their obligations under this
Final Order, the DIP Agents and the DIP Lenders are authorized to exercise any and all
of their rights and remedies in accordance with the terms of the DIP Documents, and to
take all actions required or permitted by the DIP Documents without necessity of further
Court orders; provided that the DIP Administrative Agent shall give five (5) business
days notice to the U.S. Debtors, the U.S. Trustee, and any Committee of such action;
provided further however, that this Final Order shall not prejudice the rights of any party-
in-interest to oppose the exercise of the DIP Agents' or the DIP Lenders' remedies;
provided further, that the only issue that may be raised by any entity in opposition thereto
shall be whether a default, Default or Event of Default has in fact occurred and is
continuing, and all entities hereby waive their right to seek any relief, whether under
section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit or
restrict, or delay the exercise or benefit of, the rights and remedies of DIP Agents or the
DIP Lenders under the DIP Documents or this Final Order.

16.     Subsequent Reversal or Modification.  This Final Order is entered pursuant to,
inter alia, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting
the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all
of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that
action will not affect (i) the validity of any obligation, indebtedness or liability incurred
hereunder by any of the Obligors to the DIP Agents, the DIP Lenders, the Prepetition Agent, and
the Prepetition Lenders prior to the date of receipt by the DIP Administrative Agent and the DIP
Lenders of written notice of the effective date of such action or (ii) the validity and enforceability

of any lien, claim, or priority authorized or created under this Final Order or pursuant to the DIP Documents. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Obligors to the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders prior to written notice to the DIP Agents and the DIP Lenders of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order (and, with respect to the Canadian Borrower, any order of the Canadian Court), and the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

17.     <u>Restriction on Use of Lenders' Funds</u>.  Notwithstanding anything herein to the contrary, no Collateral, proceeds thereof, Cash Collateral, Prepetition Collateral, proceeds thereof, proceeds of the Financing, or any portion of the Carve-Out may be used by any of the U.S. Debtors, their estates, any other Obligor, any Committee, any trustee or examiner appointed in these Chapter 11 Cases or any chapter 7 trustee, or any other person, party or entity to, in any jurisdiction anywhere in the world (other than the appointment of the Monitor (as defined in the DIP Documents), directly or indirectly (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the DIP Lenders or (ii) if such financing is sufficient to indefeasibly pay all DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief

against, or adverse to the interests of, in any capacity, the Releasees, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the DIP Obligations, the Superpriority Claims, the Lender Protection, or the Prepetition Indebtedness, or the validity, extent, perfection, and priority of the Postpetition Liens, the Existing Liens or the Lender Protection Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counter claims or raise any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against or with respect to the Postpetition Liens, the Superpriority Claims, the Prepetition Liens or the Lender Protection Liens in whole or in part; (v) appeal or otherwise challenge the Interim Order, this Final Order, the Initial Canadian Order, the DIP Documents, or any of the transactions contemplated herein or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP Agents, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders in respect of their liens and security interests in the Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Prepetition Loan Documents or the DIP Documents anywhere in the world; and/or (c) pay any claim of a pre-petition creditor except in accordance with the DIP Documents and the 13-Week Budgets; provided however, that the Creditors' Committee may use (in accordance with the DIP Documents and the 13-Week Budget) up to $200,000 (the "Investigation Fund") to investigate the Liens and claims of and claims against the Prepetition Agent and Prepetition Lenders under the Prepetition Facility but may not use the

Investigation Fund to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto.

18.   No Liens.  No lien or security interest shall be granted by the Debtors with respect to the Avoidance Actions or proceeds thereof without the prior written consent of the DIP Administrative Agent and further order of this Court; provided however, that the written consent of the DIP Administrative Agent shall not be required with respect to such liens or security interests granted by order of this Court solely for the purpose of financing the litigation and/or collection of such Avoidance Actions.

19.   Claims Stipulation Investigation Period Reservation of Rights.  Except as expressly set forth below in the immediately following sentence, the stipulations set forth in Paragraph E of this Final Order (together the "Claims Stipulation")  and all of the terms and conditions hereof shall be immediately and irrevocably binding on all persons and entities. Notwithstanding anything herein or in the DIP Documents to the contrary, until the day that is 90 days from the date of the formation of the Creditors' Committee (as such date may be extended by the Requisite DIP Lenders or by the Court for cause shown, the "Investigation Termination Date"), the Creditors' Committee and any other party in interest with proper standing shall be entitled to investigate the accuracy of the Claims Stipulation (but solely with respect to the U.S. Debtors and their estates) against the Prepetition Agents and the Prepetition Secured Lenders;[13] provided, however, that nothing contained in this paragraph shall alter the restrictions contained in Paragraph 17 hereof.  Any assertion of claims or causes of action of the U.S. Debtors or their estates against any of the Prepetition Agents and/or the Prepetition Secured Lenders must be made by (i) commencing an adversary proceeding or (ii) filing motion to obtain standing to

pursue such an action (which motion attaches the complaint or pleading that would initiate such action) on or before the Investigation Termination Date, and each Claim Stipulation shall remain binding and in full force and effect until a final order has been entered invalidating such Claim Stipulation, and following the entry of such a final order, such Claim Stipulation shall be invalidated only to the extent provided for in such final order. If no such action or motion is filed on or before the Investigation Termination Date, all persons and entities shall be forever barred from bringing or taking such action and the Claims Stipulations shall be permanently and irrevocably binding upon all persons and entities. Any Claim Stipulation that is not expressly challenged in an adversary proceeding (or with respect to which authority to obtain standing has not been requested as set forth above) or contested matter, as appropriate, before the Investigation Termination Date shall remain in full force and effect and shall permanently and irrevocably bind all entities and persons, despite the filing of any other adversary proceeding or motion in accordance with this paragraph. Notwithstanding anything to the contrary contained herein or in the DIP Loan Agreement, the commencement of an adversary proceeding or contested matter in accordance with the terms of this paragraph shall not in and of itself constitute a "Default" or "Event of Default" under (and as defined in) the DIP Loan Agreement.

20.    Collateral Rights. In the event that any person or entity that holds a lien or security interest in Collateral of the U.S. Debtors or their estates or Prepetition Collateral that is junior and/or subordinate to the Postpetition Liens in such Collateral of the U.S. Debtors or their estates or Prepetition Collateral receives or is paid the proceeds of such Collateral of the U.S. Debtors or their estates or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete

---

[13]    Nothing herein shall be interpreted as conferring on any person or entity standing to pursue any claim, cause of action or take any action on behalf of the U.S. Debtors or their respective estates or any of the

satisfaction of all DIP Obligations under the DIP Documents and the Prepetition Indebtedness under the Prepetition Loan Documents, and termination of the commitments in accordance with the DIP Documents and the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral of the U.S. Debtors or their estates in trust for the DIP Lenders, and shall immediately turnover such proceeds to the DIP Administrative Agent for application in accordance with the DIP Documents and this Final Order.

21.     <u>Prohibition on Additional Liens</u>.  Except as provided in the DIP Documents and/or this Final Order, the U.S. Debtors shall be enjoined and prohibited from, at any time during the Chapter 11 Cases until such time as the DIP Obligations have been indefeasibly paid in full,  granting liens on the Collateral or any portion thereof to any other entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, pari passu with or junior to the liens granted to the DIP Administrative Agent, for the benefit of the DIP Lenders, the Lender Protection Liens, or the Existing Liens, except in accordance with the DIP Documents, the Prepetition Loan Documents, and this Final Order.

22.     <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agents, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders may have to bring or be heard on any matter brought before this Court.

23.     <u>Sale/Conversion/Dismissal/Plan</u>.

(a)     No order providing for either the sale of the ownership of the stock of the U.S. Debtors or the sale of all or substantially all of the assets of the U.S. Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, in connection

---

other Obligors.

and concurrently with any such event, the proceeds of such sale shall be used to satisfy, in cash the DIP Obligations in accordance with the DIP Documents; and (ii) such sale is expressly permitted under the DIP Documents.

(b)     No motion shall be filed by any Obligor seeking dismissal or conversion of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or seeking appointment of a chapter 11 trustee or an examiner with expanded powers unless and until (x) the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents are terminated in accordance therewith or (y) the DIP Administrative Agent expressly consents in writing.  If an order dismissing or converting any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed to by the DIP Administrative Agent with the consent of the Requisite DIP Lenders, such order shall provide that (i) the Postpetition Liens, Superpriority Claim, and the Lender Protection Obligations granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Final Order until all DIP Obligations and Prepetition Indebtedness are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Documents and the Prepetition Loan Documents are terminated in accordance with the DIP Documents and the Prepetition Loan Documents, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens, the Lender Protection Liens, the Superpriority Claim, and the Lender Protection Claim, and (iii) all postpetition indebtedness, obligation or liability incurred by any of the U.S. Debtors to the DIP

Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders prior to the date of such order, including without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of this Final Order, and the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

24.     Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Documents, the terms and provisions of this Final Order shall govern.

25.     No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

26.     Rights Under Section 363(k).  The full amount of the DIP Obligations may be used to "credit bid" for the assets and property of the U.S. Debtors as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Loan Agreement without the need for further Court order authorizing the same.

27.     Headings.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

28.     Reporting.  The U.S. Debtors shall provide to the Creditors' Committee the same financial statements, reports and other information that the U.S. Debtors are required to provide

to the DIP Administrative Agent and the DIP Lenders pursuant to Section 9 of the DIP Loan Agreement as and when the U.S. Debtors provide such information to DIP Administrative Agent and the DIP Lenders. The U.S. Debtors shall provide to the DIP Administrative Agent and the Prepetition Agent the same financial statements, reports and other information the U.S. Debtors provide to the Creditors' Committee, as and when the U.S. Debtors provide such information to the Creditors' Committee.

29.    No Consent.  No action, inaction or acquiescence by the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders, including funding the U.S. Debtors' ongoing operations under this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agents, the DIP Lenders, the Prepetition Agents or the Prepetition Secured Lenders to a charge against the Collateral pursuant to sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The DIP Agents and the DIP Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.   The Prepetition Agents and the Prepetition Secured Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral

30.    Waiver.  Effective upon entry of this Final Order, no person or entity shall be entitled, directly or indirectly, to (a) except as expressly provided by paragraph 4 of this Final Order, with respect to the DIP Obligations and the liens and claims granted in paragraphs 5 and 6 of this Final Order, charge or recover from the Carve-Out or the Collateral, whether by operation of sections 105, 506(c), and 552(b) of Bankruptcy Code or otherwise; or (b) direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Documents, or

termination or breach under the DIP Documents or this Final Order. For the avoidance of doubt no party shall be entitled to charge or recover against the Collateral or otherwise receive a distribution pursuant to sections 105, 506(c), or 552(b) of the Bankruptcy Code until such time as all DIP Obligations have been satisfied in full.

31.     Adequate Notice. The notice given by the U.S. Debtors of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the Local Bankruptcy Rules, and was adequate and sufficient. Under the circumstances, no further notice of the request for the relief granted at the Final Hearing is required.

32.     Binding Effect; Successors and Assigns. The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties-in-interest in these Chapter 11 Cases, including, without limitation, the Obligors, the DIP Agents, the DIP Lenders, the Prepetition Agent, the Lender Protection Parties, any Committee or examiner appointed in these Chapter 11 Cases, and the U.S. Debtors, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the U.S. Debtors or with respect to the property of the estates of the U.S. Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Lender Protection Parties, and the U.S. Debtors and their respective successors and assigns, *provided, however,* that the consent of the DIP Agents, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders to permit the use of Cash Collateral and the agreement of the DIP Agents and the DIP Lenders to extend financing shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the U.S. Debtors. In determining to make any loan (whether under

the DIP Loan Agreement, a promissory note, or otherwise), to permit the use of Cash Collateral

or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the

DIP Documents, the DIP Agents, the DIP Lenders, the Prepetition Agent, the Prepetition

Lenders and the Lender Protection Parties shall not (i) be deemed to be in control of the

operations of the Obligors, or (ii) owe any fiduciary duty to the Obligors, their respective

creditors, shareholders, or estates. Except as expressly provided in paragraph 19 of this Final

Order, each stipulation, admission and agreement contained in this Final Order shall also be

binding upon all other parties in interest, including, any Committee, under all circumstances and

for all purposes.

33.     Retention of Jurisdiction. This Court has and will retain jurisdiction to enforce

this Final Order according to its terms.

34.     Reservation of Rights of Cooper Tire. Cooper Tire & Rubber Company ("Cooper

Tire") claims an ownership interest in and right to recover approximately $60 million of tax

refunds, including without limitation, all proceeds therefrom (the "Tax Refund") received by one

of the Debtors' Canadian subsidiaries from the Canada Revenue Agency and the Debtors and

other parties in interest contest that claim and believe that Cooper Tire has no claim to or

ownership interest whatsoever in the Tax Refund. Nothing in this Final Order shall prejudice (i)

any of Cooper Tire's rights or claims, if any, with respect to the Tax Refund or (ii) any rights,

claims, interests or defenses of the Debtors, any Committee, any of the Prepetition Secured

Parties, the DIP Agents, the DIP Lenders or any other party-in-interest with respect to the Tax

Refund or any portion thereof.

35.     Letters of Credit. The U.S. Debtors are authorized to obtain one or more letters of

credit ("L/Cs") as permitted by (and in accordance with) section 10.01(a)(xiii) of the DIP Loan

Agreement, which Letters of Credit may be secured by liens on cash as permitted by (and in accordance with) section 10.02(a)(xiv) of the DIP Loan Agreement; provided that the U.S. Debtors provide the Creditors' Committee with five business days notice before obtaining such L/Cs.

36.    Notwithstanding anything contained herein or in the DIP Loan Agreement to the contrary, in the event the Borrowers request to extend the Maturity Date in accordance with section 1 of the DIP Loan Agreement and the Required Lenders have not consented to or denied such request by the conclusion of the fifth business day following such request, then the time periods specified in sections 11(x), 11(y) and 11(z) of the DIP Loan Agreement shall be tolled for any length of time beyond the fifth business day until the DIP Administrative Agent notifies the Borrowers of such consent or denial.

37.    On September 1, 2009, this Court entered an order approving the DIP Financing (the "September 1 Order") [D.I. 172] which inadvertently contained an incorrect exhibit. This Final Order amends and supersedes the September 1 Order in its entirety.

Dated: Wilmington, Delaware
       September _2_ 2009

_____
UNITED STATES BANKRUPTCY JUDGE