# APPENDIX B

# LIQUIDATION ANALYSIS

**U.S. Debtors (Excluding Cooper Standard Holdings Inc.)**
Hypothetical Liquidation Analysis

### ASSETS
($'s in millions)

| | Net Book Value | Notes | Low Scenario Estimated Recovery | Low Scenario Estimated Realization Rate | High Scenario Estimated Recovery | High Scenario Estimated Realization Rate |
|---|---|---|---|---|---|---|
| Cash & Cash Equivalents | $ 76.5 | (a) | $ 76.5 | 100.0% | $ 76.5 | 100.0% |
| Accounts Receivable | 143.4 | (b) | 114.7 | 80.0% | 129.1 | 90.0% |
| Inventory | 42.5 | (c) | 35.5 | 83.7% | 39.4 | 92.8% |
| Prepaid Expenses | 4.2 | (d) | 1.0 | 25.0% | 2.1 | 50.0% |
| Other Current Assets | 1.7 | (e) | 1.7 | 100.0% | 1.7 | 100.0% |
| Net Property, Plant & Equipment | 171.1 | (f) | 47.4 | 27.7% | 68.5 | 40.0% |
| Other Assets | 10.9 | (g) | 0.5 | 5.0% | 1.1 | 10.0% |
| Intercompany Receivables | 354.8 | (h) | 57.9 | 16.3% | 100.7 | 28.4% |
| Value of Unconsolidated Affiliates | 14.1 | (i) | 14.9 | | 19.4 | |
| **Total Assets** | **$ 819.2** | (j) | **$ 350.1** | **42.7%** | **$ 438.4** | **53.5%** |
| Total Assumed Liabilities | | (k) | (61.8) | | (61.8) | |
| **Total Distributable Assets** | | | **$ 288.3** | | **$ 376.6** | |
| | | | | | | |
| Encumbered Value from Foreign Stock Pledgors (65% / 100%) | | (l) | 106.6 | | 159.1 | |
| Total Chapter 7 Wind-Down Costs | | (m) | (65.9) | | (70.9) | |
| **Total Distributable Encumbered Value** | | | **$ 329.0** | | **$ 464.8** | |

($'s in millions)

| | Notes | Low Scenario Estimated Allowed Claim | Low Scenario Estimated Recovery | High Scenario Estimated Allowed Claim | High Scenario Estimated Recovery |
|---|---|---|---|---|---|
| **Total Distributable Encumbered Value** | | | $ 329.0 | | $ 464.8 |
| DIP Lender Claims | (n) | 76.5 | 76.2 | 76.5 | 76.1 |
| Recovery % | | | 99.6% | | 99.4% |
| **Remaining Proceeds** | | | $ 252.7 | | $ 388.7 |
| Prepetition Credit Facility Claims | (n) | 541.0 | 252.7 | 541.0 | 388.7 |
| Recovery % | | | 46.7% | | 71.9% |
| **Remaining Proceeds (before Unencumbered Assets)** | | | $ - | | $ - |
| Residual Unencumbered Value from Foreign Stock Pledgors (35%) | | | 55.4 | | 73.7 |
| **Remaining Proceeds** | | | $ 55.4 | | $ 73.7 |
| Less: Chapter 11 Administrative Claims (excl. assumed claims) | (o) | | | | |
| 503(b)(9) Claims | | 9.9 | 9.9 | 9.9 | 9.9 |
| Other Administrative Claims | | 26.9 | 26.9 | 26.9 | 26.9 |
| **Total Chapter 11 Administrative Claims** | | $ 36.8 | $ 36.8 | $ 36.8 | $ 36.8 |
| Recovery % | | | 100.0% | | 100.0% |
| **Remaining Proceeds** | | | $ 18.5 | | $ 36.8 |
| Less: General Unsecured Claims | (p) | | | | |
| Prepetition Credit Facility Deficiency Claim | | 287.3 | 4.9 | 150.0 | 5.8 |
| Senior Note Claims | | 208.9 | 9.2 | 208.9 | 20.9 |
| Senior Subordinated Note Claims | | 330.0 | - | 330.0 | - |
| Intercompany Claims | | 85.5 | 1.5 | 85.5 | 3.3 |
| Other General Unsecured Claims | | 174.6 | 3.0 | 174.6 | 6.8 |
| **Total General Unsecured Claims** | | $ 1,086.3 | $ 18.5 | $ 949.0 | $ 36.8 |
| Recovery % | | | 1.7% | | 3.9% |
| **Remaining Proceeds** | (q) | | - | | (0) |

1

**Cooper Standard Holdings Inc.**
Hypothetical Liquidation Analysis

### ASSETS
($'s in millions)

| | Net Book Value | Notes | Low Scenario Estimated Recovery | Low Scenario Estimated Realization Rate | High Scenario Estimated Recovery | High Scenario Estimated Realization Rate |
|---|---|---|---|---|---|---|
| Cash & Cash Equivalents | $ - | (a) | $ - | 0.0% | $ - | 0.0% |
| Accounts Receivable | - | (b) | - | 0.0% | - | 0.0% |
| Inventory | - | (c) | - | 0.0% | - | 0.0% |
| Prepaid Expenses | - | (d) | - | 0.0% | - | 0.0% |
| Other Current Assets | - | (e) | - | 0.0% | - | 0.0% |
| Net Property, Plant & Equipment | - | (f) | - | 0.0% | - | 0.0% |
| Other Assets | - | (g) | - | 0.0% | - | 0.0% |
| Intercompany | 72.7 | (h) | 1.2 | 1.7% | 2.8 | 3.9% |
| Value of Unconsolidated Affiliates | - | (i) | - | | - | |
| **Total Assets** | **$ 72.7** | (j) | **$ 1.2** | **1.7%** | **$ 2.8** | **3.9%** |
| Total Assumed Liabilities | | (k) | (0.0) | | (0.0) | |
| **Total Distributable Assets** | | | **$ 1.2** | | **$ 2.8** | |
| Encumbered Value from Foreign Stock Pledgors (65% / 100%) | | | - | | - | |
| Total Chapter 7 Wind-Down Costs | | (m) | (0.0) | | (0.1) | |
| **Total Distributable Encumbered Value** | | | **$ 1.2** | | **$ 2.7** | |

| ($'s in millions) | | | Low Scenario Estimated Allowed Claim | Low Scenario Estimated Recovery | High Scenario Estimated Allowed Claim | High Scenario Estimated Recovery |
|---|---|---|---|---|---|---|
| Total Distributable Encumbered Value | | | | $ 1.2 | | $ 2.7 |
| DIP Lender Claims | | (n) | 76.5 | 0.3 | 76.5 | 0.4 |
| Recovery % | | | | 0.4% | | 0.6% |
| Remaining Proceeds | | | | $ 0.9 | | $ 2.3 |
| Prepetition Credit Facility Claims | | (n) | 541.0 | 0.9 | 541.0 | 2.3 |
| Recovery % | | | | 0.2% | | 0.4% |
| Remaining Proceeds (before Unencumbered Assets) | | | | $ - | | $ - |
| Residual Unencumbered Value from Foreign Stock Pledgors (35%) | | | | - | | - |
| Remaining Proceeds | | | | $ - | | $ - |
| Less: Chapter 11 Administrative Claims (excl. assumed claims) | | (o) | | | | |
| 503(b)(9) Claims | | | - | - | - | - |
| Other Administrative Claims | | | - | - | - | - |
| **Total Chapter 11 Administrative Claims** | | | **$ -** | **$ -** | **$ -** | **$ -** |
| Recovery % | | | | N/A | | N/A |
| Remaining Proceeds | | | | $ - | | $ - |
| Less: General Unsecured Claims | | (p) | | | | |
| Prepetition Credit Facility Deficiency Claim | | | 287.3 | - | 150.0 | - |
| Senior Note Claims | | | 208.9 | - | 208.9 | - |
| Senior Subordinated Note Claims | | | 330.0 | - | 330.0 | - |
| Intercompany Claims | | | - | - | - | - |
| Other General Unsecured Claims | | | 69.0 | - | 69.0 | - |
| **Total General Unsecured Claims** | | | **$ 895.2** | **$ -** | **$ 757.8** | **$ -** |
| Recovery % | | | | 0.0% | | 0.0% |
| Remaining Proceeds | | (q) | | - | | - |

2

**Liquidation Analyses**

A.   Introduction

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the proposed plans of reorganization (the "Plans") satisfy the "best interests" of creditors test with respect the Debtors, the Debtors have prepared the following hypothetical liquidation analyses (the "Liquidation Analyses"), which are based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes.

The Liquidation Analyses estimate potential cash distributions to holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of all of the Debtors' assets. As such, asset values discussed in the Liquidation Analyses may differ materially from values referred to in the Plan and Disclosure Statement. The Debtors prepared the Liquidation Analyses with the assistance of their Professionals.

All capitalized terms used shall have the meaning either ascribed to them herein or as defined in the Plans.

B.   Scope, Intent, and Purpose of the Liquidation Analyses

The determination of the hypothetical proceeds from and costs of the liquidation of the Debtors' assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management and their advisors. Inevitably, some assumptions in the Liquidation Analyses would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. THE DEBTORS PREPARED THE LIQUIDATION ANALYSES FOR THE SOLE PURPOSE OF GENERATING A REASONABLE GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE GENERATED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE. THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSES WAS NOT COMPILED OR EXAMINED BY ANY INDEPENDENT ACCOUNTANTS. NO INDEPENDENT APPRAISALS WERE CONDUCTED IN PREPARING THE LIQUIDATION ANALYSES. ACCORDINGLY, WHILE DEEMED REASONABLE BASED ON THE FACTS CURRENTLY AVAILABLE, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSES. ACTUAL RESULTS COULD VARY MATERIALLY.

In preparing the Liquidation Analyses, the Debtors estimated Allowed Claims based upon a review of liabilities reflected on the Debtors' balance sheets as of November 30, 2009 (the "Financial Statements") and other available information. The Liquidation Analyses do not include estimates for certain Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and allowed in a Chapter 7 liquidation, including but not limited to certain other Administrative and Priority Claims, claims arising in connection with the termination of pension obligations (to the extent calculated in a manner other than the calculation used to record the liability on the Financial Statements), other potential employee-related obligations, including severance and WARN Act claims, tax liabilities, claims related to the rejection of leases and executory contracts, and other potential Allowed claims. Certain of these additional claims would be significant and entitled to priority in payment over general unsecured claims. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analyses. For purposes of the Liquidation Analyses, the Debtors' estimates of Allowed Claims reference specific Claims estimates, even though the Debtors'

estimate of ranges of projected recoveries under the Plan to Holders of Allowed Claims and Interests are based on ranges of Allowed Claims and Interests. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analyses should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSES IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSES.

## Global Notes to the Liquidation Analyses

1. Conversion Date and Appointment of a Chapter 7 Trustee

The Liquidation Analyses assume conversion of each of the Debtors' Chapter 11 cases to Chapter 7 liquidation cases on or about March 31, 2010, a date the Debtors consider a reasonable proxy for a hypothetical conversion during the second quarter of 2010 (hereinafter referred to as the "Conversion Date"). The Debtors believe that the Liquidation Analyses reflect a reasonable estimate of potential cash distributions to holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of all of the Debtors' assets as of the Conversion Date. On the Conversion Date, it is assumed that the Bankruptcy Court would appoint one Chapter 7 trustee (the "Trustee") to oversee the liquidation of the Debtors' estates. Should multiple Trustees be appointed to administer the Debtors' estates, lower recoveries and higher administrative costs could result and distributions to Creditors could be delayed.

2. Primary Assets of the Debtors

The Liquidation Analyses have been prepared assuming that the Debtors file for Chapter 7 protection on the Conversion Date. During the six-month period immediately following the Conversion Date (the "Transition Period"), the Liquidation Analyses assume an orderly transition of all North American operating assets and production (including non-Debtor operations in Canada and Mexico) to customers or competitors and the sale of the majority of the other non-Debtor operations outside of North America as going concern entities to customers, competitors, or strategic or financial buyers. The range of recovery estimates for the assets of the North American operations are based on the assumption that accommodation agreements are negotiated with the majority of existing customers, providing a higher realization with respect to the book value of operating assets than would otherwise be achieved in a Chapter 7 liquidation. In exchange for the assurance of higher realization on the value of operating assets, the existing customers receive a continued, uninterrupted supply of product and adequate time to orchestrate an orderly transition of operations. The proceeds realized from the sale of the operating assets are based upon a range of recoveries applied against book values as of November 30, 2009, unless otherwise stated. These book values are assumed to be representative of the Debtors' assets and liabilities as of the Conversion Date.

These Liquidation Analyses contain numerous estimates that are preliminary and remain subject to further legal and accounting analysis. The estimates incorporated are based upon the Debtors' unaudited financial statements as of November 30, 2009, assumptions representing the Debtors' best and most current judgment, and the Debtors' projected financial statements. Other than with respect to Cash & Cash Equivalents (as defined below) and certain intercompany loan balances, the Liquidation Analyses are based upon estimates of the Debtors' assets and liabilities as of November 30, 2009. Such estimates are derived from the Financial Statements or more recent financial information, where available.

As described in more detail below, the Debtors have nine major categories of assets: (a) Cash & Cash Equivalents; (b) Accounts Receivable; (c) Inventory; (d) Prepaid Expenses; (e) Other Current Assets; (f) Net Property, Plant & Equipment; (g) Other Assets; (h) Intercompany Receivables and (i) Value of Unconsolidated Affiliates. In addition, certain Debtors' have 100% owned subsidiaries that provide incremental value to the Estates.

3.      Encumbered and Unencumbered Assets

Holders of the DIP Lender Claims and Prepetition Credit Facility Claims have a first priority lien against substantially all of the Debtors' assets, including partial stock pledges from specific legal entities (the "<u>Encumbered Assets</u>"). However, certain of the Debtors' assets remain unencumbered, including (a) proceeds from the sale of certain unpledged (or the unpledged portion of) stock of non-Debtor foreign affiliates; (b) any potential preference payment recoveries; and (c) any potential fraudulent transfer recoveries (the "<u>Unencumbered Assets</u>").

4.      Liquidation Process

The Liquidation Analyses assume that the Trustee will attempt to maximize recoveries for creditors by, according to the accommodation agreements reached, continuing to operate the Debtors' businesses during the Transition Period in order to maintain a continuous supply of products to the Debtors' customers. The analyses assume that, in addition to providing assurances (via the accommodation agreements) with respect to recoveries for operating assets, the customers contribute working capital, as needed, to sustain operations of the Debtors' businesses until such operations are transitioned or sold. Accordingly, the analyses assume that all plant-level operations during the Transition Period operate on a break-even basis as a result of this support.

In addition to any contribution of working capital from the Debtors' customers, the Liquidation Analyses assume that the Trustee will continue to fund the Debtors' operations during the liquidation process using projected cash on hand and operating cash flow/sale proceeds generated by the Debtors' business operations. The Liquidation Analyses assume an "orderly" liquidation, under which the liquidation of the Assets and the wind-down of the Estates would occur over a period of eighteen (18) months, beginning on the Conversion Date.

The Liquidation Analyses further assume that, upon conversion of the Debtors' cases to Chapter 7, the Trustee would oversee the liquidation of the Debtors' interests in non-Debtor foreign affiliates. The Debtors analyzed each non-Debtor foreign legal entity and, based upon factors including geographic location, historical operating performance, complexity of products manufactured and the relative strategic importance of each entity to its customers, estimated the potential value of each on a going concern sale basis based upon a multiple of earnings or, in the event an entity is not profitable, on an asset value liquidation basis. Each legal entity was analyzed further to determine its ability, if any, to repay intercompany amounts owing to Debtor and non-Debtor entities, as well as determine if any residual equity value remained after payment of all remaining liabilities. In the event that the Liquidation Analyses concluded that residual equity value would exist, the value was assumed to flow either up to the entities' direct parent, or in the case of legal entities that support the Prepetition Credit Facility Claim through a stock pledge, the portion of the residual equity value subject to the stock pledge was assumed to constitute Encumbered Assets, and any remaining non-pledged portion Unencumbered Assets.

5.      Factors Considered in Determining Hypothetical Liquidation Proceeds

The Debtors considered a variety of factors that could impact the amount of net proceeds realized in Chapter 7 and incorporated assumptions into the Liquidation Analyses that, in their judgment, reasonably reflect the hypothetical effect these variables would have on net proceeds realized. Net proceeds realized in an actual Chapter 7 could differ materially based upon the actual impact of the variables for which assumptions were made, as well as other factors not considered. The following list includes some, but not all, of the factors that could negatively impact the estimated recoveries: i) turnover of key personnel; ii) deteriorating industry conditions; iii) aggressive customer positions; and iv) delays in the liquidation process.

These factors may limit the amount of the proceeds generated by the liquidation of the Debtors. For example, it is possible that the liquidation would be delayed while the Trustee and his or her professionals become knowledgeable about the Chapter 11 cases and Debtors' business and operations. This delay could materially reduce the value of the Liquidation Proceeds (as defined herein).

There is a risk that the Trustee would be unable to maximize the value of the Debtors' Estates in a "controlled" liquidation because the Bankruptcy Court may only allow the Trustee to operate the Debtors' business for a "limited period" under section 721 of the Bankruptcy Code. While the Bankruptcy Code does not set forth a specific time period under which a Chapter 7 trustee is allowed to operate a debtor's business, the Bankruptcy Court may conclude that the eighteen (18) month period assumed in the Liquidation Analyses exceeds the time contemplated by the Bankruptcy Code. In addition, if customer support or estimated Liquidation Proceeds (as defined herein) fall significantly below estimates, the Trustee may not have sufficient funds to operate the Debtors' businesses for the time period reflected in the Liquidation Analyses. This would lead to a shorter liquidation time period and a forced, as opposed to an orderly, liquidation scenario. The amount of net proceeds realized in such a forced liquidation scenario could be materially lower than that assumed in the Liquidation Analyses. Should the Bankruptcy Court limit the period of time that the Trustee operates the Debtors' businesses, or should there be insufficient funds to conduct an orderly liquidation, the conditions under which the all of the Debtors' assets and interests would be liquidated would be less favorable and the resulting net proceeds generated would likely be lower than estimated in the Liquidation Analyses.

6. Waterfall and Recovery Ranges

The Liquidation Analyses assume that the proceeds generated from the liquidation of all of the Debtors' assets plus estimated Cash & Cash Equivalents held by the Debtors on the Conversion Date will be reasonably available to the Trustee (the "Liquidation Proceeds"). The Trustee would use the Liquidation Proceeds to satisfy Secured Claims, the costs and expenses of the liquidation (including Chapter 7 Estate Wind-Down Costs as defined below) and Trustee Fees (as defined below), and such additional Administrative and Priority Claims that are estimated to be incurred in Chapter 7 liquidation. Any remaining net Liquidation Proceeds would then be allocated to Creditors and holders of Claims and Interests in each Debtor entity in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code. The Liquidation Analyses include estimates for high and low Liquidation Proceeds based on high and low recovery scenarios for each category of the Debtors' assets, high and low scenarios concerning the sale of the non-Debtor foreign affiliates, and calculate estimated high and low recovery percentages for Claims and Interests upon the Trustee's application of the Liquidation Proceeds.

The Debtors used the Financial Statements and certain projected financial information as a proxy for expected asset and liability values on the Conversion Date. Adjustments were made to the Financial Statements to account for any significant known changes expected to occur before the Conversion Date. While the Debtors expect to incur ongoing ordinary course claims (similar in size and nature to current claims that will be extinguished in the normal course) during this period (which have not been reflected herein), the ultimate inclusion of such additional claims is not expected to change the result of these Liquidation Analyses in any material form or fashion.

The Debtors' Professionals (1) worked with the Debtors' operational, financial, and accounting personnel, (2) used industry knowledge, and (3) drew upon past experiences in order to estimate the recovery ranges of each asset class. The Debtors do not provide any assurance regarding such recoveries.

**Specific Notes to the Asset and
Liability Assumptions Contained in the Liquidation Analyses**

(a) Cash & Cash Equivalents ("Cash")

Cash as of the Conversion Date is based on the Debtors' projected cash balances. The Liquidation Analyses assume a 100% recovery rate for cash based on the liquidity of such assets.

(b) Accounts Receivable

Accounts receivable reflect amounts owed to the Debtors by various parties, generally from original equipment manufacturers ("OEMs") or their tier 1 suppliers, associated with the sale of automobile parts in the normal course of business (the "Accounts Receivable"). The Liquidation Analyses assume that the Accounts Receivable as of November 30, 2009 represent the approximate balance of Accounts Receivable as of the Conversion Date.

The assumed recovery rates for Accounts Receivable in the low and high recovery scenarios are 80% and 90%, respectively. These recovery rates reflect the expected benefits from customer accommodation agreements. Without such agreements, expected recoveries would likely be materially lower.

(c) Inventory

The Debtors categorize inventory into three main categories: "Raw Materials", "Work in Process" ("WIP"), and "Finished Goods" (collectively, the "Inventory"). The Finished Goods inventory reflects products that are 100% completed and ready for shipment to a customer, the Work-in-Process inventory reflects products at various stages of completion, and the Raw Materials inventory includes production materials (including purchased components) that have not yet entered the production process.

The Liquidation Analyses assume that the majority of Finished Goods inventory is ready to ship and that it is sold to either a customer or an alternative supplier at contract price with minimal devaluation due to the liquidation process. The majority of Raw Materials are similarly assumed sold with minimal devaluation from acquisition price. The Liquidation Analyses assume that the customer accommodation agreements will provide for incremental customer funding to build inventory banks from Work in Process in order to ensure a smooth transition.

The assumed recovery rates for the various categories of Inventory in the low and high recovery scenarios are as follows:

|                  | Low Recovery | High Recovery |
|------------------|--------------|---------------|
| Raw Materials    | 85%          | 95%           |
| Work in Process  | 70%          | 80%           |
| Finished Goods   | 90%          | 95%           |

(d) Prepaid Expenses

Prepaid expenses primarily include prepayments for certain costs, including rent, insurance, taxes, and other items (the "Prepaid Expenses"). The Liquidation Analyses assumes that the Debtors can recover or otherwise utilize a portion of the Prepaid Expenses during Chapter 7. The Liquidation Analysis assumes recovery rates for Prepaid Expenses in the low and high recovery scenarios are 25% and 50%, respectively.

7

(e)     Other Current Assets

Other Current Assets reflect the real property assets of the closed El Dorado, AR facility, which is recorded on the balance sheet under "Assets Held for Sale". The Liquidation Analysis assumes that the net proceeds realized on the sale of El Dorado approximate the current carrying value, which is reflective of market value.

(f)     Net Property, Plant & Equipment

The Debtors categorize net property, plant & equipment in the following categories: "Land / Buildings", "Machinery & Equipment", "Other Equipment" and "Construction in Progress" (collectively, the "Net Property, Plant & Equipment").

> Land / Buildings – consists of various owned office and manufacturing facilities
>
> Machinery & Equipment – consists of various equipment and fixtures used in the manufacturing process.
>
> Other Equipment – includes capitalized tooling, returnable containers and other capitalized assets with a shorter useful life (1 – 3 years).
>
> Construction in Progress – includes the capitalized value of capital projects in process

As the Debtors do not have current appraisals available to estimate the potential value of Net Property, Plant & Equipment, the Liquidation Analyses reflects broad estimates for the recovery rates for each category. The assumed recovery rates for the various categories of Net Property, Plant & Equipment of the North American Operations in the low and high recovery scenarios are as follows:

|  | Low Recovery | High Recovery |
|---|---|---|
| Land / Buildings | 60% | 70% |
| Machinery & Equipment | 15% | 30% |
| Other Equipment | 10% | 20% |
| Construction in Progress | 0% | 0% |

(g)     Other Assets

Other Assets include capitalized debt issuance costs for the DIP Facility, tool and dies and other miscellaneous assets. There are no assumed proceeds related to the capitalized debt issuance costs, which represent the majority of Other Assets, therefore the assumed recovery rates for Other Assets are not significant. The Liquidation Analysis assumes recovery rates for Other Assets in the low and high scenarios are 5% and 10%, respectively.

(h)     Intercompany Receivables

Intercompany Receivables include amounts owed to the Debtors from non-Debtor foreign affiliates (from all affiliates in the case of Holdings) as the result of either an intercompany loan or ordinary course receivables for trade-related transactions, allocated costs or recharges. The Liquidation Analyses calculate recoveries (if any) for Intercompany Receivables owed to the Debtors from non-Debtor foreign affiliates (from all affiliates in the case of Holdings) and among non-Debtor foreign affiliates, based on the assumed claims waterfall for each legal entity. All intercompany amounts owed between the Debtors and non-Debtor foreign affiliates are general unsecured claims. Therefore a recovery exists only to the extent that assumed net proceeds generated are sufficient to provide for a full or partial repayment.

Similarly, the Debtors have intercompany payables due to certain non-Debtor foreign affiliates and Holdings. The Liquidation Analyses provide a recovery on unsecured intercompany accounts payable of the Debtors based upon the pool of net liquidation proceeds available for distribution to all general unsecured creditors. Any recoveries by non-Debtor foreign affiliates on intercompany accounts owing from the Debtors are considered proceeds available to satisfy liabilities at that specific legal entity.

The Liquidation Analyses result in a recovery on Intercompany Receivables at Holdings of 1.7% to 3.9% in the low and high scenarios, respectively. For the remaining Debtors, the Liquidation Analyses result in a recovery rate of 16.3% to 28.4% for Intercompany Receivables in the low and high scenarios, respectively.

(i) <u>Value of Unconsolidated Affiliates</u>

1) Nishikawa Standard Company LLC

The Debtors hold an equity interest in certain joint ventures. One of the Debtors, NISCO Holding Co. ("NISCO") owns a 50% interest in Nishikawa Standard Company, LLC, a joint venture with Nishikawa of America Inc. ("Nishikawa"). The Liquidation Analyses assume that the 50.0% interest held by NISCO is sold to Nishikawa based on an assumed market multiple of Adjusted EBITDA reflecting a non-controlling interest. As the carrying value of the investment in Nishikawa on the financial statements is less than the net proceeds assumed in the Liquidation Analysis, there is no recovery percentage calculated.

2) GuYoung Technology Co. Ltd. ("GuYoung")

Cooper Standard Automotive, Inc. owns 20% of the outstanding shares GuYoung, which are traded publicly on the Korean Stock Exchange. The Liquidation Analyses assume that the shares are sold on the open market at the current market price and the proceeds converted to U.S. dollars at the current exchange rate, with the proceeds being received by Cooper Standard Automotive, Inc. As the carrying value of the investment in GuYoung on the financial statements is less than the proceeds assumed in the Liquidation Analysis, there is no recovery percentage calculated.

In addition to the interests in unconsolidated affiliates owned directly by the Debtors, Mezteler Automotive Profile Systems Italy SpA (a foreign entity owned by the Debtors via CSA International Holdings CV, a 100% owned subsidiary of Cooper-Standard Automotive, Inc.) holds a 47.5% equity interest in Shanghai SAIC-Metzeler Sealing Systems Company, Ltd., an unconsolidated joint venture. The Liquidation Analyses assume that the 47.5% interest is sold to the joint venture partner based on an assumed market multiple of Adjusted EBITDA reflecting a non-controlling interest. The assumed proceeds are included in the analysis of Mezteler Automotive Profile Systems Italy SpA, and are therefore not reflected in the recoveries illustrated as "Value of Unconsolidated Affiliates".

(j) Miscellaneous

The Liquidation Analyses does not assume any recovery on certain other assets recorded on the Financial Statements, including current and long term deferred tax assets, goodwill and other intangible assets. Accordingly, the "Total Assets" figure representing net book value of the Debtors' assets per the Financial Statements excludes the net book value of these assets. Based on historical precedent in the sale of distressed automotive operations in which the customer or an alternative supplier purchases operations based upon asset values and given the extreme uncertainty surrounding the ability to realize value from these assets, the Liquidation Analyses conclude that there would be no incremental proceeds realized for these assets and no recovery has been assumed.

The Liquidation Analyses do not include estimates for recoveries upon or litigation costs related to any potential avoidance actions under Chapter 5 of the Bankruptcy Code, including potential preference or fraudulent transfer actions. While such actions, if pursued, may lead to additional

recoveries for Claims and Interests, given the anticipated defenses and disputes related to these matters, the Debtors have not attempted to quantify the potential impact and therefore make no representations regarding the range of potential incremental proceeds or the probability of success associated with any potential avoidance actions.

    (k)    Assumed Liabilities

The Liquidation Analyses assume that certain other post-petition liabilities of the Debtors that would otherwise constitute Chapter 11 Administrative Claims are assumed by the acquiring customer or competitor, with a corresponding offsetting reduction of the purchase price. These assumed liabilities include accrued payroll liabilities, post-petition accounts payable, and other liabilities related to the real property acquired or leases for real property assumed.

    (l)    Encumbered Value from Foreign Stock Pledgors (65% / 100%)

As described above, the Liquidation Analyses assume that the majority of non-Debtor foreign affiliates are sold as going concern legal entities during the Transition Period. As each non-Debtor foreign affiliate is owned either directly or indirectly by one of the Debtors or another non-Debtor foreign affiliate that has provided a partial stock pledge in support of the DIP Lender Claims and Prepetition Credit Facility Claims, the Debtors analyzed the potential residual value resulting from the sale of each legal entity and ultimately the encumbered value (if any) attributable to the partial stock pledges.

In order to determine the range of hypothetical high and low encumbered value of the partial stock pledges, the Debtors first calculated the hypothetical net proceeds realized from each transaction. The gross proceeds were based either on a multiple of earnings or the asset liquidation value, calculated in manner consistent with the estimated values of the Debtors' assets. For transactions based upon a multiple of earnings, the Debtors researched recent transaction multiples in each geographic region and applied a discretionary discount to reflect the distressed nature of the hypothetical transaction to calculate estimated gross proceeds. Residual equity value (if any) was determined after deducting estimated transaction costs and any non-working capital liabilities that would not be assumed by a purchaser. For transactions based on asset liquidation values, the Debtors assumed that all liabilities of the foreign legal entity must be paid in full before any residual value would be available to flow to the direct parent entity. The Liquidation Analyses conclude that residual equity value would exist at certain stock pledge entities in the hypothetical low and high scenarios, and therefore include the values of the partial stock pledges as Encumbered Assets.

A significant portion of the Company's assets and non-Debtor affiliates are located in countries throughout the world and, accordingly, proceeds resulting from a going concern sale or liquidation would be subject to the laws of numerous foreign jurisdictions all of which were not contemplated in these analyses. If the Debtors had contemplated all such factors, the hypothetical recoveries illustrated could be negatively impacted.

There are a variety of factors that could result in significantly lower net proceeds realized from the sale or liquidation of the non-Debtor foreign affiliates, including, but not limited to (a) unfavorable market conditions; (b) ability and/or willingness of strategic competitors to acquire operations; and (c) risk of losing content on global platforms.

    (m)    Chapter 7 Wind-Down Costs

        1)    Trustee Fees

Trustee Fees represent the fees paid to the Chapter 7 trustee appointed in accordance with section 326 of the Bankruptcy Code. The Trustee Fees are estimated based on historical case experience in similar cases and are calculated at 2.0% of all proceeds distributable to secured and unsecured creditors generated by the sale of Debtor and non-Debtor foreign affiliates.

2)  Chapter 7 Estate Wind-Down Costs

To maximize recoveries to secured and unsecured creditors, minimize the amount of Claims, and generally ensure an orderly liquidation, the Trustee will need to employ a substantial number of the Debtors' employees during the Chapter 7 liquidation process. These employees will primarily be responsible for overseeing and maintaining the Debtors' operations, providing historical knowledge and insight to the Trustee regarding the Debtors' businesses and the Chapter 11 Cases, and concluding the administrative liquidation of the business after the sale of the Debtor assets and non-Debtor foreign entities. The Liquidation Analyses assume that the "run rate" of the selling, general and administrative costs of the North American Operations (collectively, the "Corporate and Divisional Costs") will be reduced substantially immediately following the Conversion Date. Following the initial six-month Transition Period during which the Debtors will continue to produce parts, the Corporate and Divisional Costs will again be reduced significantly, down to an estimate of the minimal level required to wrap up Estate affairs, affect final distributions, and dissolve legal entities.

In addition, Chapter 7 Estate Wind-Down Costs include the payment (under the Carve-Out, (as defined in the cash collateral order) of an estimated $7 million of Chapter 11 professional fees incurred and unpaid as of the Conversion Date).

3)  Professional Fees

Professional Fees represent the costs of any professionals the Trustee employs to assist with the liquidation process, including investment bankers, attorneys and other advisors. The Professional Fees are estimated at 1.5% of all proceeds distributable to secured and unsecured creditors generated by the sale of Debtor and non-Debtor foreign affiliates.

**Claims**

(n)  Secured Claims

1)  DIP Lender Claim

The DIP Lender Claim as of the Conversion Date includes the current outstanding balance of $150 million (including $50 million borrowed by Cooper Standard Automotive Canada Limited, $25 million borrowed by Metzeler Automotive Profile Systems GmbH (net of repayments to date), and $75 million borrowed by the Debtors), plus estimated accrued interest, and is satisfied in full from the Liquidation Proceeds. The DIP Lender Claim represents a superpriority senior secured obligation and is secured by liens on substantially all the assets of the Debtors and certain foreign subsidiaries. In addition, the DIP Lender Claim is guaranteed by each Debtor.

2)  Prepetition Credit Facility Claims

As of August 3rd, 2009 (the "Petition Date"), the Debtors and Cooper Standard Automotive Canada Limited owed approximately $613.3 million in principal and $1.7 million in accrued interest under the pre-petition revolver and term loans A – E. Furthermore, the Liquidation Analyses assume that the face amount of all pre-petition letters of credit outstanding as of the Petition Date that were not subsequently renewed and cash collateralized during the Chapter 11 proceedings under the DIP Facility are drawn shortly after the Conversion Date. The Liquidation Analyses assume that $20.9 million of termination costs related to various interest rate swap and other derivative instruments in place as of the Petition Date rank *pari passu* with the pre-petition revolver, term loans, accrued interest as of the Petition Date and the letter of credit draws. The breakdown of the Prepetition Credit Facility Claims between the Debtors and Cooper Standard Automotive Canada Limited for purposes of the Liquidation Analyses is as follows:

| ($ millions) | U.S. Debtors (incl. Holdings) | Cooper Standard Automotive Canada Ltd. | Total |
|---|---|---|---|
| Principal Outstanding | $ 500.3 | $ 113.0 | $ 613.3 |
| Letter of Credit Draws | 18.4 | - | 18.4 |
| Swap / Derivative Termination | 20.9 | 0.0 | 20.9 |
| Pre-Petition Accrued Interest | 1.5 | 0.2 | 1.7 |
| **Prepetition Credit Facility Claims** | $ 541.0 | $ 113.2 | $ 654.2 |

Due to the shortfall in the value of the underlying collateral as depicted in the Liquidation Analyses, the Prepetition Credit Facility Claim, as presented above, excludes any accrual for adequate protection or post-petition accrued interest claims.

Furthermore, these Liquidation Analyses do not take into account any potential claim for superpriority treatment of amounts outstanding related to the Prepetition Credit Facility. Among other things, the DIP Order entitles the holders of Prepetition Credit Facility Claims to assert a superpriority claim against each of the Debtors on account of the diminution of the value of the collateral securing the Prepetition Credit Facility from the time of entry of the DIP Order through the Conversion Date (should any diminution be deemed to exist). No incremental recovery to the holders of the Prepetition Credit Facility Claims has been reflected in these Liquidation Analyses on account of this potential superpriority claim.

(o)     Chapter 11 Administrative Claims

Chapter 11 Administrative Claims include any liabilities of the U.S. Debtors that constitute a valid administrative claim under section 503 of the Bankruptcy Code. The Liquidation Analyses assume that the unencumbered 35% portion of net proceeds realized through the sale or liquidation of the non-pledged, non-Debtor foreign affiliates of the Debtors are available to satisfy the Chapter 11 Administrative Claims. As presented in the Liquidation Analyses, these include:

1)  <u>503(b)(9) Administrative Claims</u>:  The Liquidation Analyses reflects an estimate of such claims unpaid as of November 30, 2009. The Liquidation Analyses assume that vendors receive a Chapter 11 Administrative Claim for the value of any goods received by the Debtors' within twenty (20) days before the Petition Date.

2)  <u>Other Administrative Claims</u>:  These Claims include post-petition current and long term liabilities that the Debtors assume will remain with the estate after the operations are sold or otherwise transitioned to a customer or new supplier and that would constitute a valid administrative claim.

As discussed above, the Liquidation Analyses assume that certain other post-petition liabilities of the Debtors that would otherwise constitute Chapter 11 Administrative Claims are assumed by the acquiring customer or competitor, with a corresponding reduction to the purchase price. These assumed liabilities include accrued payroll liabilities, post-petition accounts payable, and other liabilities related to the real property acquired or leases for real property assumed.

(p)    General Unsecured Claims

The Liquidation Analyses further assume that the unencumbered 35% portion of net proceeds realized through the sale or liquidation of the non-pledged, non-Debtor foreign affiliates that is not used to satisfy the Chapter 11 Administrative Claims is available for distribution to all general unsecured claims on a *pari passu* basis. As presented, the General Unsecured Claims include:

1)    Prepetition Credit Facility Deficiency Claim: The Liquidation Analyses estimate that there are insufficient proceeds from encumbered assets available to pay the Prepetition Credit Facility Claims in full. As such, a Prepetition Credit Facility Deficiency Claim has been reflected in the Liquidation Analyses.

2)    Senior Note Claims: These Claims represent the approximately $208.9 million of principal and accrued interest owed on account of the 7.0% senior notes that mature on December 15, 2012. The Senior Notes were issued by Cooper Standard Automotive, Inc., and are unconditionally guaranteed by Holdings and guaranteed on a senior unsecured basis by all of the remaining Debtors except CS Automotive LLC.

3)    Senior Subordinated Note Claims: These Claims represent the approximately $330.0 million of principal and accrued interest owed on account of the 8.375% senior subordinated notes that mature on December 15, 2014. The Senior Subordinated Notes were issued by Cooper Standard Automotive, Inc., and are unconditionally guaranteed by Holdings and guaranteed on a senior subordinated basis by all of the remaining Debtors except CS Automotive LLC. Because the Senior Subordinated Notes are subordinated in right of payment to the Senior Notes, all pro rata recovery on account of the Senior Subordinated Note Claim is applied to the Senior Note Claim until it is fully satisfied. Because the Liquidation Analyses conclude that there are insufficient unencumbered proceeds to satisfy the Senior Note Claim after taking into consideration the subordination, there is no recovery expected for the Senior Subordinated Note Claims.

4)    Intercompany Trade Payables: For the Debtors excluding Holdings, these Claims represent amounts owing from the Debtors to Holdings and certain other non-Debtor foreign affiliates.

5)    Other General Unsecured Claims: For the Debtors excluding Holdings, these Claims represent certain other general unsecured claims anticipated upon conversion to a Chapter 7, including the estimated remaining unpaid pre-petition accounts payable claims as of the Conversion Date that are not entitled to Chapter 11 Administrative Claim status under 503(b)(9), the underfunded pension liabilities and other post-retirement employee benefits (OPEB). For Holdings, the Other General Unsecured Claims represent estimated payables as a result of the Canadian Tax Refund and the Anticipated Canadian Tax Refund.

The estimated General Unsecured Claims reflected in the Liquidation Analyses are based upon the Debtors' estimates of remaining claims after the claims objection, reconciliation, and resolution process as set forth in the Disclosure Statement, subject to certain adjustments. For purposes of the Liquidation Analyses, these estimates do not include interest accrued after the Petition Date because the Liquidation Analyses conclude that holders of General Unsecured Claims will not be paid in full and, therefore are not entitled to post-petition interest.

As discussed above, the Liquidation Analyses do not include estimates for certain Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and allowed in a Chapter 7 liquidation, including but not limited to certain other Administrative and Priority Claims, claims arising in

connection with the termination of pension obligations (to the extent calculated in a manner other than the calculation used to record the liability on the Financial Statements), other potential employee-related obligations such as severance and WARN Act claims, tax liabilities, claims related to the rejection of leases and executory contracts, and other potential Allowed claims. Certain of these additional claims would be significant and entitled to priority in payment over general unsecured claims. If such Claims were factored into the Liquidation Analyses, the recoveries for the general unsecured claims would be lower than presented.

      (q)      Equity Interests

There are insufficient proceeds for holders of Old Holdings Equity Interests to obtain any recovery in the Liquidation Analyses.