declared). Such dividends shall be payable quarterly in arrears on March 31, June 30, September 30 and December 31 of each year, commencing [●], 2010 (or if any such date is not a business day, the next succeeding business day) (each such date being a "**Dividend Payment Date**"). A dividend period (a "**Dividend Period**") is the period from and including a Dividend Payment Date (other than the initial Dividend Period, which shall commence on and include the date of original issue of the 7% Preferred Stock) to but excluding the next immediately succeeding Dividend Payment Date. The amount of dividends payable for each full Dividend Period shall be computed by dividing the annual dividend rate by four. The amount of dividends payable for the initial Dividend Period or any other period shorter or longer than a full Dividend Period shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Dividends shall be payable to the holders of record of shares of 7% Preferred Stock as they appear on the Corporation's stock register at the close of business on the applicable record date, which shall be the 15th day of the month in which the Dividend Payment Date occurs or such other date, not less than 10 days nor more than 60 days before the applicable Dividend Payment Date, as may be fixed by the Board of Directors. Accrued and unpaid dividends for any past Dividend Periods may be declared and paid at any time (whether in cash or in kind), without reference to any Dividend Payment Date, to holders of record on the applicable record date, which shall be no more than 45 days preceding the payment date thereof, as may be fixed by the Board of Directors. The Corporation shall provide 10 days prior written notice to the holders of 7% Preferred Stock of any applicable record date.

Dividends on the 7% Preferred Stock shall be cumulative and accrue from the date of issue (and, in the case of any Additional Shares (as defined below), from the date such Additional Shares are issued), whether or not funds of the Corporation are legally available for the payment of such dividends and whether or not such dividends are earned or declared by the Board of Directors. Accrued and unpaid dividends for any past Dividend Periods (whether or not earned or declared) shall accrue cumulative dividends at the rate set forth in this Section 3(a).

(b)     _Payment In Kind_. The Corporation may, at its option, when, as and if declared by the Board of Directors, out of funds legally available for the payment of dividends, and, to the extent legally permitted at such time and to the extent such dividends are not declared and paid in cash on the relevant Dividend Payment Date, shall pay the preferred dividends payable pursuant to Section 3(a) hereof in additional shares of

2

7% Preferred Stock ("**Additional Shares**") instead of cash, for each Dividend Period; *provided* that in connection with any such payment in Additional Shares, all accrued and unpaid dividends on shares of 7% Preferred Stock for all past Dividend Periods shall have been declared and paid in full (whether in cash or in kind). To the extent any dividends otherwise required to be paid in Additional Shares pursuant to the preceding sentence are prohibited as a result of any legal prohibition, the Corporation and the Board of Directors shall use their reasonable best efforts to remove any such legal prohibition and shall pay any such dividend in Additional Shares at such time and to the extent any such legal prohibition is removed. To the extent dividends are paid in Additional Shares, (i) such shares shall be duly and validly issued and fully paid and non-assessable, free and clear of all liens and other claims and not subject to any preemptive rights, and (ii) each holder of 7% Preferred Stock shall receive a number of Additional Shares equal to the product of (x) the number of shares of 7% Preferred Stock held by such holder and (y) a fraction, the numerator of which shall be equal to the cash amount per share of 7% Preferred Stock that would have been paid if the dividend had been paid in cash instead of Additional Shares and the denominator of which shall be equal to the Stated Value. No fractional shares shall be issued upon the payment of dividends pursuant to this Section 3(b), and the number of shares to be issued upon payment of such dividends will be rounded up to the nearest whole share; *provided* that, in lieu of rounding up to the nearest whole share, the Corporation may, at its option, pay a cash adjustment in respect of such fractional interest equal to such fractional interest multiplied by the Stated Value.

(c)     *Restrictions on Dividends, etc.* So long as any shares of 7% Preferred Stock are outstanding, the Corporation shall not, and shall cause its subsidiaries not to, directly or indirectly, declare, pay or set apart for payment any dividends or other distributions on any Junior Securities (other than dividends or other distributions payable in shares of Junior Securities, including Common Stock, and cash paid in lieu of fractional shares of Common Stock), or repurchase, redeem or otherwise acquire or set apart funds to repurchase, redeem or otherwise acquire any Junior Securities for any consideration (through a sinking fund or otherwise), unless in each case the full cumulative preferred dividends have been paid in cash or Additional Shares on all outstanding shares of 7% Preferred Stock for all past Dividend Periods and, in case of a cash dividend on any Junior Securities, the Corporation shall have redeemed all shares of 7% Preferred Stock tendered in an offer pursuant to Section 9(c) hereof;

3

*provided, however,* that the foregoing restriction will not apply to purchases, redemptions or other acquisitions of Junior Securities:

(i)     in connection with any employment contract or benefit plan or arrangement with or for the benefit of employees, officers or directors of the Corporation or any of its subsidiaries approved by the Board of Directors; or

(ii)     in exchange for any other class or series of Junior Securities (including the purchase of fractional interests in Junior Securities pursuant to the conversion or exchange provisions of the Junior Securities).

If full cumulative preferred dividends on all outstanding shares of 7% Preferred Stock have not been paid, then all preferred dividends declared and paid on the 7% Preferred Stock and any Parity Securities shall be declared and paid in the same form and ratably in proportion to the respective amounts of accrued and unpaid dividends on the 7% Preferred Stock and such Parity Securities.

Other than the preferred dividends payable pursuant to this Section 3 and the participating dividends payable pursuant to Section 4 hereof, the holders of shares of 7% Preferred Stock shall not be entitled to receive any dividends on the shares of 7% Preferred Stock.

**4.    Participating Dividends.**

(a)     *Participating Dividends.*  In addition to the preferred dividends payable pursuant to Section 3 hereof, holders of 7% Preferred Stock shall be entitled to receive, for each share of 7% Preferred Stock, when, as and if declared by the Board of Directors, out of funds legally available for the payment of dividends, dividends and distributions (other than dividends payable in Common Stock) to the same extent and on the same basis as and contemporaneously with dividends and distributions (other than dividends payable in Common Stock) as declared by the Board of Directors with respect to shares of Common Stock in an amount equal to the product of (i) the number of shares of Common Stock issuable upon conversion of a share of 7% Preferred Stock pursuant to Section 6 hereof on the record date for the dividend or distribution on the Common Stock and (ii) the dividend or distribution payable on a share of the Common Stock. Dividends payable pursuant to this Section 4(a) shall be payable to the holders of record of shares of 7% Preferred Stock as they appear on the

Corporation's stock register at the close of business on the same record date as is applicable to the Common Stock, which shall be not less than 10 days nor more than 60 days before the applicable dividend payment date, as may be fixed by the Board of Directors. The Corporation shall provide 10 days prior written notice to the holders of 7% Preferred Stock of any applicable record date.

(b)   *Restrictions on Dividends*. So long as any shares of 7% Preferred Stock are outstanding, the Corporation shall not, directly or indirectly, declare, pay or set apart for payment any dividends or other distributions on shares of Common Stock (other than dividends payable in Common Stock), unless the holders of 7% Preferred Stock shall simultaneously receive (i) all accrued and unpaid dividends payable pursuant to Section 3 hereof for all past Dividend Periods as required pursuant to Section 3(c) hereof and, in case of a cash dividend on the shares of Common Stock, the Corporation shall have redeemed all shares of 7% Preferred Stock tendered in an offer pursuant to Section 9(c) hereof and (ii) the dividends payable pursuant to this Section 4 with respect to such dividend or distribution on the Common Stock.

5.     **Liquidation Preference**.  In the event of any liquidation, dissolution or winding-up of the Corporation, whether voluntary or involuntary, before any payment or distribution of the Corporation's property or assets (whether capital or surplus) shall be made to or set apart for the holders of Junior Securities, the holders of 7% Preferred Stock shall be entitled to receive an amount per share of 7% Preferred Stock equal to the greater of (i) the sum of $100 (which amount shall be appropriately adjusted in the event of any stock split, stock combination or other similar recapitalization of the 7% Preferred Stock) (the "**Stated Value**") and all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) to the date of final distribution to the holders of 7% Preferred Stock and (ii) the amount such share of 7% Preferred Stock would be entitled to receive pursuant to the liquidation, dissolution or winding up of the Corporation if such share had been converted into shares of Common Stock in accordance with Section 6 hereof.  If, upon any liquidation, dissolution or winding-up of the Corporation, the Corporation's assets, or proceeds thereof, distributable among the holders of 7% Preferred Stock and any Parity Securities are insufficient to pay in full the aggregate amount of the liquidation preference payable in respect of all outstanding shares of 7% Preferred Stock and Parity Securities, such assets or the proceeds thereof shall be distributed among the holders of the 7% Preferred Stock and Parity Securities ratably in proportion to the respective amounts of the liquidation preference that would be payable on such shares of 7% Preferred Stock and Parity Securities if all

5

such amounts were paid in full. For the avoidance of doubt, in the event of the voluntary or involuntary commencement of a case or other proceeding against the Corporation seeking its liquidation, reorganization, debt arrangement, dissolution, winding up or composition, or the readjustment of its debts, or the appointment of a trustee, receiver, custodian, liquidator, assignee or the like for the Corporation of all or substantially all of its assets, or any similar action with respect to the Corporation, whether judicial or non-judicial or under any law relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debt, the amount of all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) shall be included in the allowed amount of the liquidation preference to which holders of 7% Preferred Stock shall be entitled.

Subject to the rights of the holders of any Parity Securities, after payment shall have been made in full to the holders of 7% Preferred Stock pursuant to this Section 5, the holders of Junior Securities shall be entitled to receive all remaining assets of the Corporation, subject to the respective terms applying thereto.

For purposes of this Section 5, a voluntary or involuntary liquidation, dissolution or winding-up of the Corporation shall not include a voluntary sale, lease or exchange of all or substantially all of the Corporation's property or assets or a consolidation or merger of the Corporation with any other Person.

6. **Conversion at the Option of the Holders**.

(a) *Holders' Right to Convert*. Subject to the provisions of this Section 6, each holder of shares of 7% Preferred Stock has the right, at any time and from time to time, at such holder's option, to convert all or part of the holder's shares of 7% Preferred Stock into fully paid and non-assessable shares of Common Stock. The number of shares of Common Stock deliverable upon conversion of a share of 7% Preferred Stock shall be equal to the result obtained by dividing (i) the sum of the Stated Value and all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) to the effective date of the conversion *by* (ii) $23.30574, adjusted as provided in Section 7 hereof (each such price, a "**Conversion Price**").

(b)    *Conversion Notice; Conversion Procedures*.

(i)    In order to exercise the conversion right, the holder of shares of 7% Preferred Stock shall deliver to the Conversion Agent certificates for the shares to be converted with a written notice of election to convert completed and signed, specifying the number of shares of 7% Preferred Stock to be converted (each such notice, a "conversion notice"). Unless the shares of Common Stock issuable upon conversion are to be issued in the same name as the name in which the shares of 7% Preferred Stock are registered, each share surrendered for conversion shall be accompanied by instruments of transfer, in form reasonably satisfactory to the Conversion Agent, duly executed by the holder or the holder's duly authorized attorney. The holder's right to convert shares called for redemption pursuant to Section 9(b) hereof or for conversion pursuant to Section 8 hereof shall terminate at 5:00 p.m., New York City time, on the business day immediately preceding the redemption or conversion date, unless the Corporation shall default in paying the amount payable upon such redemption or issuing the shares of Common Stock upon such conversion.

(ii)    As promptly as practicable after the delivery of the certificates and the conversion notice as provided above, the Corporation shall issue and deliver to the holder or, at the holder's written direction, to the holder's transferee a certificate or certificates for the whole number of shares of Common Stock issuable upon conversion. If a holder's interest is a beneficial interest in a global share certificate representing 7% Preferred Stock, a book-entry transfer shall be made by the Conversion Agent upon compliance with the relevant procedures for converting a beneficial interest in a global security.

(iii)    Each conversion shall be deemed to have been effected immediately prior to the close of business on the date on which the certificates for the shares of 7% Preferred Stock and conversion notice were received by the Conversion Agent. The Person in whose name or names any certificate or certificates for shares of Common Stock are issuable upon such conversion shall be deemed to have become the holder of record of the shares of Common Stock represented thereby at such time on such date.

(c)    *General Provisions Applicable to Conversions*.

(i)    The Corporation shall pay any and all issuance, delivery and transfer taxes in respect of the issuance or delivery of shares of Common Stock on conversion of 7% Preferred Stock. The Corporation shall not, however, be required to pay any tax in respect of any transfer involved in the issuance or delivery of shares of Common Stock in a name other than that of the holder of the 7% Preferred Stock so converted, and no such issuance or delivery shall be made unless and until the Person requesting such issuance or delivery has paid to the Corporation the amount of any such tax or has established to the Corporation's satisfaction that such tax has been paid.

(ii)    In connection with the conversion of shares of 7% Preferred Stock, no fractional shares of Common Stock shall be issued. In lieu thereof the Corporation shall, at its option, either round up the number of shares to be issued to the nearest whole number or pay a cash adjustment in respect of such fractional interest in an amount equal to such fractional interest *multiplied by* the Closing Sale Price of the Common Stock on the day on which such shares of 7% Preferred Stock are deemed to have been converted. If more than one share of 7% Preferred Stock shall be surrendered for conversion by the same holder at the same time, the number of full shares of Common Stock issuable on conversion of those shares shall be computed on the basis of the total number of shares of 7% Preferred Stock so surrendered.

(iii)    As of the effective time of the conversion, the shares of 7% Preferred Stock that are converted shall be cancelled and no longer be outstanding and restored to the status of authorized but unissued preferred stock and not designated as part of the 7% Preferred Stock, and all rights of a holder of such shares shall terminate, except for the right of the holder to receive the Common Stock and any declared and unpaid dividends payable pursuant to Section 4 hereof on such shares with a record date on or prior to the effective time of the conversion.

(iv)    If fewer than all shares of 7% Preferred Stock represented by any share certificate shall be converted, the Corporation shall issue a new certificate representing the

unconverted shares of 7% Preferred Stock to the holder thereof, without cost to any such holder.

    (v)    The Corporation shall:

    (A)    at all times reserve and keep available, free from preemptive rights, for issuance upon the conversion of shares of 7% Preferred Stock such number of its authorized but unissued shares of Common Stock as shall from time to time be sufficient to permit the conversion of all outstanding shares of 7% Preferred Stock;

    (B)    prior to the delivery of any shares of Common Stock upon conversion of 7% Preferred Stock, comply with all applicable laws and requirements of any securities exchange on which the shares of Common Stock are listed that require action to be taken by the Corporation; and

    (C)    ensure that all shares of Common Stock delivered upon conversion of 7% Preferred Stock will, upon delivery, (x) be duly and validly issued and fully paid and non-assessable, free of all liens and other claims and not subject to any preemptive rights and (y) if the Common Stock is listed on any securities exchange, be listed on such securities exchange.

    **7.**    **Anti-Dilution Adjustments**.  The Conversion Price shall be subject to the adjustments set forth in this Section 7.

    (a)    _Stock Dividends_. If the Corporation shall declare and pay a dividend or other distribution on the Common Stock payable in shares of Common Stock, then the Conversion Price in effect immediately prior to the close of business on the record date for such dividend or distribution shall be adjusted by dividing such Conversion Price by the following fraction:

$$\frac{OS_1}{OS_0}$$

where,

$OS_1$ = the sum of the number of shares of Common Stock outstanding immediately prior to the close of business on the record date for such dividend or distribution plus the total number of shares of Common Stock issued pursuant to such dividend or distribution

$OS_0$ = the number of shares of Common Stock outstanding immediately prior to the close of business on the record date for such dividend or distribution

 (b) *Subdivisions and Combinations of the Common Stock*. If the Corporation shall subdivide or split the outstanding shares of Common Stock into a greater number of shares or combine or reclassify the outstanding shares of Common Stock into a smaller number of shares, then the Conversion Price in effect immediately prior to the open of business on the effective date of such subdivision, split, combination or reclassification shall be adjusted by dividing such Conversion Price by the following fraction:



$$\frac{OS_1}{OS_0}$$

where,

$OS_1$ = the number of shares of Common Stock outstanding immediately after such subdivision, split, combination or reclassification

$OS_0$ = the number of shares of Common Stock outstanding immediately prior to such subdivision, split, combination or reclassification

 (c) *Issuer Tender, Exchange Offers*. If the Corporation or any of its subsidiaries successfully completes a tender or exchange offer for the Common Stock where the cash and fair value of any other consideration included in the payment per share of the Common Stock

10

exceeds the Closing Sale Price of the Common Stock on the Trading Day immediately following the expiration date of the tender or exchange offer, then the Conversion Price in effect at the close of business on the expiration date of the tender or exchange offer shall be adjusted by dividing such Conversion Price by the following fraction:

$$\frac{AC + (SP_1 \times OS_1)}{SP_1 \times OS_0}$$

where,

AC = the aggregate cash and fair value of any other consideration payable for shares purchased in the tender or exchange offer

$SP_1$ = the Closing Sale Price of Common Stock on the Trading Day immediately following the expiration date of the tender or exchange offer

$OS_1$ = the number of shares of Common Stock outstanding immediately after the expiration of the tender or exchange offer (after giving effect to the purchase or exchange of all shares purchased or exchanged in the tender or exchange offer)

$OS_0$ = the number of shares of Common Stock outstanding immediately prior to the expiration of the tender or exchange offer (prior to giving effect to the purchase or exchange of all shares purchased or exchanged in the tender or exchange offer)

In the event that the Corporation, or one of its subsidiaries, is obligated to purchase shares of Common Stock pursuant to any such tender offer or exchange offer, but the Corporation, or such subsidiary, is permanently prevented by applicable law from effecting any such purchases, or all such purchases are rescinded, then the Conversion Price shall be readjusted to be such Conversion Price that would then be in effect if such tender offer or exchange offer had not been made.

Except as set forth in the preceding sentence, if the application of this Section 7(c) to any tender offer or exchange offer would result in an increase in the Conversion Price, no adjustment shall be made for such tender offer or exchange offer under this Section 7(c). If an adjustment to the Conversion Price

11

is required under this Section 7(c), delivery of any additional shares of Common Stock that may be deliverable upon conversion as a result of an adjustment required under this Section 7(c) shall be delayed to the extent necessary in order to complete the calculations provided for in this Section 7(c).

(d)    *Rights Plans*. To the extent that the Corporation has a rights plan in effect with respect to the Common Stock, upon conversion of any shares of the 7% Preferred Stock, holders will receive, in addition to the shares of Common Stock, the rights under the rights plan, unless, prior to the time of conversion, the rights have separated from the shares of Common Stock, in which case the Conversion Price in effect at the time of separation shall be adjusted as if the Corporation had made a distribution to all holders of Common Stock by dividing such Conversion Price by the following fraction, subject to readjustment in the event of the expiration, termination, or redemption of such rights:

$$\frac{SP_0}{SP_0 - FMV}$$

where,

$SP_0$ = the Current Market Price per share of Common Stock on the Trading Day immediately preceding the ex-date

FMV = the fair value of the portion of the distribution applicable to one share of Common Stock on the Trading Day immediately preceding the ex-date

(e)    *Reorganization Events*.  In the event of:

(i)    any merger or consolidation involving the Corporation;

(ii)    any sale, lease or other transfer of all or substantially all of the Corporation's property and assets to a third party;

(iii)    any recapitalization, reclassification or other change of the Common Stock (other than changes resulting from a subdivision or combination);

12

(iv)    any statutory share exchange;

in each case in which the Common Stock will be converted into or exchanged for securities, cash or other property, then at the effective time of such event, each share of 7% Preferred Stock outstanding immediately prior to such event will become convertible into the kind and amount of securities, cash and other property that a holder of such share of 7% Preferred Stock would have been entitled to receive if such holder had converted its 7% Preferred Stock into Common Stock immediately prior to such event.  For purposes of this Section 7(e), the kind and amount of securities, cash or other property that a holder of Common Stock would have been entitled to receive upon such event if there is the right to elect the type of consideration receivable shall be deemed to be (x) the weighted average of the kind and amount of securities, cash or other property received by the holders of Common Stock that affirmatively make such an election or (y) if no holders of Common Stock affirmatively make such an election, the weighted average of the kind and amount of securities, cash or other property actually received by such holders.

The Corporation (or any successor) shall, within five days of the occurrence of any such event, provide written notice to the holders of the 7% Preferred Stock of the occurrence of such event and the kind and amount of securities, cash or other property into which the 7% Preferred Stock is convertible. Failure to deliver such notice, or any defect therein, shall not affect the operation of this Section 7(e).

(f)    *Certain Issuance or Sale of Common Stock or Derivatives*. If the Corporation shall issue or sell shares of Common Stock (or any securities, options, warrants or other rights convertible, exchangeable or exercisable to acquire such stock) without consideration or at a consideration per share of Common Stock (calculated based on the aggregate proceeds to the Corporation upon issuance and any additional consideration payable to the Corporation upon any such conversion, exchange or exercise), that is less than the Conversion Price in effect at the close of business on the day immediately preceding such issuance, then such Conversion Price shall be adjusted by multiplying such Conversion Price by the following fraction:



$$\frac{(AC/CP) + OS_0}{OS_1}$$

13

where,

AC = the aggregate proceeds to the Corporation upon issuance and any additional consideration payable to the Corporation upon any conversion, exchange or exercise based on the maximum number of shares of Common Stock issuable by the Corporation in connection therewith

CP = the Conversion Price in effect at the close of business on the day immediately preceding such issuance

$OS_0$ = the number of shares of Common Stock outstanding immediately prior to such issuance

$OS_1$ = the sum of the number of shares of Common Stock outstanding immediately prior to such issuance and the total number of shares of Common Stock issued or subject to issuance upon conversion, exchange or exercise of all securities, options, warrants or rights issued

In the event that any portion of the aggregate consideration received by the Corporation in connection with the issuance or sale is not received in cash but in securities or other property, the above adjustment shall be made considering the fair value of such security or other property.

The adjustment of the Conversion Price pursuant to this Section 7(f) shall not apply to any issuance of shares of Common Stock (or any securities, options, warrants or other rights convertible, exchangeable or exercisable to acquire such stock):

      (i)     to all holders of Common Stock;

      (ii)     in connection with (A) any stock dividends for which an adjustment to the Conversion Price is made pursuant to Section 7(a) hereof, (B) stock subdivisions, splits, combinations or reclassifications for which an adjustment to the Conversion Price is made pursuant to Section 7(b) hereof, or (C) mergers or consolidations for which an adjustment to the Conversion Price is made pursuant to Section 7(e) hereof;

      (iii)     in connection with any employment contract or benefit plan or arrangement with or for the benefit of employees,

officers or directors of the Corporation or any of its subsidiaries approved by the Board of Directors;

(iv)    upon conversion of any shares of 7% Preferred Stock or exercise of any of the warrants issued by the Corporation at the Effective Time representing the right to purchase an aggregate of 2,419,753 shares of Common Stock (subject to adjustments pursuant to the terms of the warrants) at an initial exercise price of $27.33 per share (subject to adjustments pursuant to the terms of the warrants); and

(v)    in connection with the issuance of rights to purchase an aggregate of less than 1% of the outstanding Common Stock (calculated on a fully diluted basis) as compensation to third party lenders or purchases of bonds in connection with bona fide arms' length debt financing by the Corporation with the approval of the Board of Directors.

(g)    *Decreases in Conversion Price*.  The Corporation may make such decreases in the Conversion Price, in addition to any other decreases required by this Section 7, if the Corporation deems it advisable in order to avoid or diminish any income tax to holders of the Common Stock resulting from any dividend or distribution of shares of Common Stock (or issuance of rights or warrants to acquire shares of Common Stock) or from any event treated as such for income tax purposes.

The Corporation may, from time to time, decrease the Conversion Price by any amount for a period of at least 20 business days if the Board of Directors shall have determined that such decrease would be in the interests of the Corporation.

Whenever the Conversion Price is decreased pursuant to this Section 7(g), the Corporation shall mail to holders of record of the 7% Preferred Stock a notice of the decrease at least 10 days prior to the date the decrease takes effect, and such notice shall state the decreased Conversion Price and the period during which it will be in effect.

(h)    *Certain Determinations*.  For purposes of the computation of any adjustments required under this Section 7, the following shall apply:

(i)    Adjustments shall be made successively whenever any event giving rise to such an adjustment shall occur.

(ii)     Fair value shall be determined by the Board of Directors in good faith; *provided* that if the holders of 25% or more of the outstanding shares of 7% Preferred Stock shall object to any such determination, such fair value shall be determined by an independent appraiser selected by such holders and reasonably satisfactory to the Corporation. The fees and expenses of such independent appraiser shall be paid by the Corporation. The holders of 7% Preferred Stock shall be notified promptly of any consideration other than cash to be received or paid by the Corporation and furnished with a description of the consideration and the fair value thereof, as determined in accordance with the foregoing provisions.

(iii)    All adjustments to the Conversion Price shall be calculated to the nearest cent.

(iv)     No adjustment in the Conversion Price will be made unless such adjustment would require an increase or decrease of at least one percent therein; *provided,* that any adjustments which by reason of this clause are not required to be made shall be carried forward and taken into account in any subsequent adjustment; *provided further* that at any time a conversion at the Corporation's option becomes effective, adjustments to the Conversion Price will be made with respect to any such adjustment carried forward and which has not been taken into account before such date.

(i)     *Certificates as to Adjustment.* Upon the occurrence of each adjustment to the Conversion Price, the Corporation shall promptly compute the Conversion Price in accordance with this Section 7 and furnish to each holder of 7% Preferred Stock an officer's certificate setting forth the Conversion Price and setting forth in reasonable detail the facts upon which such adjustment is based. In the case of any action or event that causes an adjustment of the Conversion Price pursuant to this Section 7 and requires the fixing of a record date, the Corporation shall, at least five days prior to such record date, give notice to each holder of 7% Preferred Stock specifying the record date. Failure to deliver such notice, or any defect therein, shall not affect the legality or validity of any such action or event.

(j)     *Other Adjustments.* If, at any time as a result of the provisions of this Section 7, holders of 7% Preferred Stock shall become entitled to receive upon conversion any shares of capital stock other than

16

Common Stock, the number of such other shares so receivable upon conversion of this 7% Preferred Stock shall thereafter be subject to adjustment from time to time in a manner and on terms as nearly equivalent as practicable to the provisions contained herein.

8.   **Conversion at the Option of the Corporation**.  The Corporation may, at its option, cause the conversion of the shares of 7% Preferred Stock in accordance with this Section 8.

(a)   *Conversion in connection with IPO*.  The Corporation may cause the conversion of all of the shares of 7% Preferred Stock into shares of Common Stock as provided in Section 6 hereof immediately prior to the consummation of an initial underwritten public offering of shares of Common Stock by the Corporation pursuant to a registration statement under the Securities Act; *provided* that the Corporation's right to cause such conversion shall be subject to the condition that the Corporation has obtained the affirmative vote of the holders of two-thirds of the outstanding shares of 7% Preferred Stock (whether by written consent or at a meeting of the holders of 7% Preferred Stock duly called for such purpose) approving such conversion and the condition set forth in Section 8(b)(ii).

(b)   *Conversion Right After the Third Anniversary*.  Except as otherwise provided in Section 8(a) hereof, the Corporation may not exercise its right to cause the conversion of any shares of 7% Preferred Stock pursuant to this Section 8 prior to the third anniversary of the Effective Date.  From and after the third anniversary of the Effective Date, the Corporation may cause the conversion of some or all of the shares of 7% Preferred Stock into shares of Common Stock as provided in Section 6 hereof; *provided* that (i) the Closing Sale Price of the Common Stock for each of 30 consecutive Trading Days within 45 days prior to the date the Corporation gives notice to the holders of 7% Preferred Stock that it exercises its conversion right exceeded 155% of the applicable Conversion Price, (ii) the shares of Common Stock have been listed on the New York Stock Exchange, the NASDAQ Global Select Market or the NASDAQ Global Market and registered pursuant to Section 12 of the Exchange Act and (iii) the condition in Section 9(b)(ii) has been satisfied.

(c)   *Notices by the Corporation; Conversion Procedures*.

(i)   In order to exercise its conversion rights pursuant to Section 8(a) or 8(b) hereof, the Corporation shall provide notice of

conversion by first class mail to each holder of record of the shares of 7% Preferred Stock to be converted or issue a press release for publication and make this information available on its website. This notice must be mailed, or the Corporation must issue the press release, not more than 90 days or less than 20 days prior to the date the conversion shall become effective. In addition to any information required by applicable law or regulation, this notice or press release shall state, as appropriate, (A) the date on which the conversion shall become effective as determined by the Board of Directors, (B) the aggregate number of shares of 7% Preferred Stock to be converted and, if less than all of the shares of 7% Preferred Stock are to be converted, the percentage of shares of 7% Preferred Stock to be converted and (C) the Conversion Price and the number of shares of Common Stock to be issued upon conversion of each share of 7% Preferred Stock.

(ii)    If the Corporation elects to cause the conversion of less than all of the 7% Preferred Stock, the Conversion Agent will select the 7% Preferred Stock to be converted by lot, on a *pro rata* basis or by another method the Conversion Agent considers fair and appropriate, including any method required by the applicable depositary (so long as such method is not prohibited by the rules of any securities exchange or quotation association on which the shares of 7% Preferred Stock are then traded or quoted).

(iii)    On the date the conversion shall become effective as specified in the Corporation's conversion notice, certificates representing shares of Common Stock shall be issued and delivered to the holders of 7% Preferred Stock or their designee upon presentation and surrender of the share certificate evidencing the 7% Preferred Stock to the Conversion Agent, and, if required, upon furnishing of appropriate endorsements and transfer documents. If a holder's interest is a beneficial interest in a global share certificate representing 7% Preferred Stock, a book-entry transfer shall be made by the Conversion Agent upon compliance with the relevant procedures for converting a beneficial interest in a global security.

(iv)    The general conversion provisions set forth in Section 6(c) hereof shall apply to a conversion pursuant to this Section 8.

9.    **Redemption of 7% Preferred Stock.**

(a)    *Holder's Right on a Change of Control*.  At any time on or within 30 days after receipt of a notice from the Corporation that a Change of Control or a Cash Transaction has occurred, each holder of 7% Preferred Stock may require the Corporation to redeem, in cash from legally available funds, all or a portion of such holder's shares of 7% Preferred Stock at a cash price per share equal to the greater of (i) the sum of the Stated Value and all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) to the redemption date and (ii) the Conversion Value as of the 2nd Trading Day prior to the redemption date; *provided* that, in case of a Cash Transaction prior to the fifth anniversary of the Effective Date, each holder of shares of 7% Preferred Stock exercising its rights pursuant to this Section 9(a) shall receive, instead of the cash price per share specified above, a cash price per share equal to the applicable amounts specified in Section 10 hereof.

(b)    *Redemption at the Corporation's Option*.

(i)    Except as otherwise provided in Section 9(c) hereof, the 7% Preferred Stock shall not be redeemable at the Corporation's option prior to the sixth anniversary of the Effective Date.  From and after the sixth anniversary of the Effective Date, the Corporation may, at its option, redeem shares of 7% Preferred Stock, at any time in whole or from time to time in part, at a cash price per share, payable out of funds legally available for such payment, equal to the greater of (1) the sum of the Stated Value and all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) to the date of redemption, which sum will, in the case of a redemption prior to the seventh anniversary of the Effective Date, be multiplied by 1.125, and (2) 75% of the Conversion Value as of the 2nd Trading Day prior to the redemption date; *provided* that if the amount in clause (2) is greater than the amount in clause (1), the Corporation shall have the right, at its option, to redeem such shares by paying an amount in cash equal to the amount in clause (1) and issuing such number of shares of Common Stock valued at the Closing Sale Price of the Common Stock on the 2nd Trading Day prior to the redemption date equal to the excess of the amount in clause (2) over the amount in clause (1).  No fractional shares of Common Stock shall be issued and, in lieu thereof, the Corporation may, at its option, either round up the number of shares of Common Stock to be issued to the nearest whole share or pay a cash

19

adjustment in respect of such fractional interest in an amount equal to such fractional interest multiplied by the Closing Sale Price of the Common Stock on the 2nd Trading Day prior to the redemption date. If more than one share of 7% Preferred Stock shall be redeemed from the same holder at the same time, the number of full shares of Common Stock issuable pursuant to the foregoing proviso shall be computed on the basis of the total number of shares of 7% Preferred Stock so redeemed.

(ii)     The Corporation's right to redeem shares of 7% Preferred Stock pursuant to this Section 9(b) shall be subject to the condition that a resale registration statement covering the shares of Common Stock issuable upon conversion of the 7% Preferred Stock has been filed by the Corporation and declared effective by the Commission prior to the time the Corporation provides a redemption notice pursuant to Section 9(d)(ii) hereof and such resale registration statement will continue to be effective and available for resales for at least 60 days after the relevant redemption date; *provided* that such resale registration statement shall not be required if (A) each holder of 7% Preferred Stock is not an affiliate of the Corporation, (B) the shares of Common Stock deliverable upon conversion will not be subject to any transfer or resale restrictions under applicable United States securities laws, (C) the Corporation has agreed to deliver upon conversion shares of Common Stock without any legend through the facilities of The Depositary Trust Company, New York, or any successor depositary and (D) upon conversion, the holders of 7% Preferred Stock would be permitted to freely resell their shares of Common Stock in the relevant market.

(iii)     The Corporation may not redeem any shares of 7% Preferred Stock pursuant to this Section 9(b) and may not set aside any cash amount for such redemption, unless full cumulative preferred dividends payable pursuant to Section 3 hereof and full participating dividends payable pursuant to Section 4 hereof have been paid on all outstanding shares of 7% Preferred Stock for all past Dividend Periods.

(c)     *Redemption of Additional Shares*.  In connection with the payment of a cash dividend on Junior Securities, the Corporation shall offer to redeem from each holder of shares of 7% Preferred Stock a number of shares equal to the product of such holder's percentage of the outstanding shares of 7% Preferred Stock and the excess, if any, of the

aggregate number of Additional Shares issued pursuant to Section 3(b) hereof less the aggregate number of shares of 7% Preferred Stock previously offered to be redeemed pursuant to this Section 9(c) (whether such offer was accepted or not, as long as the Corporation redeems all shares of 7% Preferred Stock that have been tendered in the offer), at a cash price per share, payable out of funds legally available for such payment, equal to the sum of the Stated Value and all accrued and unpaid dividends payable on such shares pursuant to Section 3 hereof (whether or not earned or declared) to the redemption date. In connection with any such offer, each holder of shares of 7% Preferred Stock shall have the right but not the obligation to accept such offer, in whole or in part, at any time prior to the applicable redemption date by providing the Corporation with an acceptance notice and written instructions for the payment by wire transfer of the amount specified in this Section 9(c).

      (d)    *Redemption Notices; Redemption Procedures.*

        (i)    In order to exercise the redemption right pursuant to Section 9(a) hereof, the holder of the shares of 7% Preferred Stock shall deliver to the Corporation a written notice stating the holder's intention to exercise its redemption right, the number of such holder's shares of 7% Preferred Stock to be redeemed and written instructions for the payment by wire transfer of the amount specified in Section 9(a) hereof. The redemption date shall be the date 15 days after the receipt of such notice by the Corporation; *provided* that if such redemption date is not a business day, the redemption date shall be the next succeeding business day.

        (ii)    In order to exercise the redemption right pursuant to Section 9(b) hereof or make the redemption offer pursuant to Section 9(c) hereof, the Corporation shall give notice of any such redemption to the holders of shares of 7% Preferred Stock as they appear on the Corporation's stock register at the close of business two days before the redemption notice is being mailed by the Corporation by first class mail, postage prepaid, not less than 30 days nor more than 60 days before the applicable redemption date; *provided* that neither the failure to give such notice nor any defect therein shall affect the validity of the notice of redemption except as to the holder to whom the Corporation has failed to give said notice or whose notice was defective. Such redemption notice shall state (A) the redemption date, (B) the number of shares of 7% Preferred Stock to be redeemed or offered to be redeemed and, if fewer than all

the shares of 7% Preferred Stock are to be redeemed, the number of shares to be redeemed or offered to be redeemed from such holder, (C) the redemption price, (D) the place or places where certificates for such shares are to be surrendered for payment of the redemption price and (E) that dividends on the shares of 7% Preferred Stock to be redeemed will cease to accrue on the date of redemption. In case of a redemption pursuant to Section 9(b) hereof, no later than five days prior to the redemption date specified in the Corporation's redemption notice, each holder of 7% Preferred Stock shall provide the Corporation with written instructions for the payment by wire transfer of the amounts specified in Section 9(b)(i) hereof, as applicable. If fewer than all outstanding shares of 7% Preferred Stock are to be redeemed pursuant to Section 9(b) hereof, the total number of shares of 7% Preferred Stock to be redeemed shall be determined by the Board of Directors and such total number of shares shall be redeemed *pro rata* among the holders in proportion to the respective number of shares held by each holder.

(iii)    Upon surrender of the certificates for any shares of 7% Preferred Stock to be redeemed pursuant to this Section 9 to the Conversion Agent, such shares of 7% Preferred Stock shall be redeemed by the Corporation on the redemption date as specified in Sections 9(d)(i) and (ii) hereof, at the applicable redemption price. If fewer than all shares of 7% Preferred Stock represented by any such certificate are redeemed, the Corporation shall issue a new certificate representing the unredeemed shares of 7% Preferred Stock to the holder thereof, without cost to any such holder. If a holder's interest is a beneficial interest in a global share certificate representing 7% Preferred Stock, a book-entry transfer shall be made by the Conversion Agent upon compliance with the relevant procedures for redeeming a beneficial interest in a global security.

(e)    *Effect of Redemption*. Shares of 7% Preferred Stock that have been redeemed, purchased or (re)acquired by the Corporation in any manner shall (upon compliance with any applicable provisions of the laws of the State of Delaware and the provisions hereof) be cancelled, cease to be outstanding and be restored to the status of authorized but unissued preferred stock and not designated as part of the 7% Preferred Stock, and all rights of a holder with respect to shares of 7% Preferred Stock so redeemed, purchased or otherwise acquired shall immediately terminate and dividends on the shares of 7% Preferred Stock shall cease to accrue at the redemption date, except for the right of the holder to receive the relevant redemption price and any declared and unpaid

dividends payable pursuant to Section 4 on such shares with a record date on or prior to the redemption date, unless the Corporation defaults in providing money for the payment of the redemption price of the shares of 7% Preferred Stock to be redeemed.

10. **Corporation's Right in a Cash Transaction.** In the event of a Cash Transaction, the Corporation may, at its option, cause all of the shares of 7% Preferred Stock to be converted in the Cash Transaction into a cash amount equal to the greater of (x) the product of the Multiplier and the sum of the Stated Value and all accrued and unpaid dividends payable pursuant to Section 3 hereof (whether or not earned or declared) to the date of the consummation of the Cash Transaction and (y) the Conversion Value as of such date. "**Multiplier**" means 1.175 if the Cash Transaction occurs prior to the first anniversary of the Effective Date, 1.125 if the Cash Transaction occurs on or after the first anniversary and prior to the fifth anniversary of the Effective Date and 1.0 thereafter.

Within five days after the occurrence of a Change of Control or a Cash Transaction or the execution of a definitive agreement relating to such a transaction, the Corporation shall provide to the holders of 7% Preferred Stock written notice of such event.

11. **Voting Rights.**

(a) _General_. Holders of shares of 7% Preferred Stock are not entitled to any voting rights except as provided in this Section 11 or as otherwise provided by law.

(b) _Common Stock Voting Rights_. Except as otherwise provided by law, the holders of shares of 7% Preferred Stock will be entitled to vote, together with the holders of shares of Common Stock and not separately as a class, on all matters upon which holders of shares of Common Stock have the right to vote. The holders of shares of 7% Preferred Stock will be entitled to one vote for each share of Common Stock issuable upon conversion of a share of 7% Preferred Stock on the record date for the determination of the stockholders entitled to vote. Fractional votes by the holders of shares of 7% Preferred Stock will not be permitted, and the number of votes that each holder is entitled to vote will be determined based on the total number of shares of 7% Preferred Stock held by such holder on the applicable record date.

(c) _Class Voting Rights_. So long as any shares of 7% Preferred Stock are outstanding, the Corporation shall not, without the affirmative

23

vote of the holders of two-thirds of the outstanding shares of 7% Preferred Stock (whether by written consent or at a meeting of the holders of 7% Preferred Stock duly called for such purpose):

(i)    amend, alter or repeal (by merger, consolidation, reclassification or otherwise) any provision of its Certificate of Incorporation (including this Certificate) so as to adversely affect the preferences, rights or powers of the 7% Preferred Stock;

(ii)    change the 7% Preferred Stock (whether by merger, consolidation, reclassification or otherwise) into cash, securities or other property except in accordance with the terms hereof or, in the case of a merger or consolidation of the Corporation in which it is not the surviving or resulting entity, the 7% Preferred Stock may be exchanged for an equivalent number of shares of preferred stock of the surviving or resulting entity with terms substantially the same as the 7% Preferred Stock;

(iii)    issue any shares of 7% Preferred Stock other than shares to be issued to the Backstop Purchasers and management at the Effective Date as provided in the Equity Commitment Agreement dated as of March 18, 2010 and any Additional Shares in payment of dividends in kind; *provided* however that any such issuance of additional shares shall require the affirmative vote of each holder of 7% Preferred Stock, unless such additional shares are offered to the holders of 7% Preferred Stock on the same terms on a *pro rata* basis; or

(iv)    create, authorize or issue any other security the terms of which provide that it ranks on a parity or senior to the 7% Preferred Stock with respect to dividend rights, rights of redemption or rights upon liquidation, dissolution or winding-up of the Corporation, or increase the authorized amount of any such other class or series.

In connection with any solicitation or consent of votes of any holder of shares of 7% Preferred Stock pursuant to this Section 11(c) or Section 8(a) hereof, the solicitation or consent shall be made to all holders in the same manner and on the same terms and conditions (including substantially the same opportunity to invest in any securities issued as a result of any such approval pursuant to Section 11(c) hereof). In exercising the voting rights

set forth in this Section 11(c) or Section 8(a) hereof, each share of 7% Preferred Stock shall have one vote per share.

12.    **Reports.** (a) So long as any shares of 7% Preferred Stock are outstanding, if the Corporation is not subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, the Corporation must provide the holders of 7% Preferred Stock within the time periods specified in the Commission's rules and regulations applicable to non-accelerated filers (as in effect on the Effective Date) with:

(i)    all quarterly and annual financial information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K if the Corporation were required to file such forms, including a "Management's Discussion and Analysis of Financial Condition and Results of Operations" and, with respect to annual information only, a report thereon by the Corporation's certified independent accountants, and

(ii)    all current reports that would be required to be filed with the Commission on Form 8-K if the Corporation were required to file such reports.

In addition, whether or not required by the Commission, the Corporation will, if the Commission will accept the filing, file a copy of all of the information and reports referred to in clauses (i) and (ii) above with the Commission for public availability within the time periods specified in the Commission's rules and regulations. In addition, the Corporation will make the information and reports available to securities analysts and prospective investors upon request. The Corporation will be deemed to have furnished the holders of 7% Preferred Stock the reports referred to in clauses (i) and (ii) above if the Corporation has either filed such reports with the Commission (and such reports are publicly available) or posted such reports on the Corporation' website and issued a press release in respect thereof.

(b)    For so long as any of the shares of the 7% Preferred Stock constitute "restricted securities" under Rule 144, the Corporation will furnish to the holders and prospective investors, upon their request, and make available the information reasonably necessary to comply with Rule 144 and Rule 144A with respect to re-sales of the shares under the Securities Act, all to the extent required from time to time to enable the shares to be sold without registration under the Securities Act within the limitation of the exemptions provided by Rule 144 and Rule 144A.

13.  **Transferability**. The shares of 7% Preferred Stock shall be freely transferable, subject to transfer restrictions under applicable securities laws.

14.  **Remedies**. Nothing herein shall limit the right of a holder of 7% Preferred Stock to pursue actual damages for any failure by the Corporation to comply with the terms of this Certificate and a holder shall have the right to pursue all remedies available to it at law or in equity including, without limitation, a decree of specific performance and/or injunctive relief.

15.  **Certain Definitions**.

(a)  As used in this Certificate, the following terms shall have the meanings defined in this Section 15.

"**By-laws**" means the by-laws of the Corporation, as they may be amended from time to time.

"**Certificate**" means this Certificate of Designations.

"**Cash Transaction**" means a merger, consolidation, share exchange or other similar transaction or a sale, lease or other transfer in one transaction or a series of related transactions of all or substantially all of the consolidated assets of the Corporation and its subsidiaries in which all of the Common Stock is converted into the right to receive cash.

"**Change of Control**" shall be deemed to have occurred if any of the following events shall have occurred after the original issuance of the 7% Preferred Stock:

(i)  any "person" or "group" (as such terms are used in Sections 13(d) and 14(d) of the Exchange Act) (other than Barclays Bank PLC, Silver Point Capital LP, Oak Hill Advisors, L.P., Capital Research and Management Company and each of their respective affiliates) acquires the beneficial ownership (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, of more than 50% of the total voting power of the Corporation's outstanding voting stock; or

(ii)  the consummation of (x) any merger, consolidation, share exchange or other similar transaction involving the Corporation or any of its subsidiaries, (y) any sale, lease or other transfer in one transaction or a series of related transactions of all or

26

substantially all of the consolidated assets of the Corporation and its subsidiaries, taken as a whole, to any Person other than one of the Corporation's subsidiaries or, (z) any recapitalization, reclassification or change of the Common Stock (other than changes resulting from a subdivision or combination), in each case, other than a transaction in which the persons that "beneficially owned," directly or indirectly, the voting stock of the Corporation immediately prior to such transaction beneficially own, directly or indirectly, shares of common stock representing a majority of the total voting power of all outstanding classes of common stock of the surviving or resulting entity, transferee or ultimate parent of such party; or

(iii)     the first day on which a majority of the members of the Board of Directors are not "**Continuing Directors**"; "**Continuing Director**" means, as of any date, any member of the Board of Directors who (x) was a member of the Board of Directors on the Effective Date or (y) was nominated for election, elected or appointed to the Board of Directors with the approval of a majority of the Continuing Directors who were members of the Board of Directors at the time of such nomination, election or appointment.

"**Closing Sale Price**" of the Common Stock on any day means

(i)     if the shares of Common Stock are listed on the New York Stock Exchange, the closing sale price per share of Common Stock (or if no closing sale price is reported, the last reported sale price) on such date on the New York Stock Exchange;

(ii)     if the shares of Common Stock are not listed on the New York Stock Exchange, the closing sale price per share of Common Stock (or if no closing sale price is reported, the last reported sale price) on such date in composite trading for the principal United States national or regional securities exchange on which the shares of Common Stock are then listed;

(iii)     if the shares of Common Stock are not listed on a United States national or regional securities exchange, the last quoted bid price per share of Common Stock in the over-the-counter market on the relevant date as reported by Pink OTC Markets Inc. or a similar organization; or

(iv)    if the shares of Common Stock are not quoted as described in clause (iii) above, the market price per share of Common Stock on the relevant date as determined in good faith by the Board of Directors, subject to Section 7(h)(ii) hereof.

"**Commission**" means the United States Securities and Exchange Commission.

"**Common Stock**" means the Corporation's common stock, par value $0.001 per share.

"**Conversion Agent**" shall mean [●] and its respective successors and assigns.

"**Conversion Value**" as of any date means an amount equal to the product of the number of shares of Common Stock issuable upon conversion of a share of 7% Preferred Stock pursuant to Section 6 hereof and the Closing Sale Price of the Common Stock on such date, or in the case of a Cash Transaction, the cash amount paid for each share of Common Stock in such transaction.

"**Current Market Price**" as of any determination date means the average daily Closing Sale Prices of the Common Stock for the 10 consecutive Trading Days ending on the earlier of such determination date and, if applicable, the day before the ex-date with respect to the issuance, distribution, subdivision or combination requiring such computation immediately prior to the date in question. "**ex-date**" (1) when used with respect to any issuance or distribution, means the first date on which the Common Stock trades, regular way, on the relevant exchange or in the relevant market from which the Closing Sale Price was obtained without the right to receive such issuance or distribution, and (2) when used with respect to any subdivision, split, combination or reclassification of shares of Common Stock, means the first date on which the Common Stock trades, regular way, on such exchange or in such market after the time at which such subdivision, split, combination or reclassification becomes effective. If another issuance, distribution, subdivision, split, combination or reclassification to which Section 7 applies occurs during the period applicable for calculating the "Current Market Price" pursuant to this definition, the "Current Market Price" shall be calculated for such period in a manner determined by the Board of Directors to reflect the impact of such issuance, distribution, subdivision or combination on the Closing Sale Price of the Common Stock during such period.

"**Effective Date**" means the effective date of the Chapter 11 plan of reorganization relating to the Corporation and its U.S. subsidiaries.

"**Exchange Act**" shall mean the United States Securities Exchange Act of 1934, as amended.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"**Securities Act**" means the United States Securities Act of 1933, as amended.

"**Trading Day**" is any day during which trading in securities generally occurs on the New York Stock Exchange or, if the Common Stock is not listed on the New York Stock Exchange, on the principal United States national or regional securities exchange on which the Common Stock is then listed or, if the Common Stock is not listed on a United States national or regional securities exchange, on the principal other market on which the Common Stock is then traded.

(b)    Each of the following terms is defined in the Section set forth opposite such term:

| Term | Section |
| --- | --- |
| 7% Preferred Stock | 1 |
| Additional Shares | 3(b) |
| Board of Directors | Preamble |
| Conversion Price | 6(a) |
| Corporation | Preamble |
| Dividend Payment Date | 3(a) |
| Dividend Period | 3(a) |
| Junior Securities | 2(a) |
| Multiplier | 10 |
| Parity Securities | 2(b) |
| Stated Value | 5 |

29

IN WITNESS WHEREOF, Cooper-Standard Holdings, Inc. has caused this Certificate of Designations to be signed and attested by the undersigned this [●] day of [●], 2010.

COOPER-STANDARD HOLDINGS, INC.

By: _____
    Name:
    Title:

ATTEST:

By: _____
    Name:
    Title:

Exhibit B

Term Sheet regarding Management Compensation

**Exhibit B**
In re Cooper Standard Holdings Inc., et al.
Term Sheet regarding Management Compensation[1]

| 1. Employment Agreements | • Existing employment agreements with ten executives will be assumed, with each executive executing the written agreement specified in Section 5(t) of the Commitment Agreement. |
|---|---|
| 2. Annual Bonus | • 2009 bonus paid in accordance with terms in the ordinary course.<br>• 2010 bonus to be paid in early 2011 in the ordinary course based on customary formula and business plan adopted by Board in December 2009. |
| 3. Modified Executive Incentive Plan (MEIP) – Emergence Component | • Emergence component of original MEIP proposal, as shown in column (a) to "Exhibit A - Hewitt Consulting Presentation" (attached as Appendix 1), to be paid upon emergence. Performance component of original MEIP proposal withdrawn and not payable. |
| 4. Long Term Incentive Plan (LTIP) | • Existing plan to be assumed.<br>• 2007-2009 LTIP awards to be paid in 2010 in accordance with terms in the ordinary course.<br>• 2008-2010, 2009-2011, 2010-2012 LTIP awards in accordance with terms to be administered in the ordinary course; 2010-2012 LTIP awards in accordance with cash targets established by Compensation Committee on March 3, 2010.<br>• Plan benefit in respect of cycles beginning on and after 2010 will be determined by the Compensation Committee consistent with historic plan practice. |
| 5. Health and Welfare Plans | • Existing plans to be assumed.<br>• Benefits remain at no less than existing levels of coverage. |
| 6. Pension Benefits | • Qualified investment savings plan (EISP) as amended 1/1/2010 to be assumed.<br>• Frozen Qualified Salaried Retirement Plan to be assumed.<br>• Nonqualified Supplementary Benefit Plan (SERP) to be assumed.<br>• Levels of benefits remain the same under the EISP and SERP. |
| 7. Deferred Compensation Plan | • Existing plans to be assumed. |
| 8. Perquisites | • Perquisites, including, for example, company-provided vehicle, company-paid personal travel, tax preparation and financial planning services, and |

---

[1] For those individuals without employment agreements, this term sheet is not intended to create any right to terminate with "good reason".

| | life insurance premiums as currently provided. |
|---|---|
| 9. Equity Compensation – Management Incentive Plan | <ul><li>At emergence, 7% of the Equity (i.e., New Common Stock, Convertible Preferred Stock and realized dilution on the Warrants[2]) to be distributed as stock options or restricted stock at emergence; *provided* that any executive who does not execute the written agreement specified in Section 5(t) of the Commitment Agreement will not receive such distribution.</li><li>The 7% distribution of Equity to the management team shall consist of:<ul><li>A grant of 4% of the Equity consisting of 4% of the New Common Stock (or approximately 757,896 shares of New Common Stock, plus, subject to realized dilution on the Warrants, approximately 104,075 shares of New Common Stock) as restricted stock and 4% of the Convertible Preferred Stock (convertible into approximately 178,783 shares of New Common Stock) as restricted preferred stock.</li><li>The issuance of 3% of the Equity (or approximately 702,509 shares of New Common Stock, plus, subject to realized dilution on the Warrants, approximately 78,057 shares of New Common Stock) as common equity options.</li></ul></li><li>Vesting (for common and preferred restricted stock and options) to occur ratably on each annual anniversary of grant over 3 years for CEO and 4 years for balance of team. In addition, 50% of the then unvested portion of the 7% of the Equity granted at emergence vests on a change of control and remaining 50% of such portion vests on termination without cause or quit for good reason within two years after a change of control, in each case, to the extent not previously vested. For the 3% of the Equity to be granted after emergence, any acceleration in connection with a change of control to be determined by the post-emergence board.</li><li>Exercise price of options equal to plan value.</li><li>Option exercise period in respect of Options granted hereunder:<ul><li>➢ 1 year in event of death, disability, retirement, or termination for good reason, without cause, or in connection with a change in control.[3]</li><li>➢ 90 days in event of termination for cause or without good reason.</li></ul></li></ul> |

---

2    Equity issued to management in respect of the Warrants will be issued at emergence, with restricted stock vesting and options becoming exercisable on the later of the date on which (i) the restricted stock or options issued at emergence not in respect of the Warrants vest or become exercisable in accordance with their terms or (ii) any or all of the Warrants are exercised, in each case in an amount determined based on the number of shares issued upon such exercise; *provided* that upon termination of employment prior to full exercise of the Warrants, such restricted stock will vest and such options will become exercisable to the extent that the corresponding restricted stock or options vested or became exercisable as of such date in accordance with their terms and in an amount determined based on the number of shares issuable assuming net exercise of the then remaining Warrants, based on the market value of such shares as of such date.

3    Definitions of "cause" and "good reason" will be as provided for in assumed employment agreement of eligible executive, or if none, as reasonably determined by the Compensation Committee of the Board of Directors consistent with the definitions used for similarly situated executives.

|  | • Incrementally, 3% of the Equity (or approximately 702,509 shares of New Common Stock, plus, subject to realized dilution on the Warrants, approximately 78,057 shares of New Common Stock) to be reserved for issuance to members of the management team. |
| --- | --- |

**Appendix 1**

## HEWITT CONSULTING PRESENTATION DATED NOVEMBER 30, 2009/ MODIFIED JANUARY 27, 2010 TO DEMONSTRATE 50% REDUCTION OF EMERGENCE COMPONENT POST-NEGOTIATION

| Executive | Position Title | (a) Emergence Component Award - Original MEIP Target (Superseded)* | (b) Emergence Component Award - Reduced 50% (Superseded)* | (c) Emergence Component Award - Further Reduced (Final)* |
|---|---|---|---|---|
| McElya | Chairman, CEO | $570,000 | $285,000 | $170,402 |
| Hasler | Vice Chairman, President NA | $412,500 | $206,250 | $123,317 |
| Campbell | VP, CFO | $242,000 | $121,000 | $72,346 |
| Stephenson | President, International | $211,750 | $105,875 | $63,303 |
| Hefferon | VP, General Counsel | $157,500 | $78,750 | $47,085 |
| Dickens | VP, Global Human Resources | $142,500 | $71,250 | $42,600 |
| Verwlist | VP, Merger/Acquisition | $192,500 | $96,250 | $57,548 |
| O'Loughlin | VP, Information Technology | $132,300 | $66,150 | $39,551 |
| Yantz | VP, Corporate Controller | $110,250 | $55,125 | $32,959 |
| Emmi | VP, Managing Director Asia Pacific | $134,663 | $67,332 | $40,258 |
| Johnson | VP, Tax | $61,250 | $30,625 | $18,311 |
| Dong | Treasurer | $61,250 | $30,625 | $18,311 |
| Otremba | Group VP Sales & Engineering | $58,488 | $29,244 | $17,485 |
| Total | | $2,486,951 | $1,243,476 | $743,476 |

* An emergence occurring on June 30, 2010 would result in emergence component incentive award payments equal to 100% of target opportunity.

Emergence incentive awards are subject to the following adjustment based on the date of emergence.
- Emergence is on or before March 31, 2010, emergence incentive awards are increased by 40%
- Emergence is on or after April 1, 2010 through May 31, 2010, emergence incentive awards are increased by 20%
- Emergence is on or after June 1, 2010 through August 2, 2010, no adjustment is made to emergence incentive awards
- Emergence is on or after August 3, 2010 through August 31, 2010, emergence incentive awards are reduced by 20%
- Emergence is on or after September 1, 2010 through September 30, 2010, emergence incentive awards are reduced by 40%
- Emergence is on or after October 1, 2010 through October 31, 2010, emergence incentive awards are reduced by 60%
- Emergence occurs after November 1, 2010, no emergence incentive awards are paid

Exhibit C

Warrant Term Sheet

**EXHIBIT C**

## COOPER-STANDARD HOLDINGS, INC.
## SENIOR SUBORDINATED NOTES CLAIMHOLDERS
## WARRANT TERM SHEET

| **Term** | **Description** |
| --- | --- |
| Warrants | Each Warrant will represent the right to purchase one share of New Common Stock of Cooper-Standard Holdings, Inc., subject to adjustment. |
| Amount | 2,419,753 shares of New Common Stock will be issuable upon exercise of the Warrants. |
| Exercise Price | Initially $27.33 per share, payable in cash or on a cashless basis. |
| Expiration Date | 7.5 years from the effective date of the plan of reorganization. |
| Exercisability | Beginning on the date of issuance (the effective date of the plan of reorganization) and ending on the Expiration Date. |

Anti-dilution

1. Stock dividends, stock splits or reverse splits, per the customary exercise price adjustment formula:

$$E = E_o \, x \, \frac{N_o}{N}$$

where—

$E$      is the adjusted exercise price of the Warrant;

$E_o$      is the exercise price of the Warrant in effect prior to adjustment;

$N$      is the number of shares of New Common Stock outstanding immediately following the transaction giving rise to the Warrant adjustment;

$N_o$      is the number of shares of New Common Stock outstanding immediately prior to the transaction giving rise to the Warrant adjustment,

with customary adjustment of the shares of New Common Stock issuable upon exercise of the Warrants, as indicated below.

2. With the exception of the currently contemplated rights offering, any issuance to all holders of New Common Stock of shares of New Common Stock (or options,

| **Term** | **Description** |
|---|---|

rights, warrants or other securities convertible into or exchangeable or exercisable for shares of New Common Stock) at an effective consideration per share that is below market, per the customary exercise price adjustment formula:

$$E = E_0 \ x \ \frac{N_0 + C/M}{N_0 + N_A}$$

where—

$N_0$      is the number of shares of New Common Stock outstanding immediately prior to the issuance,

$N_A$      is the number of shares of New Common Stock issued and, if applicable, issuable upon exercise, conversion or exchange of the below market rights, warrants or other securities;

$M$      is the Market Price[1] of a share of the New Common Stock preceding the issuance;

$C$      is the total consideration receivable by the Company on issuance and, if applicable, the exercise, conversion or exchange of the below market rights, warrants or other securities,

with customary adjustment of the shares of New Common Stock issuable upon exercise of the Warrants, as indicated below.

3.  With the exception of the currently contemplated rights offering, any issuance of shares of New Common Stock (or options, rights, warrants or other securities convertible into or exchangeable or exercisable for shares of New Common Stock) at an effective consideration per share of New Common Stock that is less than the current Exercise Price, per the customary exercise price adjustment formula:

$$E = E_0 \ x \ \frac{N_0 + C/E_0}{N_0 + N_A}$$

where—

$N_0$      is the number of shares of New Common Stock outstanding immediately prior to the issuance,

---

[1] "*Market Value*" will have the meaning assigned to "Closing Sale Price" in the Certificate of Designations.

| Term | Description |
|------|-------------|

$N_A$     is the number of shares of New Common Stock issued and, if applicable, issuable upon exercise, conversion or exchange of the rights, warrants or other securities;

C     is the total consideration receivable by the Company on issuance and, if applicable, the exercise of the rights,

with customary adjustment of the shares of New Common Stock issuable upon exercise of the Warrants, as indicated below.

4. Distribution to all holders of New Common Stock of evidences of indebtedness, shares of capital stock, securities, cash or property (excluding any dividend or distribution covered above), per the customary exercise price adjustment formula:

$$E = E_o \, x \, \frac{M-F}{M}$$

where—

M     is the Market Price of a share of the New Common Stock preceding such distribution;

F     is the fair market value of the assets distributed to stockholders, per share of New Common Stock,

with customary adjustment of the shares of New Common Stock issuable upon exercise of the Warrants, as indicated below.

5. Payments in respect of a tender offer or exchange offer by the Company for New Common Stock, where the cash and fair value of any other consideration included in the payment per share of the New Common Stock exceeds the Market Price of a share of the New Common Stock immediately following the expiration of the tender or exchange offer, per the customary exercise price adjustment formula:

$$E = E_o \, x \, \frac{N_o \, x \, P}{A + (P \, x \, N)}$$

where—

| **Term** | **Description** |
| --- | --- |

$N_0$      is the number of shares of New Common Stock outstanding immediately prior to the expiration of the tender or exchange offer (prior to giving effect to the purchase or exchange of shares),

$N$      is the number of shares of New Common Stock outstanding immediately after the expiration of the tender or exchange offer (after giving effect to the purchase or exchange of shares);

$A$      is the aggregate cash and fair value of any other consideration payable for shares of New Common Stock purchased in such tender offer or exchange offer;

$P$      is the Market Price of a share of the New Common Stock immediately following the expiration of the tender or exchange offer,

with customary adjustment of the shares of New Common Stock issuable upon exercise of the Warrants, as indicated below.

6. To the extent that the Corporation has a rights plan in effect with respect to the New Common Stock and the rights separate from the shares of New Common Stock, the exercise price at the time of separation shall be adjusted consistent with provision 4, above.

7. In each case where the exercise price of the Warrant is adjusted by the above formulas, the number of shares issuable upon exercise will be adjusted per the following customary formula:

$$S = S_0 \, x \, \frac{E_0}{E}$$

where, in addition to the terms defined above—

$S$      is the adjusted number of shares issuable upon exercise of the Warrants;

$S_0$      is the number of shares issuable upon exercise of the Warrants in effect prior to adjustment.

8. In the case of mergers, consolidations, etc., the Warrants will be exercisable following the transaction for the kind and amount of consideration that holders would have received had the Warrants been exercised immediately

4

| **Term** | **Description** |
|---|---|
| | prior to the transaction. |
| Securities Law Matters .............. | Issuance of the Warrants and the issuance of the New Common Stock upon exercise of the Warrants will be in transactions exempt from registration under the Securities Act as transactions by an issuer not involving any public offering. |
| Transferability........................... | The Warrants and the New Common Stock issued upon exercise of the Warrants will be freely transferable, subject to applicable law. |
| Documentation........................... | The Warrants will be governed by a Warrant agreement in customary form between the Company and a warrant agent, in form and substance reasonably satisfactory to the Backstop Purchasers and the Company. |
| | The Warrants will be issued in book-entry form, and physical certificates will not be issued (unless requested by a holder) for so long as the Warrants remain book-entry eligible. |
| Governing Law .......................... | New York |

Exhibit D

Form of Second Amended and Restated Certificate of Incorporation

## EXHIBIT D

## FORM OF SECOND AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION

## OF

## COOPER-STANDARD HOLDINGS INC.

Cooper-Standard Holdings Inc., a corporation organized and existing under the laws of the State of Delaware (the "*Corporation*"), DOES HEREBY CERTIFY AS FOLLOWS:

1.     The name of the Corporation is "Cooper-Standard Holdings Inc."   The Corporation was originally incorporated under the name "CSA Acquisition Corp.", and the original certificate of incorporation was filed with the Secretary of State of the State of Delaware on September 10, 2004.

2.     The Corporation filed an amended plan of reorganization under chapter 11 of title 11 of the United States Code on [_____] (the "*Plan*").

3.     This Second Amended and Restated Certificate of Incorporation ("*Certificate*") has been deemed approved without the need for Board of Directors ("*Board*") or stockholder approval pursuant to Section 303 of the General Corporation Law of the State of Delaware (the "*DGCL*") because it is adopted pursuant to the Plan, as confirmed on [_____], 2010 by the United States Bankruptcy Court for the District of Delaware.

4.     Pursuant to the provisions of Sections 242(a) and 303 of the DGCL, the undersigned Corporation does hereby certify that the text of the Certificate is hereby amended and restated to read as follows:

### ARTICLE I
### NAME

The name of the corporation is Cooper-Standard Holdings Inc. (the "*Corporation*").

### ARTICLE II
### PURPOSE

The purpose for which the Corporation is organized is to engage in, carry on and conduct any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "*DGCL*").

### ARTICLE III
### REGISTERED AGENT

The street address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware

19801, and the name of the Corporation's registered agent at such address is The Corporation Trust Company.

ARTICLE IV
CAPITALIZATION

Section 4.1    Authorized Capital Stock.

The total number of shares of all classes of capital stock that the Corporation is authorized to issue is 200,000,000 shares, consisting of 190,000,000 shares of common stock, par value $0.001 per share (the "*Common Stock*"), and 10,000,000 shares of preferred stock, par value $0.001 per share (the "*Preferred Stock*"). Notwithstanding any other provisions contained herein to the contrary, the Corporation shall not issue nonvoting equity securities. The prohibition on issuance of nonvoting equity securities is included in this Certificate in compliance with Section 1123(a)(6) of the Bankruptcy Code (11 U.S.C. §1123(a)(6)).

Section 4.2    Preferred Stock.

(a)    The Preferred Stock may be issued from time to time in one or more series. The Board of Directors (the "*Board*") is hereby expressly authorized to provide for the issuance of shares of Preferred Stock in one or more series and to establish from time to time the number of shares to be included in each such series and to fix the voting powers, if any, designations, powers, preferences and relative, participating, optional and other special rights, if any, of each such series and the qualifications, limitations and restrictions thereof, as shall be stated in the resolution(s) adopted by the Board providing for the issuance of such series and included in a certificate of designations (a "*Preferred Stock Designation*") filed pursuant to the DGCL.

(b)    The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding and such additional shares as are necessary to satisfy the payment of dividends in kind on any Preferred Stock) by the affirmative vote of the holders of a majority of the outstanding shares of Common Stock, without a vote of the holders of the Preferred Stock, or any series thereof, unless a vote of any such holders of Preferred Stock is required pursuant to another provision of this Second Amended and Restated Certificate of Incorporation (this "*Certificate*") (including any Preferred Stock Designation.)

Section 4.3    Common Stock.

(a)    The holders of shares of Common Stock shall be entitled to one vote for each such share on each matter properly submitted to the stockholders on which the holders of Common Stock are entitled to vote. Except as otherwise required by law or this Certificate (including any Preferred Stock Designation), at any annual or special meeting of the stockholders the Common Stock shall have the exclusive right to vote for the election of directors and on all other matters properly submitted to a vote of the stockholders. Notwithstanding the foregoing and subject to Section 4.2(b), except as otherwise required by law or this Certificate (including a Preferred Stock Designation), holders of Common Stock shall not be entitled to vote on any amendment to this

2

Certificate (including any amendment to any Preferred Stock Designation) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Certificate (including any Preferred Stock Designation.)

(b)    Subject to the rights of the holders of Preferred Stock, the holders of shares of Common Stock shall be entitled to receive such dividends and other distributions (payable in cash, property or capital stock of the Corporation) when, as and if declared thereon by the Board from time to time out of any assets or funds of the Corporation legally available therefor and shall share equally on a per share basis in such dividends and distributions.

(c)    In the event of any voluntary or involuntary liquidation, dissolution or winding-up of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation, and subject to the rights of the holders of Preferred Stock in respect thereof, the holders of shares of Common Stock shall be entitled to receive all the remaining assets of the Corporation available for distribution to its stockholders, ratably in proportion to the number of shares of Common Stock held by them.

## ARTICLE V
## BOARD OF DIRECTORS

Section 5.1    Board Powers.

The business and affairs of the Corporation shall be managed by, or under the direction of, the Board.  In addition to the powers and authority expressly conferred upon the Board by statute, this Certificate or the By-Laws of the Corporation (the "*By-Laws*"), the Board is hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, in all cases, to the provisions of the DGCL, this Certificate and any By-Laws adopted by the Corporation; *provided, however*, that no amendments to this Certificate or the By-Laws hereafter adopted by the Corporation shall invalidate any prior act of the Board that would have been valid if such amendments to this Certificate or the By-Laws had not been adopted.

Section 5.2    Number, Election and Term.

(a)    The number of directors of the Corporation shall initially be seven and shall be fixed from time to time exclusively by the Board pursuant to a resolution adopted by a majority of the Whole Board.  For purposes of this Certificate, "*Whole Board*" shall mean the total number of directors the Corporation would have if there were no vacancies.

(b)    Directors shall be elected each year at the annual meeting of stockholders of the Corporation and shall hold office until the next annual meeting of stockholders of the Corporation and until their successors have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

(c)    Unless and except to the extent that the By-Laws shall so require, the election of directors need not be by written ballot.

Section 5.3    Newly Created Directorships and Vacancies.

Newly created directorships resulting from an increase in the number of directors and any vacancies on the Board resulting from death, resignation, retirement, disqualification, removal or other cause may be filled solely by a majority vote of the directors then in office, even if less than a quorum, or by a sole remaining director (and not by stockholders), and any director so chosen shall hold office until the next annual meeting of stockholders of the Corporation and until his or her successor has been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

Section 5.4    Removal.

Any or all of the directors may be removed from office at any time, with or without cause by the affirmative vote of holders of a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Section 5.5    Preferred Stock – Directors.

Notwithstanding any other provision of this Article V, and except as otherwise required by law, whenever the holders of one or more series of Preferred Stock shall have the right, voting separately by class or series, to elect one or more directors, the term of office, the filling of vacancies, the removal from office and other features of such directorships shall be governed by the terms of such series of Preferred Stock as set forth in this Certificate (including any Preferred Stock Designation) and such directors shall not be included in any of the classes created pursuant to this Article V unless expressly provided by such terms.

ARTICLE VI
BY-LAWS

In furtherance and not in limitation of the powers conferred upon it by law, the Board shall have the power to adopt, amend, alter or repeal the By-Laws. The affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the By-Laws. The By-Laws also may be adopted, amended, altered or repealed by the stockholders to the extent permissible under the DGCL; *provided, however,* that in addition to any vote of the holders of any class or series of capital stock of the Corporation required by law or by this Certificate (including any Preferred Stock Designation), the affirmative vote of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the By-Laws.

ARTICLE VII
MEETINGS OF STOCKHOLDERS

Section 7.1    No Action by Written Consent.

Except as otherwise expressly provided by the terms of any series of Preferred Stock permitting the holders of such series of Preferred Stock to act by written consent, any action required or permitted to be taken by stockholders of the Corporation must be effected at a duly called annual or special meeting of stockholders of the Corporation, unless the taking of such action by means of written consent of the stockholders of the Corporation is approved in advance by a resolution adopted by a majority of the Whole Board.

Section 7.2    Meetings.

Except as otherwise required by law or the terms of any one or more series of Preferred Stock, special meetings of stockholders of the Corporation (i) may be called by the Chairman of the Board, the Chief Executive Officer or any member of the Board pursuant to a resolution adopted by a majority of the Whole Board and (ii) shall be called by the Secretary at the written request (a "**Special Meeting Request**") of holders of record of at least 20% of the voting power of the outstanding stock of the Corporation entitled to vote on the matter or matters to be brought before the proposed special meeting.  Such request shall state the purpose or purposes of the proposed meeting.  Within 15 days of the Corporation's receipt of a Special Meeting Request that complies with this Section 7.2, the Corporation shall send a notice of the meeting to stockholders as set forth in the By-Laws.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Corporation and stated in the Corporation's notice of meeting, provided that a special meeting of stockholders called pursuant to a Special Meeting Request shall be held no later than 30 days after the date the Corporation receives the Special Meeting Request, unless the stockholders submitting such Special Meeting Request request a date no later than 60 days after the date the Corporation receives the Special Meeting Request. Any special meeting of stockholders called pursuant to a Special Meeting Request and as to which notice has been given may be postponed, and any such special meeting as to which notice has been given may be cancelled, by the Secretary upon public announcement given before the date previously scheduled for such meeting or any adjournment thereof, in each case only if the stockholders submitting such Special Meeting Request request such postponement or cancellation in writing.

Section 7.3    Advance Notice.

Subject to Section 7.2, advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the By-Laws.

ARTICLE VIII
SECTION 203 OF THE DGCL

The Corporation hereby elects not to be governed by Section 203 of the DGCL.

5

ARTICLE IX
LIMITED LIABILITY; INDEMNIFICATION

Section 9.1    Limitation of Personal Liability.

No person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted by the DGCL as the same exists or hereafter may be amended.  If the DGCL is hereafter amended to authorize corporate action further limiting or eliminating the liability of directors, then the liability of a director to the Corporation or its stockholders shall be limited or eliminated to the fullest extent permitted by the DGCL, as so amended.  Any repeal or amendment of this Section 9.1 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 9.1 will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 9.2    Indemnification.

(a)    Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding, and such right to indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of this or her heirs, executors and administrators; and such right to indemnification  shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; *provided, however*, that, except for proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) is authorized by the Board (whether before, during or after the pendency of such proceeding).   The right to

6

indemnification conferred by this Section 9.2 shall be a contract right that shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation and shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition.

(b)    The rights provided to Covered Persons pursuant to this Section 9.2 shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, this Certificate, the By-Laws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

(c)    Any repeal or amendment of this Section 9.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 9.2, will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

(d)    This Section 9.2 shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than Covered Persons.

ARTICLE X

COMPETITIVE OPPORTUNITY

If any stockholder, any Affiliate of any stockholder or any of such stockholder's or its Affiliate's partners, members, stockholders, directors, officers or Affiliates (collectively, "*Representatives*"), acquires knowledge of a potential transaction or matter which may be an investment or business opportunity or prospective economic or competitive advantage in which the Corporation could have an interest or expectancy (a "*Competitive Opportunity*") or otherwise is then exploiting any Competitive Opportunity, the Corporation will have no interest in, and no expectation that, such Competitive Opportunity be offered to it. Any such interest or expectation is hereby renounced so that such stockholder and its Representatives (including any Representative serving as an officer or director of the Corporation) shall (a) have no duty to communicate or present such Competitive Opportunity to the Corporation and (b) have the right to either hold any such Competitive Opportunity for such stockholder's (and its agents', partners' or Affiliates') own account and benefit or to recommend, assign or otherwise transfer such Competitive Opportunity to persons other than the Corporation or any Affiliate of the Corporation. For purposes of this Certificate, "*Affiliate*" shall mean, with respect to any person, any other person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such first person. This Article X shall not apply and shall not have any force or effect in the event that the Competitive Opportunity is presented

to, acquired, or otherwise obtained by, a Representative as a result of such Representative's capacity as a director of the Corporation.

ARTICLE XI
DIRECTOR NOMINATION AGREEMENT

For so long as that certain Director Nomination Agreement dated [_____], among the Corporation and the other parties thereto, as amended from time to time (the "*Director Nomination Agreement*") shall remain in effect, the provisions of the Director Nomination Agreement shall be incorporated by reference into the relevant provisions hereof, and such provisions shall be interpreted and applied in a manner consistent with the terms of the Director Nomination Agreement.

ARTICLE XII
AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate (including any Preferred Stock Designation), in the manner now or hereafter prescribed by this Certificate and the DGCL; and, except as set forth in Article IX, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate in its present form or as hereafter amended are granted subject to the right reserved in this Article XII; *provided, however,* that, notwithstanding any other provision of this Certificate, and in addition to any other vote that may be required by law or any Preferred Stock Designation, the affirmative vote of the holders of at least 66⅔% of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter or repeal, or adopt any provision of this Certificate inconsistent with the purpose and intent of, Article V, Article VI, Article VII or this Article XII.

8

IN WITNESS WHEREOF, Cooper-Standard Holdings Inc. has caused this Certificate to be duly executed in its name and on its behalf by its [title of officer] this _____ day of _____, 2010.

Cooper-Standard Holdings Inc.


By:_____
Name:
Title:

Exhibit E

Form of Amended and Restated By-Laws

FORM OF

AMENDED AND RESTATED

BY-LAWS


OF


COOPER-STANDARD HOLDINGS INC.,


a Delaware corporation


(the "*Corporation*")


(Adopted as of [April__], 2010)

AMENDED AND RESTATED
BY-LAWS

OF

COOPER-STANDARD HOLDINGS INC.

## ARTICLE I
## OFFICES

**Section 1.1    Registered Office.**  The registered office of the Corporation within the State of Delaware shall be located at either (a) the principal place of business of the Corporation in the State of Delaware or (b) the office of the corporation or individual acting as the Corporation's registered agent in Delaware.

**Section 1.2    Additional Offices.**  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "*Board*") may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE II
## STOCKHOLDERS MEETINGS

**Section 2.1    Annual Meetings.**  The annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  At each annual meeting, the stockholders shall elect the directors of the Corporation and may transact any other business as may properly be brought before the meeting.

**Section 2.2    Special Meetings.**   Except as otherwise required by applicable law, special meetings of stockholders, for any purpose or purposes, may be called only as provided in the Corporation's Second Amended and Restated Certificate of Incorporation, as the same may be amended or restated from time to time (the "*Certificate of Incorporation*").  The Board may in its sole discretion determine that a special meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).

**Section 2.3    Notices.**  Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting. Unless otherwise provided by applicable law or the Certificate of Incorporation, such notice shall be given by the Corporation not less than 10 nor more than 60 days before the date of the meeting to each stockholder entitled to vote at such meeting as of the record date for determining the stockholders entitled to notice of the meeting in the manner permitted by Section 9.3.  If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting

shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto), and, if applicable, the Special Meeting Request or as otherwise permitted pursuant to Section 2.7 or Section 3.2. Other than a special meeting of stockholders called pursuant to a Special Meeting Request in accordance with the Certificate of Incorporation, any meeting of stockholders as to which notice has been given may be postponed, and any special meeting of stockholders as to which notice has been given may be cancelled, by a resolution adopted by a majority of the Whole Board upon public announcement given before the date previously scheduled for such meeting or any adjournment thereof.

Section 2.4    Quorum.  Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business.  If a quorum shall not be present or represented by proxy at any meeting of the stockholders, the chairman of the meeting may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend.  The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.  Shares of its own stock belonging to the Corporation or to another corporation (if a majority of the voting power of the shares entitled to vote in the election of directors belonging to such other corporation is held, directly or indirectly, by the Corporation) shall neither be entitled to vote nor, for quorum purposes, be counted in (a) the number shares present, in person or by proxy, at a stockholders meeting or (b) the number of shares of outstanding capital stock of the Corporation entitled to vote at a stockholders meeting; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

Section 2.5    Voting of Shares.

(a)    Voting Lists.  The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before every meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include the telephone number or other electronic contact information for electronic transmission to any stockholder on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting:  (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. If the Corporation determines to make the list available on an electronic network, the Corporation may take

2

reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting. The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

      (b)    <u>Manner of Voting</u>.    At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy.  If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission, provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder. The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

      (c)    <u>Proxies</u>.    Each stockholder entitled to vote at a meeting of stockholders may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary of the Corporation until the meeting is called to order, but shall be filed with the Secretary before being voted. Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority.

      (i)    A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy.  Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

      (ii)    A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy or to a proxy solicitation firm, proxy support service organization or like agent duly authorized by the person who will be the holder of the proxy to receive such transmission, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, electronic transmission or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original

writing or transmission could be used; provided that such copy, electronic transmission or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d)    Required Vote. Subject to the rights of the holders of one or more series of preferred stock of the Corporation ("*Preferred Stock*"), voting separately by class or series, to elect directors pursuant to the terms of one or more series of Preferred Stock, the election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon. All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation, these By-Laws or applicable stock exchange rules, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(e)    Inspectors of Election. The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof. The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act. If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability. The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine the disposition of any challenges and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots. No person who is a candidate for an office at an election may serve as an inspector at such election. Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting. If there is more than one inspector, the report of a majority shall be the report of the inspectors.

Section 2.6    Adjournments. Any annual or special meeting of stockholders may be adjourned by the chairman of the meeting, from time to time, whether or not there is a quorum, to reconvene at the same or some other place, provided that a special meeting of stockholders called pursuant to a Special Meeting Request may not be adjourned without the written consent of the stockholders that submitted such Special Meeting Request. Notice need not be given of any such adjourned meeting if the date, time and place or the means of remote communication by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting, as applicable, are announced at the meeting at which the adjournment is taken. At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for

the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 2.3, and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

### Section 2.7    Advance Notice for Business.

(a)    Annual Meetings of Stockholders. No business may be transacted at an annual meeting of stockholders, other than business that is either (I) specified in the Corporation's notice of meeting (or any supplement thereto) given by or at the direction of the Board, (II) otherwise properly brought before the annual meeting by or at the direction of the Board or (III) otherwise properly brought before the annual meeting by any stockholder of the Corporation (x) who is a stockholder on the date of the giving of the notice provided for in this Section 2.7(a) and who is entitled to vote at such annual meeting and (y) who complies with the notice procedures set forth in this Section 2.7(a). Except for proposals properly made in accordance with Rule 14a-8 (or any successor thereof) under the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), and included in the notice of meeting given by or at the direction of the Board, the foregoing clause (III) shall be the exclusive means for a stockholder to propose business to be brought before an annual meeting of stockholders. Stockholders seeking to nominate persons for election to the Board must comply with Section 3.2, and this Section 2.7 shall not be applicable to nominations.

(i)    In addition to any other applicable requirements, for business (other than nominations) to be properly brought before an annual meeting by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation and such business must otherwise be a proper matter for stockholder action. Subject to Section 2.7(a)(iv), a stockholder's notice to the Secretary with respect to such business, to be timely, must comply with the provisions of this Section 2.7(a)(i). A stockholder's notice must be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 60 days later than such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation. [Notwithstanding the previous sentence, for purposes of determining whether a stockholder's notice shall have been received in a timely manner for the annual meeting of stockholders in 2011, to be timely, a stockholder's notice must have been received not later than the close of business on _____, 2011 nor earlier than the opening of business on _____, 2011. The public announcement of an adjournment or postponement of an annual meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 2.7(a).]

(ii)    To be in proper written form, a stockholder's notice to the Secretary with respect to any business (other than director nominations which are the subject of Section 3.2) must set forth:

(A)    as to each such matter such stockholder proposes to bring before the annual meeting (1) a brief description of the business desired to be brought before the annual meeting and any material interest in such business of such stockholder and any Stockholder Associated Person (as defined below), individually or in the aggregate, (2) the text of the proposal or business (including the text of any resolutions proposed for consideration and if such business includes a proposal to amend these By-Laws, the text of the proposed amendment) and (3) the reasons for conducting such business at the annual meeting;

(B)    the name and address of the stockholder proposing such business, as they appear on the Corporation's books;

(C)    the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by such stockholder and by any Stockholder Associated Person;

(D)    any proxy (other than a revocable proxy given in response to a solicitation made pursuant to Section 14(a) (or any successor thereof) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation;

(E)    any Derivative Position held by such Stockholder and by any Stockholder Associated Person;

(F)    a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person or any other person or persons (including their names) in connection with the proposal of such business by such stockholder;

(G)    any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitation of proxies for election of directors (even if an election contest is not involved) or would be otherwise required, in each case pursuant to Section 14 (or any successor thereof) of the Exchange Act and the rules and regulations promulgated thereunder;

(H)    a representation that such stockholder intends to appear in person or by proxy at the annual meeting to bring such business before the meeting; and

(I)    a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies in connection with the proposal.

(iii)    The foregoing notice requirements of this Section 2.7(a) shall be deemed satisfied by a stockholder as to any proposal made pursuant to Rule 14a-8 (or any successor thereof) of the Exchange Act if the stockholder has notified the Corporation of such stockholder's intention to present such proposal at an annual meeting in compliance with Rule 14a-8 (or any successor thereof) of the Exchange Act.  No business shall be conducted at the annual meeting of stockholders except business brought before the annual meeting in accordance with the procedures set forth in this Section 2.7(a), provided, however, that once business has been properly brought before the annual meeting in accordance with such procedures, nothing in this Section 2.7(a) shall be deemed to preclude discussion by any stockholder of any such business conducted in accordance with the rules for such meeting as set forth in Section 2.8.  If the Board or the chairman of the annual meeting determines that any stockholder proposal was not made in accordance with the provisions of this Section 2.7(a) or that the information provided in a stockholder's notice does not satisfy the information requirements of this Section 2.7(a), such proposal shall not be presented for action at the annual meeting. Notwithstanding the foregoing provisions of this Section 2.7(a), if the stockholder (or a qualified representative of the stockholder) does not appear at the annual meeting of stockholders of the Corporation to present the proposed business, such proposed business shall not be transacted, notwithstanding that proxies in respect of such matter may have been received by the Corporation.

(iv)    In addition to the provisions of this Section 2.7(a), a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein.  Nothing in this Section 2.7(a) shall be deemed to affect any rights of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 (or any successor thereof) under the Exchange Act.

(b)    Special Meetings of Stockholders.  Any business may be transacted at a special meeting of stockholders, provided that with respect to each special meeting of stockholders, only such business shall be conducted as is permitted by Section 2.3.  Nominations of persons for election to the Board may be made at a special meeting of stockholders pursuant to Section 3.2.  Notwithstanding any provision contained herein, in the case of a special meeting of stockholders called pursuant to a Special Meeting Request, to be timely, a stockholder's notice to the Secretary must be received by the Secretary at the principal executive offices of the Corporation not later than 15 days prior to such meeting.

Section 2.8    Conduct of Meetings.  The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or such other person as shall be appointed by the Board.  The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting.  The Board may adopt or, in the

absence thereof, the chairman of the meeting may prescribe, such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these By-Laws or such rules and regulations, the chairman of any meeting of stockholders shall have the right and authority to convene, adjourn and close the meeting, and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Board or prescribed by the chairman of the meeting, may include, without limitation, the following: (a) the establishment of an agenda or order of business for the meeting; (b) rules and procedures for maintaining order at the meeting and the safety of those present; (c) limitations on attendance at or participation in the meeting to stockholders of record of the Corporation, their duly authorized and constituted proxies or such other persons as the chairman of the meeting shall determine; (d) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (e) limitations on the time allotted (to individuals and in the aggregate) to questions or comments by participants. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, the chairman of the meeting may appoint any person to act as secretary of the meeting.

Section 2.9    No Action by Consent of Stockholders in Lieu of Meeting. Except as otherwise expressly provided by the terms of any series of Preferred Stock permitting the holders of such series of Preferred Stock to act by written consent, any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of the stockholders of the Corporation, unless a majority of the Whole Board approves in advance the taking of such action by means of written consent of stockholders, in which case such action may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission. The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by electronic transmission shall be deemed to have been delivered until such

consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested. Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of a majority of the Whole Board. Any copy, electronic transmission or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, electronic transmission or other reproduction shall be a complete reproduction of the entire original writing. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this Section 2.9.

## ARTICLE III
## DIRECTORS

**Section 3.1    Powers.** The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-Laws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Delaware.

**Section 3.2    Advance Notice for Nomination of Directors.**

(a)    Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors by the stockholders of the Corporation, except as may be otherwise provided by the terms of one or more series of Preferred Stock with respect to the rights of holders of one or more series of Preferred Stock to elect directors. Nominations of persons for election to the Board at any annual meeting of stockholders, or at any special meeting of stockholders called for the purpose of electing directors as set forth in the Corporation's notice of such special meeting, may be made (i) by or at the direction of the Board or (ii) by any stockholder of the Corporation (x) who is a stockholder of record on the date of the giving of the notice provided for in this Section 3.2 and who is entitled to vote in the election of directors at such meeting and (y) who complies with the notice procedures set forth in this Section 3.2.

(b)    In addition to any other applicable requirements, for a nomination to be made by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation. To be timely, a stockholder's notice to the Secretary must comply with the provisions of this Section 3.2(b). A stockholder's notice must be received by the Secretary at the principal executive offices of the Corporation: (i) in the case of an annual meeting, not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual

meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 60 days after such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation; (ii) except as specified in clause (iii), in the case of a special meeting of stockholders called for the purpose of electing directors, not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the special meeting is first made by the Corporation; and (iii) in the case of a special meeting of stockholders called pursuant to a Special Meeting Request for the purpose of electing directors, not later than 15 days prior to such meeting. [Notwithstanding the previous sentence, for purposes of determining whether a stockholder's notice shall have been received in a timely manner for the annual meeting of stockholders in 2011, to be timely, a stockholder's notice must have been received not later than the close of business on _____, 2011 nor earlier than the opening of business on _____, 2011. The public announcement of an adjournment or postponement of an annual meeting or special meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 3.2.]

(c)      Notwithstanding anything in paragraph (b) to the contrary, if the number of directors to be elected to the Board at an annual meeting is greater than the number of nominees of the Corporation and there is no public announcement by the Corporation specifying a decrease in the size of the Board at the time the notice of such meeting is given to stockholders, a stockholder's notice required by this Section 3.2 shall be considered timely, but only with respect to the directorships for which the Corporation has failed to provide nominees, if it shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the date on which such notice was given by the Corporation.

(d)      To be in proper written form, a stockholder's notice to the Secretary must set forth:

(i)      as to each person whom the stockholder proposes to nominate for election as a director:

(A)      the name, age, business address and residence address of the person,

(B)      the principal occupation or employment of the person,

(C)      the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by the person,

(D)    any Derivative Instrument directly or indirectly owned beneficially by such nominee, and

(E)    any other information relating to the person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 (or any successor thereof) of the Exchange Act and the rules and regulations promulgated thereunder; and

(ii)    as to the stockholder giving the notice:

(A)    the name and address of such stockholder as they appear on the Corporation's books,

(B)    the class or series and number of shares of capital stock of the Corporation that are owned of record or directly or indirectly owned beneficially by such Stockholder and any Stockholder Associated Person,

(C)    any proxy (other than a revocable proxy given in response to a solicitation made pursuant to Section 14(a) (or any successor thereof) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation,

(D)    any Derivative Position held by such Stockholder and by an Stockholder Associated Person,

(E)    a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person, any proposed nominee or any other person or persons (including their names) pursuant to which the nomination or nominations are to be made by such stockholder,

(F)    a representation that such stockholder intends to appear in person or by proxy at the meeting to nominate the persons named in its notice,

(G)    any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 (or any successor thereof) of the Exchange Act and the rules and regulations promulgated thereunder,

(H)    a description of all direct and indirect compensation and other material monetary agreements, arrangements and understandings during the past three years, and any other material relationships, between or among such stockholder or any Stockholder Associated Person, or others acting in concert therewith, on the one hand, and each proposed nominee, and his or her respective

11

affiliates and associates, or others acting in concert therewith, on the other hand, including, without limitation all information that would be required to be disclosed pursuant to Rule 404 promulgated under Regulation S-K if the stockholder making the nomination and any Stockholder Associated Person, or any person acting in concert therewith, was the "registrant" for purposes of such rule and the nominee was a director or executive officer of such registrant, and

(I)    a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies for the election of the proposed nominee.  Such notice must be accompanied by a written consent of each proposed nominee to being named as a nominee and to serve as a director if elected.

(e)    If the Board or the chairman of the meeting of stockholders determines that any nomination was not made in accordance with the provisions of this Section 3.2, then such nomination shall not be considered at the meeting in question.  Notwithstanding the foregoing provisions of this Section 3.2, if the stockholder (or a qualified representative of the stockholder) does not appear at the meeting of stockholders of the Corporation to present the nomination, such nomination shall be disregarded, notwithstanding that proxies in respect of such nomination may have been received by the Corporation.

(f)    In addition to the provisions of this Section 3.2, a stockholder shall also comply with all of the applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein.  Nothing in this Section 3.2 shall be deemed to affect any rights of the holders of Preferred Stock to elect directors pursuant to the Certificate of Incorporation or the right of the Board to fill newly created directorships and vacancies on the Board pursuant to the Certificate of Incorporation.

**Section 3.3    Compensation.**    Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, the Board shall have the authority to fix the compensation of directors.  The directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director.  No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor.  Members of committees of the Board may be allowed like compensation and reimbursement of expenses for service on the committee.

## ARTICLE IV
## BOARD MEETINGS

**Section 4.1    Annual Meetings.**    The Board shall meet as soon as practicable after the close of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board.  No notice to the directors shall be necessary to legally convene this meeting, except as provided in this Section 4.1.

**Section 4.2    Regular Meetings**. Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3    Special Meetings**. Special meetings of the Board (a) may be called by the Chairman of the Board or the Chief Executive Officer and (b) shall be called by the Chairman of the Board, the Chief Executive Officer or Secretary on the written request of at least a majority of directors then in office, or the sole director, as the case may be, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request. Notice of each special meeting of the Board shall be given, as provided in Section 9.3, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail. If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting. Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting. Except as may be otherwise expressly provided by applicable law, the Certificate of Incorporation, or these By-Laws, neither the business to be transacted at, nor the purpose of, any special meeting need be specified in the notice or waiver of notice of such meeting. A special meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 9.4.

**Section 4.4    Quorum; Required Vote**. A majority of the Whole Board shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Certificate of Incorporation or these By-Laws. If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

**Section 4.5    Consent In Lieu of Meeting**. Unless otherwise restricted by the Certificate of Incorporation or these By-Laws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6    Organization**. The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, a chairman elected from the directors present. The Secretary shall act as secretary of all meetings of the Board. In the absence (or inability or refusal to act) of the Secretary, the chairman of the meeting may appoint any person to act as secretary of the meeting.

13

## ARTICLE V
## COMMITTEES OF DIRECTORS

**Section 5.1    Establishment.** The Board may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board when required. The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2    Available Powers.** Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3    Alternate Members.** The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4    Procedures.** Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. Notice of each committee meeting shall be given, as provided in Section 9.3, to each committee member (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Certificate of Incorporation, these By-Laws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these By-Laws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these By-Laws.

## ARTICLE VI
## OFFICERS

**Section 6.1    Officers.** The officers of the Corporation elected by the Board shall be a Chairman of the Board, a Chief Executive Officer, and such other officers as the Board from time to time may determine. Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this

Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. The Chairman of the Board or the Chief Executive Officer may also appoint such other officers (including, without limitation, a Treasurer, Secretary, Controller and one or more Vice Presidents) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these By-Laws or as may be prescribed by the Board or, if such officer has been appointed by the Chairman of the Board or the Chief Executive Officer, as may be prescribed by the appointing officer.

(a)    Chairman of the Board. The Chairman of the Board shall preside when present at all meetings of the stockholders and the Board. The Chairman of the Board shall advise and counsel the Chief Executive Officer and other officers and shall exercise such powers and perform such duties as shall be assigned to or required of the Chairman of the Board from time to time by the Board or these By-Laws.

(b)    Chief Executive Officer. The Chief Executive Officer shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board, and shall be responsible for the execution of the policies of the Board.

(c)    Secretary.

(i)    The Secretary shall attend all meetings of the stockholders, the Board and committees of the Board (at the request of the Board or such committee) and shall record the proceedings of such meetings in books to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board and shall perform such other duties as may be prescribed by the Board, the Chairman of the Board or the Chief Executive Officer. The Secretary shall have custody of the corporate seal of the Corporation and the Secretary shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature. The Board may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature.

(ii)    The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the names of the stockholders and their addresses, the number and classes of shares held by each and, with respect to certificated shares, the number and date of certificates issued for the same and the number and date of certificates cancelled.

(d)    Treasurer. The Treasurer shall perform all duties commonly incident to that office (including, without limitation, the care and custody of the funds and securities of the Corporation which from time to time may come into the Treasurer's hands and the deposit of the funds of the Corporation in such banks or trust companies as the Board or the Chief Executive Officer may authorize).

15

**Section 6.2    Term of Office; Removal; Vacancies.** The Chairman of the Board shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders, and he or she shall hold office until the next annual meeting of the Board and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office. Any officer, whether elected by the Board or appointed by the Chairman of the Board or the Chief Executive Officer, may be removed, with or without cause, at any time by the Board. Any officer appointed by the Chairman of the Board or the Chief Executive Officer may also be removed, with or without cause, by the Chairman of the Board or the Chief Executive Officer, as the case may be, unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board. Any vacancy occurring in any office appointed by the Chairman of the Board or the Chief Executive Officer may be filled by the Chairman of the Board or the Chief Executive Officer as the case may be, unless the Board then determines that such office shall thereupon be elected by the Board, in which case the Board shall elect such officer.

**Section 6.3    Other Officers.** The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4    Multiple Officeholders; Stockholder and Director Officers.** Any number of offices may be held by the same person unless the Certificate of Incorporation or these By-Laws otherwise provide. Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE VII
### SHARES

**Section 7.1    Certificated and Uncertificated Shares.** The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates and upon request every holder of uncertificated shares shall be entitled to have a certificate signed in accordance with Section 7.3 representing the number of shares registered in certificate form. The Corporation shall not have power to issue a certificate representing shares in bearer form.

**Section 7.2    Multiple Classes of Stock.** If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the

16

face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

Section 7.3    **Signatures.** Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Secretary and (b) any other authorized officer of the Corporation. Any or all the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

Section 7.4    **Consideration and Payment for Shares.**

(a)    Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board. The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)    Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

Section 7.5    **Lost, Destroyed or Wrongfully Taken Certificates.**

(a)    If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b)    If a certificate representing shares has been lost, destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded

from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

**Section 7.6     Transfer of Stock.**

(a)     If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i)     in the case of certificated shares, the certificate representing such shares has been surrendered;

(ii)     (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iii)     the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

(iv)     the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8(a); and

(v)     such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b)     Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall only record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

**Section 7.7     Registered Stockholders.**   Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

**Section 7.8     Effect of the Corporation's Restriction on Transfer.**

18

(a)     A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the DGCL and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

(b)     A restriction imposed by the Corporation on the transfer or the registration of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, even if otherwise lawful, is ineffective against a person without actual knowledge of such restriction unless: (i) the shares are certificated and such restriction is noted conspicuously on the certificate; or (ii) the shares are uncertificated and such restriction was contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares.

Section 7.9     **Regulations**. The Board shall have power and authority to make such additional rules and regulations, subject to any applicable requirement of law, as the Board may deem necessary and appropriate with respect to the issue, transfer or registration of transfer of shares of stock or certificates representing shares. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

## ARTICLE VIII
## INDEMNIFICATION

Section 8.1     **Right to Indemnification**. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) is authorized by the Board (whether before, during or after the pendency of such proceeding).

19

**Section 8.2    Right to Advancement of Expenses**.   In addition to the right to indemnification conferred in <u>Section 8.1</u>, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an *"advancement of expenses"*); provided, however, that, if the Delaware General Corporation Law (*"DGCL"*) requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an *"undertaking"*), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a *"final adjudication"*) that such Covered Person is not entitled to be indemnified for such expenses under this <u>Article VIII</u> or otherwise.

**Section 8.3    Right of Indemnitee to Bring Suit**.   If a claim under <u>Section 8.1</u> or <u>Section 8.2</u> is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.   If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expense of prosecuting or defending such suit.   In (a) any suit brought by the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) in any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the DGCL.   Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders)  to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit.   In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this <u>Article VIII</u> or otherwise shall be on the Corporation.

**Section 8.4    Non-Exclusivity of Rights**.   The rights provided to Covered Persons pursuant to this <u>Article VIII</u> shall not be exclusive of any other right that any Covered Person

may have or hereafter acquire under applicable law, the Certificate of Incorporation, these By-Laws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

**Section 8.5    Insurance.**  The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

**Section 8.6    Indemnification of Other Persons.**  This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons. Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

**Section 8.7    Third Party Indemnitors.**  The Corporation hereby acknowledges that certain Covered Persons have certain rights to indemnification, advancement of expenses and/or insurance provided by third parties, including stockholders of the Corporation (collectively, the "Third Party Indemnitors"). The Corporation hereby agrees:

(a)    that it is the indemnitor of first resort (i.e., its obligations to any such Covered Person are primary and any obligation of the Third Party Indemnitors to advance expenses or to provide indemnification for the same expenses or liabilities incurred by any such Covered Person are secondary);

(b)    that it shall be required to advance the full amount of expenses incurred by any such Covered Person and shall be liable for the full amount of all Expenses, judgments, penalties, fines and amounts paid in settlement to the extent legally permitted and as required by the terms of the Certificate of Incorporation or these By-Laws (or any agreement between the Corporation and any such Covered Person), without regard to any rights any such Covered Person may have against the Third Party Indemnitors; and

(c)    that it irrevocably waives, relinquishes and releases the Third Party Indemnitors from any and all claims against the Third Party Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof.

The Corporation further agrees that no advancement or payment by the Third Party Indemnitors on behalf of any such Covered Person with respect to any claim for which any such Covered Person has sought indemnification from the Corporation shall affect the foregoing and the Third Party Indemnitors shall have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of Indemnitee against the Corporation. The Corporation agrees that the Third Party Indemnitors are express third party beneficiaries of

21

the terms of this Section 8.7. Notwithstanding any other provision to the contrary in these By-Laws, the provisions of this Section 8.7 shall remain in full force and effect and shall not be repealed or amended for so long as the Company is party to that certain Director Nomination Agreement dated as of April __, 2010, among the Company and the other parties thereto, as amended from time to time (the *Director Nomination Agreement*").

**Section 8.8    Amendments.** Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these By-Laws inconsistent with this Article VIII, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

**Section 8.9    Certain Definitions.** For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.10    Contract Rights.** The rights provided to Covered Persons pursuant to this Article VIII (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this Article VIII were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this Article VIII, (d) shall continue as to a Covered Person who has ceased to be a director or officer of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.11    Severability.** If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Article VIII (including, without limitation, each such portion of this Article VIII containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

## ARTICLE IX
## MISCELLANEOUS

**Section 9.1    Place of Meetings**. If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these By-Laws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2    Fixing Record Dates**.

(a)    In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of and to vote at a meeting of stockholders shall be at the close of business on the business day preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 9.2(a) at the adjourned meeting.

(b)    In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c)    In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the

23

first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary of the Corporation.    Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.    If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

**Section 9.3    Means of Giving Notice.**

(a)    Notice to Directors.    Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, (ii) by means of electronic transmission, or (iii) by oral notice given personally or by telephone.    A notice to a director will be deemed given as follows:    (A) if given by hand delivery, orally, or by telephone, when actually received by the director, (B) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (C) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (D) if sent by facsimile telecommunication, when sent to the facsimile number for such director appearing on the records of the Corporation, (E) if sent by email, when sent to the email address for such director appearing on the records of the Corporation, or (F) if sent by any other form of electronic transmission, when sent to the address, location or number (as applicable) for such director appearing on the records of the Corporation.

(b)    Notice to Stockholders.    Whenever under applicable law, the Certificate of Incorporation or these By-Laws notice is required to be given to any stockholder, such notice may be given (1) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (2) by means of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in Section 232 of the DGCL.    A notice to a stockholder shall be deemed given as follows:

(i)    if given by hand delivery, when actually received by the stockholder,

(ii)    if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation,

(iii)    if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and

24

(iv)    if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above,

(A)    if by email, when directed to an email address at which the stockholder has consented to receive notice,

(B)    if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and

(C)    if by any other form of electronic transmission, when directed to the stockholder.

A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation.    Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c)    Notice to Stockholders Sharing Same Address.    Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these By-Laws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given. A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation. Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

(d)    Exceptions to Notice Requirements.    Whenever notice is required to be given, under the DGCL, the Certificate of Incorporation or these By-Laws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.