Whenever notice is required to be given by the Corporation, under any provision of the DGCL, the Certificate of Incorporation or these By-Laws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required. Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given. If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then-current address, the requirement that notice be given to such stockholder shall be reinstated. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate need not state that notice was not given to persons to whom notice was not required to be given pursuant to Section 230(b) of the DGCL. The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

**Section 9.4   Waiver of Notice.** Whenever any notice is required to be given under applicable law, the Certificate of Incorporation, or these By-Laws, a written waiver of such notice, signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice. All such waivers shall be kept with the books of the Corporation. Attendance at a meeting shall constitute a waiver of notice of such meeting, except where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.5   Meeting Attendance via Remote Communication Equipment.**

(a)   <u>Stockholder Meetings</u>. If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

(i)   participate in a meeting of stockholders; and

(ii)   be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote

communication, a record of such votes or other action shall be maintained by the Corporation.

(b) **Board Meetings.** Unless otherwise restricted by applicable law, the Certificate of Incorporation or these By-Laws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other. Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.6   Dividends.** The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Certificate of Incorporation.

**Section 9.7   Reserves.** The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

**Section 9.8   Contracts and Negotiable Instruments.** Except as otherwise provided by applicable law, the Certificate of Incorporation or these By-Laws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize. Such authority may be general or confined to specific instances as the Board may determine. The Chairman of the Board, the Chief Executive Officer, the President or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation. Subject to any restrictions imposed by the Board, the Chairman of the Board or the Chief Executive Officer may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9   Fiscal Year.** The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10   Seal.** The Board may adopt a corporate seal, which shall be in such form as the Board determines. The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11   Books and Records.** The books and records of the Corporation may be kept within or outside the State of Delaware at such place or places as may from time to time be designated by the Board.

**Section 9.12  Resignation.** Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the Chief Executive Officer or the Secretary. The resignation shall take effect at the time specified therein, or at the time of receipt of such notice if no time is specified or the specified time is earlier than the time of such receipt. Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13  Surety Bonds.** Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, the Chief Executive Officer or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, the Chief Executive Officer or the Board may determine. The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14  Securities of Other Corporations.** Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board or the Chief Executive Officer. Any such officer, may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed. The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15  Amendments.** In furtherance and not in limitation of the powers conferred upon it by law, the Board shall have the power to adopt, amend, alter or repeal the By-Laws. The affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the By-Laws. The By-Laws also may be adopted, amended, altered or repealed by the stockholders to the extent permissible under the DGCL; provided, however, that in addition to any vote of the holders of any class or series of capital stock of the Corporation required by applicable law or the Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the By-Laws.

**Section 9.16  Director Nomination Agreement.** For so long as the Director Nomination Agreement shall remain in effect, the provisions of the Director Nomination Agreement shall be incorporated by reference into the relevant provisions hereof, and such provisions shall be interpreted and applied in a manner consistent with the terms of the Director Nomination Agreement. **Certain .** For purposes of these By-Laws:

28

(a) "*Derivative Instrument*" shall mean any option, warrant, convertible security, stock appreciation right, swap or similar right with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares of the Corporation or with a value derived in whole or in part from the value of any class or series of shares of the Corporation, whether or not such instrument or right is subject to settlement in the underlying class or series of shares of the Corporation or otherwise.

(b) "*Derivative Position*" shall mean (i) any Derivative Instrument directly or indirectly owned beneficially by a stockholder or by any Stockholder Associated Person and any other direct or indirect opportunity of a stockholder or any Stockholder Associated Person to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation, (ii) any short interest in any security of the Corporation held by a stockholder or any Stockholder Associated Person (for purposes of Section 2.7 and Section 3.2 a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of the subject security), (iii) any rights beneficially owned, directly or indirectly, by a stockholder or Stockholder Associated Person to dividends on the shares of the Corporation that are separated or separable from the underlying shares of the Corporation, (iv) any proportionate interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which a stockholder or any Stockholder Associated Person is a general partner or, directly or indirectly, beneficially owns an interest in a general partner or (v) any performance-related fees (other than an asset-based fee) that a stockholder or any Stockholder Associated Person is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, if any, including without limitation any such interests held by members of a stockholder's or any Stockholder Associated Person's immediate family sharing the same household.

(c) "*electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by facsimile transmission, email, telex, telegram and cablegram.

(d) "*public announcement*" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Sections 13, 14 or 15(d) (or any successor provisions thereof) of the Exchange Act.

(e) "*Stockholder Associated Person*" shall mean for any stockholder that is a beneficial owner of shares of stock of the Corporation (i) any person controlling, directly or indirectly, or acting as a group (within the meaning of Rule 13-d under the Securities Exchange Act of 1934, as amended) with respect to the shares of stock of the Corporation with, such stockholder and (ii) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder.

(f) "*Whole Board*" shall mean the total number of directors the Corporation would have if there were no vacancies.

Exhibit F

Rights Offering Procedures

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| COOPER-STANDARD HOLDINGS INC., *et al.*,[1] | ) Case No. 09-12743 (PJW) <br> ) (Jointly Administered) |
| Debtors. | ) |

# RIGHTS OFFERING PROCEDURES

1. **Introduction**

On August 3, 2009, Cooper-Standard Holdings Inc. (the "Company") and the other above captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code.[2] On [ ], 2010, the Debtors filed the Debtors' First Amended Joint Chapter 11 Plan Docket No. [ ] (the "Plan") and the accompanying disclosure statement to the Plan (the "Disclosure Statement"). In conjunction with and pursuant to the Plan, the Debtors will effectuate a Rights Offering wherein the Company will issue rights to purchase New Common Stock to Eligible Noteholders. On [_____], 2010, the Bankruptcy Court entered the Rights Offering and Equity Commitment Approval Order approving, among other things, the form and manner of the Rights Offering.

*The Disclosure Statement sets forth important information that should be carefully read and considered by each Eligible Noteholder prior to making a decision to participate in the Rights Offering, including the sections entitled "Certain Risk Factors" and "Financial Projections, Valuation and Assumptions Used" contained therein. A copy of the Disclosure Statement has been distributed to each Noteholder (as defined below) and is also available at www.kccllc.net/cooperstandard.*

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Cooper-Standard Holdings Inc. (5088); Cooper-Standard Automotive Inc. (9970); Cooper-Standard Automotive FHS Inc. (2953); Cooper-Standard Automotive Fluid Systems Mexico Holding LLC (0442); Cooper-Standard Automotive, OH LLC (2845); StanTech, Inc. (4014); Westborn Service Center, Inc. (7448); North American Rubber, Incorporated (9926); Sterling Investments Company (1393); Cooper-Standard Automotive NC LLC (2839); CS Automotive LLC (4267); CSA Services Inc. (9510); and NISCO Holding Company (1697). The corporate address of the Debtors is 39550 Orchard Hill Place Drive, Novi, Michigan 48375.

[2] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

An aggregate of 8,623,491 shares of New Common Stock (the "Rights Offering Shares") will be offered in the Rights Offering. Each Eligible Noteholder has the right (such right, a "Right"), but not the obligation, to purchase New Common Stock pursuant to the Rights Offering as described herein. In addition, to the extent an Eligible Noteholder elects to purchase in full its pro rata share of the Rights Offering Shares, such Eligible Noteholder will have the right (such right, an "Oversubscription Right") to purchase additional Rights Offering Shares in the event that any Rights Offering Shares remain unsubscribed as described herein. Neither the Rights nor the Oversubscription Rights shall be listed or quoted on any public or over-the-counter exchange or quotation system. Fractional shares of New Common Stock will not be issued and any such fractional shares will be rounded down to the nearest whole number. In addition, each Non-Eligible Noteholder will be eligible to receive shares of New Common Stock on account of the Rights such Non-Eligible Noteholder would have received if it was an Eligible Noteholder and would have exercised its Rights (the "Non-Eligible Noteholder Shares").

In connection with the Rights Offering, the Backstop Parties have agreed to purchase (i) 2,558,182 additional shares of New Common Stock (the "Holdback Shares") and 1,000,000 additional shares of New Preferred Stock and (ii) all Rights Offering Shares offered pursuant to the Rights Offering that are not validly subscribed for and purchased by Eligible Noteholders (the "Backstop Shares").

Kurtzman Carson Consultants LLC has been designated as the "Subscription Agent" for the Rights Offering.

(a)  *The Investor Certificate*

The Debtors have previously delivered to the holders of Allowed Senior Subordinated Note Claims (the "Noteholders") as of the Rights Offering Record Date an Investor Certificate to determine if a Noteholder is an Eligible Noteholder permitted to participate in the Rights Offering or if such Noteholder is a Non-Eligible Noteholder permitted to receive the Non-Eligible Noteholder Shares. Each Eligible Noteholder was required to return the Investor Certificate to the Subscription Agent on or before twenty-one (21) days after delivery of the Investor Certificate, or March 5, 2010 (such period, the "Certification Period" and such deadline, the "Eligible Noteholder Investor Certificate Deadline") and was required to certify to the ownership of Senior Subordinated Note Claims as of the date of such Investor Certificate. Each Non-Eligible Noteholder, in order to be eligible to receive Non-Eligible Noteholder Shares, is required, among other things, to return the Investor Certificate on or before twenty-one (21) days after the Eligible Noteholder Investor Certificate Deadline (the "Non-Eligible Noteholder Investor Certificate Deadline").

All Noteholders that completed and timely returned an Investor Certificate evidencing that they are Eligible Noteholders have been mailed (i) these Rights Offering Procedures, (ii) a form for Eligible Noteholders to exercise Rights (a "Subscription Form") and (iii) a form Post-Certification Period Transfer Notice (as defined below, and together with these Rights Offering Procedures and the Subscription Form, the "Rights Offering Documents").

2

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

All Noteholders that complete and timely return an Investor Certificate evidencing that they are Non-Eligible Noteholders will be required to instruct their Nominee to tender their Notes into the election account established at The Depository Trust Company ("DTC") pursuant to the instructions applicable to such Non-Eligible Noteholders in the Ballot in order to receive their Non-Eligible Noteholder Shares, which will be issued by Reorganized Holdings on, or as soon as practicable after, the Effective Date.

**All Noteholders that failed to complete and timely return an Investor Certificate have thereby forfeited any and all rights they may have had under the Rights Offering with respect to their Allowed Senior Subordinated Note Claims.**

(b)   *Subscription Form*

A Subscription Form is being sent concurrently herewith to each Eligible Noteholder pursuant to which such Noteholder may exercise its Rights. Eligible Noteholders may elect to exercise Rights and Oversubscription Rights by completing the Subscription Form and returning it to the Subscription Agent together with its Rights Offering Payment Amount (See Section 6). Fractional Rights may not be exercised and will be rounded down to the nearest whole number upon exercise. In addition, fractional shares of New Common Stock underlying the Rights shall not be issued upon exercise of the Rights or in connection with the issuance of shares in lieu of the Rights and no compensation shall be paid in cash in respect of such fractional shares.

2.   **Subscription Period**

The Rights Offering shall commence on the date on which the solicitation of votes to approve the Plan is commenced, or [_____], 2010 (the "Subscription Commencement Date"). The Rights Offering shall expire at 5:00 p.m. (New York City time) on the date that is the later of (i) twenty (20) Business Days following the Subscription Commencement Date, or [_____], 2010, or (ii) the Voting Deadline (the "Subscription Deadline"). Each Eligible Noteholder intending to participate in the Rights Offering must affirmatively make a binding election to exercise its Rights (or any part thereof) and submit payment for the shares of New Common Stock underlying such Rights on or prior to the Subscription Deadline in accordance with the provisions of Section 6 below. Shares of New Common Stock issued in connection with the Rights Offering shall be issued on, or as soon as practicable after, the Effective Date pursuant to an exemption from the registration requirements of the Securities Act, and such shares will be issued directly to the Eligible Noteholder. As a result, shares of New Common Stock issued in connection with the Rights Offering will contain the following legend:

> **THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS, AND ACCORDINGLY THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM.**

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

The distribution of securities under the Plan in Canada is being made on a private placement basis. Accordingly, any resale of such securities must be made in accordance with an exemption from the prospectus requirement and in compliance with the registration requirements of applicable securities laws, which vary depending on the province. Cooper-Standard Holdings Inc. is not a reporting issuer in any province or territory of Canada. Recipients of the securities are advised to seek legal advice prior to any resale of the securities.

3. **Eligibility for Participation in the Rights Offering**

The Subscription Agent has delivered the Rights Offering Documents to each Eligible Noteholder. Only Noteholders that are QIBs, Accredited Investors or Non-U.S. Persons shall qualify as Eligible Noteholders eligible to participate in the Rights Offering, and the Subscription Forms shall be deemed delivered, and the Rights associated therewith shall be deemed issued, only to Noteholders who are QIBs, Accredited Investors or Non-U.S. Persons.

4. [Reserved]

5. **Participation by Eligible Senior Subordinated Noteholders**

Each Eligible Noteholder will have one or more Rights to purchase up to its pro rata share of the Rights Offering Shares. In addition, the Subscription Form provides that each Eligible Noteholder electing to purchase in full its pro rata share of the Rights Offering Shares will also have Oversubscription Rights to purchase additional shares of New Common Stock in the event that any Rights Offering Shares remain unsubscribed at the Subscription Deadline (the "Unsubscribed Shares" and, such election, an "Oversubscription Election"). In the event the aggregate Rights Offering Shares sought pursuant to the exercise of Oversubscription Rights exceeds the number of Unsubscribed Shares, the Unsubscribed Shares will be allocated among the Eligible Noteholders who have made Oversubscription Elections on a pro rata basis in proportion to the Allowed Senior Subordinated Note Claims of such Eligible Noteholders.

6. **Exercise of Rights and Purchase of Rights Offering Shares**

   (a) *Exercising Rights*

   In order to validly exercise Rights, at or before the Subscription Deadline, each Eligible Noteholder must:

   (i) return the completed and signed Subscription Form to the Subscription Agent electing to exercise all or a portion of such Eligible Noteholder's Rights; and

   (ii) pay, by wire transfer of immediately available funds to the account designated on the Instructions to the Subscription Form (the "Escrow Account"), the amount equal to the product of the subscription price as set

4

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

forth in the Subscription Form and the number of shares of New Common Stock such Eligible Noteholder elects to purchase pursuant to its Rights (the "Rights Offering Payment Amount"), which shall be held in escrow and shall not become property of the Debtors' Estates until the Effective Date; provided, that, each Backstop Party shall pay the purchase price for the shares of New Common Stock to be purchased by it in accordance with the terms of Section 7 hereof.

The Subscription Form and Rights Offering Payment Amount must be received by the Subscription Agent at or before the Subscription Deadline. If by the Subscription Deadline, the Subscription Agent for any reason has not received the completed and signed Subscription Form and the Rights Offering Payment Amount from an Eligible Noteholder, such Eligible Noteholder shall be deemed to have relinquished and waived its ability to participate in the Rights Offering and purchase any Rights Offering Shares; provided, however, that to the extent such Eligible Noteholder is a Backstop Party, such relinquishment and waiver shall not affect such Backstop Party's other rights and obligations under the Equity Commitment Agreement.

(b)  *Exercising Oversubscription Rights*

In order to validly exercise Oversubscription Rights, in addition to complying with the procedures for validly exercising such Eligible Noteholder's Rights in full, each Eligible Noteholder must specify on the Subscription Form the number of Rights Offering Shares such Eligible Noteholder wishes to purchase pursuant to its Oversubscription Rights.

No later than two (2) Business Days after the Subscription Deadline, the Subscription Agent shall deliver to each Eligible Noteholder (including the Backstop Parties) that exercises its Oversubscription Rights a notice (the "Oversubscription Payment Notice") setting forth (i) the number of Unsubscribed Shares to which such Eligible Noteholder is entitled to purchase and (ii) the balance owed by such Eligible Noteholder, if any, on account of the exercise of its Oversubscription Rights (the "Oversubscription Payment Amount"), which amount shall be payable in addition to such Eligible Noteholder's Rights Offering Payment Amount. Any Eligible Noteholder that receives an Oversubscription Payment Notice, with the exception of each Backstop Party (whose obligation in this regard are described in Section 7 below) shall have until 5:00 pm (New York City time) on the second (2nd) Business Day after receipt of such Oversubscription Payment Notice (which deadline will also be set forth therein) (the "Oversubscription Payment Date") to pay its Oversubscription Payment Amount by wire transfer of immediately available funds to the Escrow Account, which shall be held in escrow, the requirements of which shall be subject to the consent of the Required Backstop Parties, and shall not become property of the Debtors' Estates until consummation of the Plan.

7.  **Purchase of Rights Offering Shares by Backstop Parties**

On the Business Day after the Oversubscription Payment Date, the Company shall provide to each Backstop Party and assignees of the Backstop Parties pursuant to the Equity Commitment Agreement, either:

5

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

(a) a certificate setting forth (i) the number of (A) Rights Offering Shares subscribed for by the Backstop Party, (B) Backstop Shares, (C) Unsubscribed Shares to which such Backstop Party is entitled to purchase pursuant to Section 6 and (D) Holdback Shares and New Preferred Stock to be purchased by such Backstop Party, and (ii) the aggregate purchase price to be paid by such Backstop Party for the Rights Offering Shares subscribed for by the Backstop Party, its portion of the Backstop Shares, Holdback Shares and New Preferred Stock and its Oversubscription Payment Amount (such certificate, a "Commitment Notice").

(b) in the event that no Backstop Shares remain unsubscribed after the exercise of all Rights (including Oversubscription Rights) and all Rights Offering Shares have been purchased by Eligible Noteholders, a certificate setting forth (i) the fact that there are no Backstop Shares, (ii) the number of (A) Rights Offering Shares subscribed for by the Backstop Party, (B) Unsubscribed Shares to which such Backstop Party is entitled to purchase pursuant to Section 6 and (C) Holdback Shares and New Preferred Stock to be purchased by such Backstop Party, and (iii) the aggregate purchase price to be paid by such Backstop Party for the Rights Offering Shares subscribed for by the Backstop Party, its portion of the Holdback Shares and New Preferred Stock and its Oversubscription Payment Amount (such certificate, a "Satisfaction Notice").

Each Backstop Party and each assignee of a Backstop Party pursuant to the Equity Commitment Agreement, shall be required to pay, on or prior to 2 p.m. New York time on the third Business Day prior to the Effective Date, the aggregate purchase price for the shares to be acquired pursuant to the Commitment Notice or Satisfaction Notice, as the case may be (which shall include the amount indicated on the Subscription Form for such Backstop Party's Rights and its Oversubscription Payment Notice), by wire transfer of immediately available funds to an account designated by the Company (the "Backstop Amount").

8. **Distribution of the Rights Offering Shares**

On the Effective Date, or as soon as practicable thereafter, the Company shall concurrently (i) issue the Holdback Shares, the New Preferred Stock and the Backstop Shares, if any, to the Backstop Parties pursuant to the Equity Commitment Agreement, and (ii) issue Rights Offering Shares to the Backstop Parties and Eligible Noteholders that validly exercised Rights and/or Oversubscription Rights.

9. **Transfer Restriction and Revocation**

(a) *Transferability Restriction*

In order for an Eligible Noteholder to have Rights with respect to an Allowed Senior Subordinated Note Claim transferred to it during the Certification Period, such transfer and all preceding transfers, if any, beginning with the transfer by the Noteholder holding such Allowed Senior Subordinated Note Claims as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent.

6

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

The Rights and Oversubscription Rights shall not be transferable, assignable or detachable, other than in connection with the transfer by an Eligible Noteholder of the corresponding Allowed Senior Subordinated Note Claims, as evidenced by a Post-Certification Period Transfer Notice delivered to the Subscription Agent.

A transfer of an Allowed Senior Subordinated Note Claim by an Eligible Noteholder to a transferee that is neither a QIB nor an Accredited Investor, as evidenced by the Post-Certification Period Transfer Notice delivered by such Eligible Noteholder to the Subscription Agent, shall result in the forfeiture of any and all such Rights associated with such Allowed Senior Subordinated Note Claims under the Rights Offering, and such Rights will forever be forfeited, regardless of whether or not the associated Allowed Senior Subordinated Note Claims are subsequently held by a QIB or an Accredited Investor.

A "Certification Period Transfer Notice" is a notice delivered to the Subscription Agent notifying the Subscription Agent of the transfer of an Allowed Senior Subordinated Note Claim by a Noteholder during the Certification Period, which indicates (i) the name of the transferor, (ii) the name of the transferee, and (iii) the principal amount of such Allowed Senior Subordinated Note Claims.

A "Post-Certification Period Transfer Notice" is a notice delivered to the Subscription Agent notifying the Subscription Agent of the transfer of an Allowed Senior Subordinated Note Claim by a Noteholder during the period beginning a day after the Certification Period through the Subscription Deadline, which indicates (i) the name of the transferor and certifies that such transferor is a QIB, an Accredited Investor or a Non-U.S. Person, (ii) the name of the transferee and certifies that such transferee is a QIB or an Accredited Investor, (iii) the principal amount of such Allowed Senior Subordinated Note Claims, and (iv) that such transfer was made in a valid private placement.

(b)   *Revocation*

Once an Eligible Noteholder has properly exercised its Rights, such exercise will not be permitted to be revoked until the date that is 270 days following the Subscription Deadline, if the Effective Date has not occurred on or before such date. An Eligible Noteholder electing to revoke the exercise of its Rights and Oversubscription Rights in accordance with this Section 9(b) must deliver written notice to the Subscription Agent (i) stating the number of Rights and Oversubscription Rights that were exercised, (ii) stating that the Eligible Noteholder revokes all of its Rights and Oversubscription Rights, and (iii) certifying that the Rights and Oversubscription Rights being revoked are the only Rights and Oversubscription Rights that had been exercised by such Eligible Noteholder (the "Revocation Notice"). Upon receipt of a properly completed and timely returned Revocation Notice by an Eligible Noteholder, the Subscription Agent will use its reasonable efforts to return promptly the Rights Offering Payment Amount and Oversubscription Payment Amount, if any, contributed by such Eligible Noteholder and held in the Escrow Account, without any interest.

10.   **Validity of Exercise of Rights**

7

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

All questions concerning the timeliness, validity, form and eligibility of (i) any transfer or exercise of Rights or Oversubscription Rights, or (ii) the right to receive the Non-Eligible Noteholder Shares, shall be determined in good faith by the Company and the Subscription Agent with the consent of the Required Backstop Parties, which shall not be unreasonably withheld, and in consultation with the Creditors' Committee, which parties shall incur no liability in connection with such determinations. Such determinations shall be final and binding on all Eligible Noteholders and Non-Eligible Noteholders.

The Company, with the consent of the Required Backstop Parties, which shall not be unreasonably withheld, and in consultation with the Creditors' Committee, may waive any defect or irregularity, permit a defect or irregularity to be corrected, accept any late-filed submission or extend the deadline for any submission, within such time as it may determine in good faith to be appropriate, or reject the purported transfer or exercise of a Right or Oversubscription Right, and those parties shall incur no liability in connection with such determinations.

Subscription Forms, Certification Period Transfer Notices and Post-Certification Period Transfer Notices shall be deemed not to have been received or accepted by the Company until all irregularities have been waived or cured within such time as the Company determines as set forth herein. The Company and the Subscription Agent will use their reasonable efforts to give notice to an Eligible Noteholder regarding any defect or irregularity in connection with any Subscription Form, Certification Period Transfer Notice or Post-Certification Period Transfer Notice, but shall be under no duty or obligation to give notification of any defect or irregularity in connection with any submission of such form or notice or incur any liability for failure to give such notification.

In the event that any transfer or exercise by an Eligible Noteholder of Rights or Oversubscription Rights is deemed to be invalid in accordance with these Rights Offering Procedures, the Subscription Agent will use its reasonable efforts to return promptly the Rights Offering Payment Amount and Oversubscription Payment Amount, if any, contributed by such Eligible Noteholder and held in the Escrow Account, without any interest.

## 11. Rights Offering Conditioned Upon Confirmation and Effectiveness of the Plan; Reservation of Rights

All exercises of Rights are subject to and conditioned upon the confirmation of the Plan and the occurrence of the Effective Date. Notwithstanding anything contained herein, in the Disclosure Statement or in the Plan to the contrary, the Company reserves the right, with the consent of the Required Backstop Parties and in consultation with the Creditors' Committee, to extend the Rights Offering or to modify these Rights Offering Procedures in order to comply with applicable law or to adopt such additional detailed procedures to more efficiently administer the Rights Offering.

## 12. Return of Rights Offering Amount

In the event that the Debtors revoke, withdraw or fail to consummate the Plan or

Questions should be directed to:
Kurtzman Carson Consultants LLC
Contact: David M. Sharp
(917) 639-4276

the conditions precedent to the occurrence of the Effective Date shall not have been satisfied or waived in accordance with Article 13 of the Plan, the Subscription Agent shall, within five (5) Business Days of such event or failure to consummate the Plan, return the Rights Offering Payment Amounts, Oversubscription Payment Amounts and Backstop Amounts paid by each Eligible Noteholder and Backstop Party, in each case, without any interest.

13. **Funds**

The Rights Offering Payment Amounts and Oversubscription Payment Amounts paid in accordance with the Rights Offering (the "Rights Offering Funds") shall be deposited when made and held by the Subscription Agent pending the Effective Date in the Escrow Account (a) which shall be separate and apart from the Subscription Agent's general operating funds and any other funds subject to any lien or any cash collateral arrangements and (b) which segregated account or accounts will be maintained for the purpose of holding the money for administration of the Rights Offering until the Effective Date. The Subscription Agent shall not use the Rights Offering Funds for any purpose other than to release the funds as directed by the Company on the Effective Date or as provided in the Rights Offering Procedures, and shall not encumber or permit the Rights Offering Funds to be encumbered by any lien or similar encumbrance.

14. **Waiver and Release**

Each Eligible Noteholder that participates in the Rights Offering shall be deemed by virtue of such participation or election, to have waived and released, to the fullest extent permitted under applicable law, all rights, claims, or causes of action against the Debtors or the Reorganized Debtors, as the case may be, the Backstop Parties, the Creditors' Committee and the Subscription Agent and each of their present and former directors, shareholders, officers and employees, agents, attorneys, advisors, accountants, financial advisors, and investment bankers, arising out of or related to the receipt, delivery, disbursements, calculations, transmission, or segregation of cash, Rights and New Common Stock in connection with the Rights Offering.

15. **Inquiries and Transmittal of Documents; Subscription Agent**

The exercise instructions contained in the Subscription Form should be carefully read and strictly followed. Questions relating to the Rights Offering should be directed to the Subscription Agent at the following phone number:

Kurtzman Carson Consultants LLP
Contact: David M. Sharp
(917) 639-4276

The risk of non-delivery of all documents and payments is on the Eligible Noteholders and the Non-Eligible Noteholders electing to exercise their Rights hereunder and not on the Debtors or the Reorganized Debtors, the Backstop Parties, the Creditors' Committee or the Subscription Agent.

7628328